# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

No. 26-2217

UNITED STATES OF AMERICA,

Plaintiff-Appellant

v.

WISCONSIN ELECTIONS COMMISSION, et al.,

Defendants-Appellees

COMMON CAUSE, et al.,

Intervening Defendants-
Appellees

UNITED STATES' OPPOSED MOTION TO EXPEDITE BRIEFING
EMERGENCY MOTION UNDER SEVENTH CIRCUIT RULE 27
THIS MOTION REQUESTS RELIEF BY JULY 7, 2026

**INTRODUCTION**

Pursuant to 28 U.S.C. 1657, Federal Rule of Appellate Procedure 27, and Seventh Circuit Rule 27, plaintiff-appellant United States hereby respectfully requests that this Court expedite the briefing and argument date for this appeal because it raises an issue of urgency with regard to the security of elections in the United States.

This appeal is about the United States' ability under the Civil Rights Act of 1960 to investigate Wisconsin's compliance with federal law regarding voter registration under the National Voter Registration Act (NVRA) and the Help America Vote Act (HAVA). In passing the NVRA, Congress recognized the importance of properly maintained voter-registration systems in "increas[ing] the number of eligible citizens who register to vote in [federal] elections" and "protect[ing] the integrity of the electoral process." 52 U.S.C. 20501(b)(1) and (3). HAVA requires States to implement a single centralized computerized statewide voter registration list (SVRL) and mandates that the "appropriate State or local election official shall perform list maintenance with respect to the computerized list on a regular basis." 52 U.S.C. 21083(a)(1)(A)

and (a)(2)(A). The district court's Order prohibits the United States from carrying out its investigation.

Wisconsin's next federal election is rapidly approaching, the primaries set for August 11, 2026, and the general election to take place on November 3, 2026. Weeks before November 3, election officials will be mailing absentee ballots to hundreds of thousands of Wisconsin voters, with many of those ballots potentially going to ineligible voters, fraudulent registrants, or other individuals who should not have been registered. Wisconsin voters need to know that their election is secure and that non-citizens, deceased individuals, former residents, non-residents, and voters with multiple records are not registered to vote in that election.

Given this timeline, there is good cause to expedite the appeal. *See* 28 U.S.C. 1657(a). This case should be expedited, with resolution as soon as practicable, as a matter of fairness to all sides. Wisconsin's voters and elections officials need a quick answer. The Department of Justice regrets asking for such speedy work from this Court, but as this Motion details, this timing is not of the United States' making.

The United States respectfully requests that the Court set a briefing schedule as follows:

- The United States' opening brief would be due on Wednesday, July 8, 2026;

- Response briefs would be due on Wednesday, July 29, 2026; and

- The United States' reply brief would be due on Wednesday, August 5, 2026.

The United States suggests that any *amicus curiae* briefs be due on the same day as the party an *amicus* supports. The United States also is willing to waive oral argument, despite the great importance of the issues here, to allow faster resolution of this case. Of course, the United States will participate in oral argument if the Court believes that the benefit of oral argument would outweigh the time concerns and would request that argument take place in September 2026 or at an earlier special hearing.

Counsel for defendants and intervenor-defendants have been notified of the United States' Motion to Expedite Briefing. Intervenor-Defendants Wisconsin Alliance for Retired Americans, and Forward Latino have informed the United States that they oppose the motion and intend to file an opposition. Counsel for Intervenor-Defendant Common

Cause informed the United States it opposes the motion. Counsel for WEC has not informed the United States of their position on this Motion.

**PROCEDURAL BACKGROUND**

This is an appeal from the district court's Order in *United States v. Wisconsin Elections Commission, et al.*, No. 3:25-cv-1036-jdp, 2026 WL 1430354 (W.D. Wis. May 21, 2026), granting defendants' and intervenor-defendants' Motions to Dismiss the United States' Complaint based on Title III of the Civil Rights Act of 1960 (CRA) and denying the United States' Motion to Compel based on that same statute.

1. The CRA was passed to strengthen the Civil Rights Act of 1957, which had "authorized the Attorney General to seek injunctions against public and private interference with the right to vote on racial grounds." *South Carolina v. Katzenbach*, 383 U.S. 301, 313 (1966). The CRA "permitted the joinder of States as parties defendant" in such suits and "authorized courts to register voters in areas of systematic discrimination." *Ibid.* In addition, Title III of the CRA "gave the Attorney General access to local voting records." *Ibid.*; *see* 52 U.S.C. 20701 *et seq.*

Under Title III, "[e]very officer of election shall retain and preserve, for a period of twenty-two months from the date of any [federal] general, special, or primary election . . . all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. 20701. In the key provision here, Title III further provides:

> Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative. This demand shall contain a statement of the basis and the purpose therefor.

52 U.S.C. 20703. Under 52 U.S.C. 20705, "[t]he United States district court for the district in which a demand is made pursuant to section 20703 of this title, or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper."

The NVRA, along with HAVA, contains provisions designed to help the federal government ensure that States are overseeing federal

elections in a fair and honest manner and "to protect the integrity of the electoral process." 52 U.S.C. 20501(b)(3). Those statutes' requirements include recordkeeping obligations, 52 U.S.C. 20507(i)(1), and the duty to make reasonable efforts to maintain lists of eligible voters that do not include the names of ineligible voters, 52 U.S.C. 20507(a)(4)(A)-(B), 21083(a)(1)(A). In HAVA, Congress explicitly established standards for States' voting systems and SVRLs. 52 U.S.C. 21081, 21083.

Of highest importance to this litigation, HAVA requires States to implement a single centralized computerized SVRL, and mandates that the "appropriate State or local election official shall perform list maintenance with respect to the computerized list on a regular basis." 52 U.S.C. 21083(a)(1)(A) and (a)(2)(A). This process includes removing "individual[s]," "registrant[s]," and "ineligible voters" who should not appear on the lists. 52 U.S.C. 21083(a)(2)(A)(i)-(iii). The Attorney General may also bring a civil action against any state to enforce HAVA's requirements. 52 U.S.C. 21111.

2. On June 4, 2025, the United States Department of Justice (DOJ) sent a letter to the Wisconsin Elections Commission (WEC or "the Commission"), and a second letter on June 17, 2025, "asserting that it

had 'received several complaints' regarding the commission's compliance with HAVA and requesting a copy of Wisconsin's current voter registration list as well as information about Wisconsin's list maintenance procedures." *WEC*, 2026 WL 1430354, at *2. In the June 17, 2025, letter, the DOJ requested that the Commission produce "[t]he current voter registration list," including "both active and inactive voters" on August 2, 2025, for the purpose of "determin[ing] if WEC is complying with [HAVA]." Doc. 5-1, at 1. Because the Commission refused to comply with the DOJ's demand for Wisconsin's SVRL, the United States brought suit on December 18, 2025, alleging that this refusal violated Title III of the CRA, 52 U.S.C. 20703. *See* Doc. 1. The United States also filed a Motion to Compel in which sought the requested SVRL. Doc. 2.

On May 21, 2026, the district court entered an Order dismissing the United States' Complaint and denying its Motion to Compel. *WEC*, 2026 WL 1430354, at *5. The district court held that the United States could not compel production of Wisconsin's SVRL under Title III because Title III "does not encompass records created by state election officials, including voter registration lists." *Id*. at *4. The court disagreed with the

United States' contention that its reading of Title III would "carve out vast numbers of federal election records, which was plainly not the intention of Congress." *WEC*, 2026 WL 1430354, at *5.

The United States appeals from the Order. The district court's rulings are contrary to the law as written. An expedited appeal is necessary to secure the elections in Wisconsin and permit Wisconsin the time to clean its voter rolls prior to the election this fall.

## ARGUMENT

The United States recognizes that it seeks a tight window for briefing and decision but urges this Court to expedite the appeal because time is short and Wisconsin voters deserve an answer from this Court on such a major issue. In the absence of a prompt resolution of the issue this appeal presents, irreparable harm will occur to Wisconsin voters and to the United States in enforcing laws designed to protect the integrity of elections. Indeed, other federal courts of appeals have expedited appeals in parallel cases brought by the United States demanding SVRLs under the CRA and raising similar issues. *See United States v. Benson*, No. 26-1225 (6th Cir. argued May 13, 2026); *United States v. Oregon*, No. 26-1231 (9th Cir. argued May 19, 2026); *United States v. Weber*, No. 26-1232

(9th Cir. argued May 19, 2026). Moreover, this Court routinely expedites appeals in election cases, given their time-sensitive nature. *See, e.g.*, *Stewart v. Taylor*, 104 F.3d 965 (7th Cir. 1997); *Moore v. Kusper*, 465 F.2d 256 (7th Cir. 1972); *Jackson v. Ogilvie*, 426 F.2d 1333 (7th Cir. 1970).

**First**, this appeal presents the important purely legal question of whether the United States may demand federal election records, including SVRLs, under the CRA to enforce HAVA and the NVRA.

Section 301 of Title III of the CRA imposes a "sweeping" obligation on election officials. *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962). It provides that "[e]very officer of election shall retain and preserve, for a period of twenty-two months from the date of [a federal election] *all* records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. 20701 (formerly 42 U.S.C. 1974) (emphasis added).

Section 303 provides the Attorney General of the United States a correspondingly sweeping power to obtain Federal election records: "Any record or paper required by [52 U.S.C. 20701] to be retained and preserved shall, upon demand in writing by the Attorney General or his

representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying . . . by the Attorney General or his representative." 52 U.S.C. 20703. The written demand need only "contain a statement of the basis and the purpose therefor." *Ibid*; *see Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam).

The district court erred in limiting the Attorney General's authority to demand records under Section 303. The phrase "come into his possession" does not exclude from the scope of Section 301 all government-generated records. 52 U.S.C. 20701. *But see WEC*, 2026 WL 1430354, at 3-*4. If it did, then the most damning of internal memoranda would be beyond the Attorney General's reach and armed with only voter registration applications, the Attorney General would have no documentary means of determining which applications had been accepted and which rejected. And the Supreme Court has itself used the phrase "come into . . . possession" to refer to materials that an agency "*either create[d] or obtain[ed].*" *United States Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 144-145 (1989) (emphasis added) (quoting *Forsham v. Harris,* 445 U.S. 169, 182 (1980)). The phrase "come into his

possession" conveys that an election official's responsibility arises at the moment he obtains possession of a covered document; it does not otherwise limit the broad swath of documents covered by the language "relating to any application, registration, payment of poll tax, or other act requisite to voting." 52 U.S.C. 20701.

The district court further erred in concluding that the United States' reading of Title III would conflict with States' list-maintenance obligations under the NVRA and HAVA. *WEC*, 2026 WL 1430354, at *5. State election officials must "retain and preserve" records and may not "willfully steal[], destroy[], conceal[], mutilate[], or alter[]" those records. 52 U.S.C. 20701-20702. At the same time, the NVRA and HAVA require States to keep their SVRLs accurate and current. 52 U.S.C. 20507(b)(4), 21083(a)(4). Lawful list-maintenance is consistent with States' obligations to retain and preserve SVRLs, *see Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1085 (10th Cir. 2025) (interpreting the NVRA's requirement that States "maintain" documents), and does not amount to "willful[] . . . alter[ation]," 52 U.S.C. 20702.

**Second**, an expedited appeal will allow the United States to confirm that Wisconsin's voter rolls are composed solely of individuals who are eligible to vote in the 2026 federal elections.

Wisconsin's primary elections are August 11, 2026, with the general federal election will be held November 3, 2026, and thus is rapidly approaching. Although the NVRA limits "systematic[] remov[als]" within 90 days of "the date of a primary or general election for Federal office," 52 U.S.C. 20507(c)(2)(A), Wisconsin may remove individuals, including non-citizens and those with fraudulent voter applications, through non-systematic processes after that date. *See Bell v. Marinko*, 367 F.3d 588, 591-592 (6th Cir. 2004); *cf. Arcia v. Florida Sec'y of State*, 772 F.3d 1335, 1344-1346, 1348 (11th Cir. 2014); *Virginia Coal. for Immigrant Rts. v. Beals*, No. 24-2071, 2024 WL 4601052, at *1 (4th Cir. Oct. 27, 2024). All states, including Wisconsin, are required by the NVRA to conduct "a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of … death of the registrant; or … change in the residence of the registrant. …" 52 U.S.C. 20507(a)(4)(A)&(B). Similarly, HAVA mandates that the "appropriate State or local election official shall perform list maintenance

with respect to the computerized list on a regular basis." 52 U.S.C. 21083(a)(2)(A).

Wisconsin would not be prejudiced by expediting the appeal. If anything, a rapid resolution of this matter will permit Wisconsin to properly conduct an election this fall without the specter of non-citizens and ineligible voters remaining on its voter rolls.

## CONCLUSION

For the foregoing reasons, the United States respectfully asks the Court to expedite this case. The United States urges the adoption of the schedule listed above, or any alternative schedule that would allow a decision in time.

Respectfully submitted,

HARMEET K. DHILLON
  Assistant Attorney General

JESUS A. OSETE
  Principal Deputy Assistant
  Attorney General

s/ Joseph W. Voiland
JOSEPH W. VOILAND
  Attorney

ANDREW G. BRANIFF
KELSEY E. MCGEE
*(COUNSEL OF RECORD)*
  Attorneys
  Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 251-0053

Date: June 12, 2026

# CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limits of Federal Rule of Appellate Procedure 27(d)(2)(A) because the motion contains 2,425 words, excluding the parts exempted by Federal Rules of Appellate Procedure 27(d)(2) and 32(f). This motion also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft 365.

This emergency motion also complies with Seventh Circuit Operating Procedure 1(a)(1) and (1)(c)(7). The United States filed this motion shortly after the appeal was docketed in the Seventh Circuit on June 5, 2026.

s/ Joseph W. Voiland  
JOSEPH W. VOILAND  
Attorney

Date: June 12, 2026

# CERTIFICATE OF SERVICE

I certify that on June 12, 2026, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Joseph W. Voiland
JOSEPH W. VOILAND
Attorney

Date: June 12, 2026