**No. 26-2217**

---

# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

---

## UNITED STATES OF AMERICA,

*Plaintiffs-Appellees,*

v.

## WISCONSIN ELECTIONS COMMISSION, et al.,

*Defendant-Appellant,*

## COMMON CAUSE, et al.,
*Defendants-Intervenors-Appellees*

---

On Appeal from the United States District Court
for the Western District of Wisconsin
Case No. 3:25-cv-1036-JDP

---

## OPPOSITION OF DEFENDANTS-INTERVENORS-APPELLEES COMMON CAUSE, MELISSA ADAMS, AMANDA MAKULEC, AND JAIME RIEFER TO UNITED STATES' EMERGENCY MOTION TO EXPEDITE BRIEFING

---

Douglas M. Poland
Scott B. Thompson
Law Forward, Inc.
222 W. Washington Ave., Ste. 680
Madison, WI 53703
dpoland@lawforward.org
sthompson@lawforward.org
608.283.9822

Jonathan Topaz
Theresa J. Lee
Sophia Lin Lakin
American Civil Liberties Union Foundation
125 Broad St., 18th Floor
New York, NY 10004
(212) 549-2500
jtopaz@aclu.org
tlee@aclu.org
slakin@aclu.org

Ryan V. Cox
ACLU of Wisconsin Foundation, Inc.
207 East Buffalo Street, Suite 325
Milwaukee, WI 53202
Tel.: (414) 272-4032
Fax: 414-272-0182
rcox@aclu-wi.org

*Attorneys for Defendants-Intervenors-*
*Appellees Common Cause, Melissa Adams,*
*Amanda Makulec, and Jaime Riefer*

**INTRODUCTION**

Appellant, the United States of America, has not established good cause to justify expediting this appeal. *See* U.S.'s Opposed Mot. to Expedite Briefing (Mot.), 7th Cir. Dkt. 9. Appellant makes almost no effort to argue that expedited briefing will save it, or the broader public, from any harm. Instead, it makes threadbare arguments about election security and suggests that Wisconsin should conduct list maintenance ahead of this year's upcoming elections, an issue that this appeal will not address. Indeed, this case does not implicate *any* questions that demand resolution ahead of the August or November 2026 elections. Rather, this appeal will determine only whether to revive Appellant's effort to obtain unredacted data for a fishing expedition into Wisconsin's voter list—a decision that has no effect on list maintenance in Wisconsin. The district court—just as all eight federal courts that have issued merits rulings on Appellant's materially identical lawsuits around the country have done—dismissed Appellant's complaint. Even if the United States' appeal reversed the dismissal, multiple issues remain to be addressed in the district court.

Further, Appellant's supposed need for expedition is undermined by its striking lack of urgency in the lead-up to and throughout this litigation. Courts routinely reject claims of emergency when they are inconsistent with a party's

1

actions in the case. After the Wisconsin Elections Commission (WEC) offered the redacted, publicly available version of the voter file, thereby denying Appellant's insistence that it should receive more information than is publicly available, Appellant *waited five months* to demand Wisconsin's unredacted voter file and several more weeks after that to file suit. *See* Ex. 1 at 9, July 2, 2025 Letter of WEC to Maureen Riordan, Acting Chief, DOJ Voting Section (July 2 Letter), *United States v. Wis. Elections Comm'n*, No. 3:25-cv-1036-jdp, Dist. Ct. Dkt. No. 3-1; *id.* at 11, Dec. 2, 2025 Letter of Eric Neff, Trial Attorney, DOJ Voting Section, to WEC (December 2 Letter). And once Appellant did finally file the case, it delayed another eleven days in serving the complaint (Ex. 2, Dist. Ct. Dkt. 26); stipulated to an extension of the WEC's deadline to respond to the complaint and to a nearly two-month briefing schedule for motions to dismiss (Ex. 3, Dist. Ct. Dkt. 46; Ex. 4, Dist. Ct. Dkt. 53); waited more than two weeks after the district court's order dismissing its lawsuit and more than one week after the entry of judgment in the district court to appeal (Ex. 5, Dist. Ct. Dkt. 89; Ex. 6, Dist. Ct. Dkt. 90; Ex. 7, Dist. Ct. Dkt. 91); and then waited another ten days to file its emergency motion to expedite this appeal, *see* Mot. In other words, Appellant has not sought to bring or prosecute its claims expeditiously, yet it now seeks to burden this Court and the other parties because its own delay has shortened the window before this year's

2

elections. This is not good cause.

Finally, Appellant's proposed briefing schedule cannot even provide it the relief it seeks. Appellant proposes an argument date that would occur *after* the August 11, 2026 primary election that it invokes. And even if this Court moved heaven and earth for Appellant, there is no realistic way Appellant would be able to obtain any list maintenance changes in Wisconsin ahead of the November 3, 2026 general election. In other words, even if Appellant's motion had merit—which it does not—the expedited briefing schedule Appellant seeks would still not remedy the imaginary problem it posits.

For all of these reasons, this Court should deny Appellant's motion to expedite briefing.

## BACKGROUND

Beginning in May 2025, Plaintiff-Appellant the United States, through the U.S. Department of Justice (USDOJ), began sending letters to election officials in at least forty states, making escalating demands to produce voter registration databases, with plans to gather data from all fifty states. *See* Kaylie Martinez-Ochoa, Eileen O'Connor, & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (updated June 8, 2026), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information.     To     date,

Appellant has sued thirty states and Washington D.C. in courts across the country, demanding access to sensitive state-held unredacted voter data without explaining its intended use of this data. *See id.* Wisconsin is one of those states, and this appeal comes from one of the thirty-one similar suits the United States has filed.

On June 17, 2025, USDOJ sent a letter to WEC Administrator Meagan Wolfe (the Administrator), requesting information about WEC's administration of elections and compliance with the federal Help America Vote Act (HAVA). Ex. 8 ¶¶ 19–20, Compl., Dist. Ct. Dkt. 1; *see also* Ex. 1 at 2–3, June 17 Letter from Maureen Riordian, Acting Chief, DOJ Voting Section, to Meagan Wolfe, WEC Administrator (June 17 Letter) USDOJ Letter. Among other things, USDOJ requested that the Administrator provide a copy of Wisconsin's "current voter registration list" that includes "both active and inactive voters." *Id.* at 3; *see also* Ex. 8 ¶¶ 19–20, Dist. Ct. Dkt. 1.

On July 2, 2025, WEC responded to USDOJ's letter and "offered the publicly available" list, Ex. 8 ¶ 22, Dist. Ct. Dkt. 1; Ex. 1, July 2 Letter at 9.

USDOJ did not respond for five months. On December 2, 2025, USDOJ sent an email to WEC. Ex. 8 ¶ 23, Dist. Ct. Dkt. 1; Ex. 1, December 2 Letter at 11. This time, it directed WEC to "consider this email a demand to provide . . . [a]n electronic copy of the full Wisconsin statewide voter registration list." Ex.

1, December 2 Letter at 11. USDOJ also attached a proposed memorandum of understanding to its email. Ex. 8 ¶ 24, Dist. Ct. Dkt. 1. That memorandum indicated that the "purpose" of USDOJ's request for data was to "test, analyze and assess states' [voter registration lists] for proper list maintenance and compliance with federal law." *Id.*

On December 11, 2025, the WEC Chair and Commissioners responded, explaining that WEC is "willing to provide any non-confidential voter registration data or records" to USDOJ, but that "Wisconsin law explicitly prohibits the Commission from providing the full unredacted voter registration list." Ex. 1 at 13, Dec. 11, 2025 Letter from WEC to Eric Neff, Trial Attorney, DOJ Civil Rights Division (Dec. 11 WEC Letter). The commissioners set out controlling Wisconsin law's limitations on disclosure of certain personally identifiable information—including an elector's driver's license number and social security number—and explained why nothing in federal law contradicts or overrides the governing state law. *Id.* at 13–15. And they described the "broader framework of list maintenance practices in Wisconsin," including a description of each of Wisconsin's eleven major voter list maintenance processes. *Id.* at 15–17.

One week later, on December 18, 2025, USDOJ filed a lawsuit in the Western District of Wisconsin, seeking to compel Wisconsin to turn over the

5

unredacted voter file. Ex. 8, Dist. Ct. Dkt. 1. USDOJ did not complete service until nearly two weeks later, on December 30, 2025. *See* Ex. 2, Dist. Ct. Dkt. 26. The district court then issued an order noting that, under Federal Rule of Civil Procedure 12, Defendants' deadline to answer or otherwise respond to the complaint was therefore January 20, 2026. Ex. 10, Text Order, Dist. Ct. Dkt. 32. Days before that deadline, the parties submitted a joint filing proposing an extension. *See* Ex. 3, Dist. Ct. Dkt. 46. In that request, the parties proposed pushing Defendants' deadline to file a motion to dismiss by two weeks and correspondingly giving USDOJ a month to file a response to that motion, as opposed to the 21 days contemplated under Rule 12. *See id*. The district court granted a substantially similar schedule. *See* Ex. 4, Dist. Ct. Dkt. 53.

On May 21, 2026, the district court issued an opinion and order dismissing USDOJ's suit with prejudice, holding that "a voter registration list is not a record subject to production under Title III." *United States v. Wis. Elections Comm'n*, No. 25-cv-1036-jdp, 2026 WL 1430354, at *1, *5 (W.D. Wis. May 21, 2026). Eight federal courts have issued merits rulings in USDOJ's cookie-cutter lawsuits seeking unredacted voter files from states across the country, and all eight have dismissed USDOJ's claims. *See id*.; *United States v. Bellows*, No. 1:25-cv-468-LEW, 2026 WL 1430481 (D. Me. May 21, 2026); *United States v. Fontes*, No. CV-26-66-PHX-SMB, 2026 WL 1177244 (D. Ariz.

Apr. 28, 2026); *United States v. Amore*, No. 25-CV-639-MSM-PAS, 2026 WL 1040637 (D.R.I. Apr. 17, 2026); *United States v. Galvin*, No. 25-13816-LTS, 2026 WL 972129 (D. Mass. Apr. 9, 2026); *United States v. Benson*, 819 F. Supp. 3d 753 (W.D. Mich. 2026); *United States v. Oregon*, No. 6:25-cv-1666-MTK, 2026 WL 318402 (D. Or. Feb. 5, 2026); *United States v. Weber*, 816 F. Supp. 3d 1168 (C.D. Cal. 2026). The district court entered judgment in the case on May 27, 2026. Ex. 6, Dist. Ct. Dkt. 90. USDOJ filed a notice of appeal more than a week later on June 5, 2026. Ex. 7, Dist. Ct. Dkt. 91. USDOJ waited another week to file the motion to expedite briefing at issue. Mot.

## LEGAL STANDARD

Under federal law, "each court of the United States shall determine the order in which civil actions are heard and determined, except that the court shall expedite the consideration of any action . . . if good cause therefor is shown." 28 U.S.C. § 1657(a). The statute further specifies that "'good cause' is shown if a right under the Constitution of the United States or a Federal Statute . . . would be maintained in a factual context that indicates that a request for expedited consideration has merit." *Id*. While the Seventh Circuit does not have a rule specifically about expedited briefing, it does note that cases that satisfy the "good cause" requirement under Section 1657(a) "are to be given priority" as to oral argument. 7th Cir. R. 34(b)(1); *id*. (b)(1)(viii).

7

## ARGUMENT

### I.    The United States Has Not Shown Good Cause.

The United States has failed to show good cause that necessitates expediting the appeal. Appellant makes two arguments, neither of which are availing.

*First*, Appellant's argument that the "appeal presents the important purely legal question of whether the United States may demand [the] federal election records" at issue here, Mot. at 10, has no connection whatsoever to any need for expedition. Appellant's argument here, *see id.* at 10–12, amounts to nothing more than a premature and unauthorized attempt at an opening merits brief, explaining the multiple ways that the district court purportedly "erred" in reaching the unremarkable and identical conclusion that all other federal courts have also reached: USDOJ's claims are meritless and should be dismissed. Appellant does not provide any argument—let alone legal authority—about why an "important purely legal question" merits expedited review. *Id.* at 10. In fact, it seems more plausible that absent the prospect of irreparable injury or some other harm—which USDOJ does not identify— courts should not adopt hurried or emergency procedures in deciding particularly important legal questions. *See generally Trump v. CASA, Inc.*, 606 U.S. 831, 855 (2025) (warning against deciding "highly consequential cases . . .

8

in a fast and furious process of rushed, high-stakes, and low-information decisionmaking") (citation modified).

*Second*, Appellant's suggestion that "an expedited appeal will allow the United States to confirm that Wisconsin's voter rolls are composed solely" of eligible voters, Mot. at 13, is factually inaccurate and entirely speculative. The only relief that Appellant seeks in this case is for Wisconsin to turn over its unredacted voter file. *See* Ex. 8 ¶ 28, Dist. Ct. Dkt. 1; Ex. 9 at 3–4, Dist. Ct. Dkt. 2. The only question in this case is whether USDOJ can compel the production of unredacted voter data that is protected by law. Resolving *that* question does not have any impact on Wisconsin's routine and coexisting obligations to maintain accurate voter rolls, nor is it tied to any election. Thus, contrary to the United States' suggestion, this appeal is not temporally related to ongoing pre-election events that would necessitate expedited proceedings.

While it appears that the United States wants to use the data it collects to raise unsupported questions about Wisconsin's voter roll maintenance program, those are not time-sensitive concerns. Unlike in election law cases requiring expedition, a free and fair election for Wisconsin's voters in 2026 can proceed without accelerating the resolution of United States' appeal.

The United States argues that before the 2026 elections "Wisconsin voters need to know that their election is secure and that non-citizens,

deceased individuals, former residents, nonresidents, and voters with multiple records are not registered to vote in that election." Mot. at 3. It is entirely speculative that USDOJ's acquisition of Wisconsin's voter data will contribute to state residents' collective knowledge about the security and accuracy of federal elections. In fact, the data the United States seeks cannot prove or disprove the accuracy of Wisconsin's state voter roll. The United States seeks a static voter list, whereas Wisconsin's voter list is constantly evolving, and neither impact the outcome of elections, which are determined by actual voters, not potentially erroneously listed registrants. *See, e.g.*, Ex. 1 at 5–7, July 2 Letter (WEC describing how it coordinates its voter registration list with other databases, and how the Commission receives certain data "daily" and "monthly," which affects the accuracy of the list at any given time); *id.* at 15, Dec. 11 WEC Letter ("The vast majority of list maintenance work consists of routine updates"); Ex. 11 at 5–6, Dist. Ct. Dkt. 77; *see also, e.g.*, Ex. 12 at 5, *United States v. Fontes*, No. 2:26-cv-66-SMB, Dkt. No. 8-4 (Arizona Secretary of State informing USDOJ that the voter file "alone does not provide evidence regarding Arizona's compliance with" federal law and instead "merely captures a snapshot in time and provides little information about list maintenance activities.").

And despite Appellant's fact-free innuendo, it does not allege—let alone

10

provide any actual proof of—any supposed "ineligible voters remaining on [Wisconsin's] voter rolls." Mot. at 14. Appellant has provided no proof that "many [absentee] ballots [will] potentially [be] going to ineligible voters, fraudulent registrants, or other individuals who should not have been registered." *Id.* at 3. In fact, Appellant has repeatedly emphasized that this action is designed "to facilitate *pre-suit* investigation," Ex. 13 at 8, Dist. Ct. Dkt. 71, when "no factual allegations of a substantive violation of federal law are required," *id.* at 7. Only now that it suits them, Appellant insists that calamity will strike unless this Court gives it what it wants.

Both of Appellant's arguments for good cause for expedition are meritless, and this Court should deny its motion accordingly.

## II.    The United States' Delay in This Case Further Prevents Any Finding of Good Cause.

Further, the United States' own delay in initiating and litigating this case belies its own argument for supposed "good cause." While there is limited case law evaluating 28 U.S.C. § 1657(a), courts evaluating legal tests involving analogous standards have held that "[g]ood cause cannot arise as a result of the [party's] own delay." *Nat'l Res. Defense Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 114 (2d Cir. 2018); *see also Env't Def. Fund, Inc. v. E.P.A.*, 716 F.2d 915, 921 (D.C. Cir. 1983) ("the good cause exception does not apply when an alleged 'emergency' arises as the result of [a party's] own

11

delay"); PRACTITIONER'S HANDBOOK FOR APPEALS TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT (2020 ed.) at 102 ("One important question the court considers when a litigant seeks emergency relief is whether the litigant has brought the emergency on itself. If so, that may be a good reason to conclude the litigant is not entitled to emergency relief." (citing *Morgan v. White*, 964 F.3d 649, 651-52 (7th Cir. 2020) (per curiam))). Further, courts often deny relief in elections cases where "a plaintiff has unreasonably delayed bringing his claim." *Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016).

Here, even if Appellant actually needed relief before the upcoming elections—which it does not—it has only itself to blame. WEC responded to USDOJ's initial letter just over two weeks after receiving it, offering USDOJ the publicly available voter file. USDOJ then *waited five months* to respond, demanding the unredacted version. This delay was utterly unnecessary. As of December 2, 2025—the date that USDOJ made its demand after five months of waiting—USDOJ had already brought several of its cookie-cutter lawsuits demanding access to states' unredacted voter files. *See, e.g.*, *Bellows*, No. 25-cv-468, Dkt. No. 1 (D. Me. Sept. 16, 2025); *Weber*, No. 25-cv-9149, Dkt. No. 1 (S.D. Cal. Sept. 25, 2025); *Simon*, No. 25-cv-3761, Dkt. No. 1 (D. Minn. Sept. 25, 2025); *Amore*, No. 25-cv-639, Dkt. No. 1 (D.R.I. Dec. 2, 2025). Indeed,

12

USDOJ brought six such suits against other states on the exact same day it sent its letter to Wisconsin.[1] There is no novelty or surprise to USDOJ's claim here. Nor did the December 2, 2025 letter take much effort to compile: it was a half-page email. *See* Ex. 1 at 11, December 2 Letter. This five-month delay alone is grounds to deny Appellant's motion. *See generally Washington v. Trump*, No. 2:25-CV-00244-LK, 2025 WL 3144950, at *4 (W.D. Wash. Nov. 10, 2025) (federal government defendants' "long delays in taking action here suggest that they . . . will not suffer irreparable harm"); *Grundmann v. Trump*, 786 F. Supp. 3d 188, 193 (D.D.C. 2025) (same).

Further, even after delaying so long in filing this case, Appellant still did not move with any urgency to litigate it. It waited nearly two weeks to effectuate service of its complaint. *See* Ex. 10, Dist. Ct. Dkt. 32; Ex. 2, Dist. Ct. Dkt. 26. It jointly proposed and received a briefing schedule that gave the parties more time than the Federal Rules contemplate for both the motion to dismiss and Appellant's opposition. *See* Ex. 3, Dist. Ct. Dkt. 46; Ex. 4, Dist. Ct. Dkt. 53. USDOJ waited more than a week to notice its appeal in this case following entry of judgment, *see* Ex. 7, Dist. Ct. Dkt. 91, and more than two

---

[1] *See* U.S. Dep't of Just., Press Release, *Justice Department Sues Six Additional States for Failure to Provide Voter Registration Rolls* (Dec. 2, 2025) https://www.justice.gov/opa/pr/justice-department-sues-six-additional-states-failure-provide-voter-registration-rolls.

weeks from the entry of judgment to filing this motion to expedite. The district court's dismissal order could not possibly have snuck up on Appellant, given that it was preceded by six dismissals in USDOJ's other cases seeking states' unredacted voter files. *See supra.* Nor can USDOJ claim it needed to study whether the issue was worthy of appeal, given that it had already appealed several of those adverse orders in other cases. If this case were so urgent, USDOJ should have treated it with urgency at any point in the past year. It cannot ask this Court to bear the burden of its own delinquency to engineer good cause.

### III.  The Proposed Briefing Schedule Cannot Realistically Provide Appellant Any Relief.

Appellant's motion to expedite is predicated on the idea that relief is needed ahead of Wisconsin's "primaries set for August 11, 2026, and the general election to take place on November 3, 2026." Mot. at 3. But its motion cannot actually help them there. For example, Appellant proposes that its reply brief would be due on August 5, 2026, *see id.* at 4—just *six days* before the August 11, 2026 primary. USDOJ further "request[s] that argument take place in September 2026," *id.*—which is, of course, *after* the August 11, 2026 primary. This expedited schedule cannot possibly secure Appellant relief for the upcoming primary election.

It also cannot realistically help Appellant for the November 3, 2026 general election, either. Wisconsin law sets out a September 17, 2026 deadline for municipal clerks to send absentee ballots to voters for purposes of the November general election. *See* Wis. Stat. § 7.15(1) (2025); Ex. 14 at 18, Wis. Elections Comm'n Calendar of Elec. Events Nov. 2025–Jan. 2027. In other words, Wisconsin voters would receive absentee ballots either before, or shortly after, when Appellant proposes this Court first hold argument. And even if this Court were somehow able to hold argument and issue a ruling overturning the district court's decision before September 17, 2026, that judgment would only— at best—grant USDOJ access to Wisconsin's unredacted voter file.[2] *See* Ex. 8 ¶ 28, Dist. Ct. Dkt. 1; Ex. 9 at 3–4, Dist. Ct. Dkt. 2.

Yet such a decision could not itself require any list maintenance in advance of the November 3, 2026 election because USDOJ does not seek that relief in this case. *See supra* Argument Section I. Upon receiving a favorable ruling, Appellant would still need to receive the unredacted list, review it in detail, conduct thorough analyses to detect some sort of violation of federal law, and then institute some sort of proceeding—the contours of which are completely speculative, infeasible, and unspecified by USDOJ—to begin to try

---

[2] Of course, this Court could also simply reverse and remand to the district court, in which case USDOJ would not even receive Wisconsin's unredacted voter list at that time.

15

to investigate and potentially remove purportedly ineligible voters ahead of a federal election. All of this is doubly impossible given that registered voters must be given adequate notice and time to respond under federal law and have particular protections against removal so close to a federal election. *See* 52 U.S.C. § 20507. Simply put, there is no realistic pathway for USDOJ to remedy its (nonexistent) problem even if it received the schedule it seeks and obtained an almost immediate favorable ruling.

## CONCLUSION

For the foregoing reasons, this Court should deny Appellant's motion to expedite briefing in this appeal.

Dated: June 18, 2026

Douglas M. Poland
Scott B. Thompson
Law Forward, Inc.
222 W. Washington Ave., Ste. 680
Madison, WI 53703
dpoland@lawforward.org
sthompson@lawforward.org
608.283.9822

Respectfully submitted,

*/s/ Jonathan Topaz*
Jonathan Topaz
Theresa J. Lee
Sophia Lin Lakin
American Civil Liberties Union Foundation
125 Broad St., 18th Floor
New York, NY 10004
(212) 549-2500
jtopaz@aclu.org
tlee@aclu.org
slakin@aclu.org

Ryan V. Cox
ACLU of Wisconsin Foundation, Inc.
207 East Buffalo Street, Suite 325
Milwaukee, WI 53202
Tel.: (414) 272-4032
Fax: 414-272-0182
rcox@aclu-wi.org

*Attorneys for Defendants-Intervenors-Appellees Common Cause, Melissa*

16

*Adams, Amanda Makulec, and Jaime Riefer*

17

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the requirements of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this brief contains 3,677 words. This brief further complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and Seventh Circuit R. 32(b) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in proportionally spaced typeface using Microsoft Word for Office 365 in 13-point Century Schoolbook Font.

Dated: June 18, 2026                                  Respectfully submitted,

                                                      /s/ *Jonathan Topaz*
                                                      Jonathan Topaz

                                                      *Attorney for Defendants Intervenors-*
                                                      *Appellees Common Cause, Melissa*
                                                      *Adams, Amanda Makulec, and*
                                                      *Jaime Riefer*

18