No. 26-2217

IN THE

# United States Court of Appeals
### For the Seventh Circuit

---

**UNITED STATES OF AMERICA**,

*Plaintiff-Appellant*,

v.

**WISCONSIN ELECTIONS COMMISSION**, *et al.*,

*Defendants-Appellees*,

and

**COMMON CAUSE**, *et al.*,

*Intervening Defendants-Appellees*.

---

On Appeal from the United States District Court
for the Western District of Wisconsin, Case No. 3:25-cv-01036-jdp.
The Honorable James D. Peterson, Presiding.

---

## BRIEF OF *AMICUS CURIAE* THE REPUBLICAN PARTY OF WISCONSIN IN SUPPORT OF APPELLANT, THE UNITED STATES OF AMERICA, AND REVERSAL

---

Nicholas J. Boerke
CHALMERS, ADAMS, BACKER & WALLEN, LLC
1045 W. Glen Oaks Ln, Suite 103
Mequon, WI 53092
(262) 698-6124
nboerke@chalmersadams.com

Counsel for *Amicus Curiae*
Republican Party of Wisconsin

## DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, the Republican Party of Wisconsin ("RPW") states as follows:

1. RPW is a state political party. It is not a publicly held corporation, does not issue stock, has no parent corporation, and no publicly held corporation owns ten percent or more of any stock in it.

2. The name of the only law firm whose partner or associate has appeared for RPW in this case, or is expected to appear in this Court, is:

CHALMERS, ADAMS, BACKER & WALLEN, LLC
**Main Office:**
11770 Haynes Bridge Road, #205-415
Alpharetta, GA 30009-1968
(678) 582-8900
**Wisconsin Office:**
1045 W. Glen Oaks Lane, Suite 103
Mequon, WI 53092
(262) 698-6124

3. Pursuant to Rule 29(a)(4)(E), no party's counsel authored this brief in whole or in part; no party or party's counsel contributed money intended to fund preparing or submitting this brief; and no person other than RPW, its members, or its counsel contributed money intended to fund preparing or submitting this brief.

/s/ *Nicholas J. Boerke*
Nicholas J. Boerke, Esq.
CHALMERS, ADAMS, BACKER & WALLEN, LLC
Counsel for *Amicus Curiae*
Republican Party of Wisconsin

ii

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iv

INTEREST OF THE *AMICUS CURIAE* ............................................................. 1

INTRODUCTION ................................................................................................... 2

DISCUSSION ......................................................................................................... 4

    I.    Wisconsin's registration list is built entirely from records that come into election officials' possession. ................................................... 5

        A.    Wisconsin's voter registration law and procedure prove that the district court erred. ............................................... 6

        B.    Every substantive field in the SVRL originates with the registrant. .................................................................................. 9

        C.    Compiling records does not place them beyond Title III. .................................................................................................... 11

    II.    The Attorney General's investigation of Wisconsin's SVRL is particularly necessary. .............................................................................. 12

        A.    WEC disclaims any duty to keep non-citizens off the SVRL. ................................................................................................. 13

        B.    WEC has abandoned list maintenance and shifted blame to clerks. ......................................................................... 15

        C.    WEC's responses to the Attorney General's inquiries validate the need for investigation. ......................................... 17

    III.    Wisconsin privacy law does not prevent the Attorney General's investigation. ................................................................................. 18

CONCLUSION ....................................................................................................... 19

CERTIFICATE OF COMPLIANCE .................................................................... 21

CERTIFICATE OF SERVICE .............................................................................. 22

## TABLE OF AUTHORITIES

**Cases**

*Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647 (2021) ................................... 1, 14

*Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181 (2008) .................................... 18

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) ...................................................... 12, 17

*Osborn v. Bank of the U.S.*, 22 U.S. (9 Wheat.) 738 (1824).......................................... 2

*Purcell v. Gonzalez*, 549 U.S. 1 (2006) (*per curiam*) ...................................................... 18

*State ex rel. Cerny v. Wis. Elections Comm'n*,
   No. 2024CV001353 (Wis. Cir. Ct. Waukesha Cnty.) ............................................ 4, 13

*State ex rel. Zignego v. Wis. Elections Comm'n*,
   2021 WI 32, 396 Wis. 2d 391, 957 N.W.2d 208 .................................................... 8, 16

*United States v. Benson*,
   No. 26-1225, 2026 WL 1815425 (6th Cir. June 24, 2026)...................................... 11

**Constitutional Provisions**

Wis. Const. art. III, § 1 ....................................................................................... 3, 6, 13

**Statutes**

52 U.S.C. § 20701............................................................................................................ 2, 5

52 U.S.C. § 20703............................................................................................................ 2, 5

52 U.S.C. § 21083(a)(1)(A) ................................................................................ 4, 8, 10, 12

Wis. Stat. § 165.77(1)(b) ................................................................................................... 19

Wis. Stat. § 5.05(15)........................................................................................................... 12

Wis. Stat. § 6.02 ............................................................................................................... 1, 6

Wis. Stat. § 6.27 .................................................................................................................... 6

Wis. Stat. § 6.28 .................................................................................................................... 6

Wis. Stat. § 6.29 .................................................................................................................... 6

Wis. Stat. § 6.30 .................................................................................................................... 6

Wis. Stat. § 6.30(5) .................................................................................................... 8

Wis. Stat. § 6.32 ....................................................................................................... 7

Wis. Stat. § 6.32(1) .................................................................................................. 7

Wis. Stat. § 6.32(2) .................................................................................................. 7

Wis. Stat. § 6.32(3) .................................................................................................. 7

Wis. Stat. § 6.32(4) .................................................................................................. 7

Wis. Stat. § 6.33(1) ............................................................................................ 5, 7, 9

Wis. Stat. § 6.34(2) ................................................................................................ 15

Wis. Stat. § 6.34(3) ................................................................................................ 15

Wis. Stat. § 6.36(1)(a) .......................................................................................... 9, 18

Wis. Stat. § 6.36(1)(b) .......................................................................................... 8, 19

Wis. Stat. § 6.36(1)(bm) .......................................................................................... 19

Wis. Stat. § 6.36(1)(c) .............................................................................................. 8

Wis. Stat. § 6.55 ....................................................................................................... 6

Wis. Stat. § 7.52(5) ................................................................................................. 13

v

## INTEREST OF THE *AMICUS CURIAE*[1]

The Republican Party of Wisconsin ("RPW") is one of the state's two major political parties, with members in all seventy-two counties. Its members are qualified electors[2] who have voted, and intend to keep voting, in federal, state, and local elections; they include state and federal legislators, local officials, and candidates for public office. Their ballots carry the intended weight only if voter rolls are accurate and free of ineligible voters. Every ballot cast by an ineligible voter, including a non-citizen, cancels or dilutes the vote of a qualified elector—RPW's members among them. *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 671–72 (2021) (fraudulent votes "dilute the right of citizens to cast ballots that carry appropriate weight").

RPW appeared in the district court and has participated in Wisconsin's recurring voter roll maintenance issues. RPW writes to give this Court what the parties' briefs cannot or will not: a Wisconsin-grounded account of how the state's voter registration records are obtained and compiled, and of the conduct by the Wisconsin Elections Commission ("WEC") that makes the Attorney General's inspection authority not merely lawful here, but necessary. That account matters because the district court did not just misread a statute; it placed records that determine whether qualified electors' votes count beyond inspection, even for a confidential investigation by the Nation's top law enforcement agency.

---

[1] All parties were timely notified of RPW's intent to file. The United States of America, Common Cause, The Wisconsin Alliance for Retired Americans, and Forward Latino have all consented; RPW has separately moved this Court for leave to file.

[2] Pursuant to Wisconsin election law, Wis. Stat. § 6.02 *et seq.*, an "elector" is a legal term of art meaning an individual qualified to vote under Wisconsin law.

**INTRODUCTION**

"**A JUDGE WHO LIKES EVERY OUTCOME HE REACHES IS VERY LIKELY A BAD JUDGE—STRETCHING FOR RESULTS HE PREFERS RATHER THAN THOSE THE LAW DEMANDS.**" – JUSTICE NEIL GORSUCH[3]

The district court held that Wisconsin's statewide voter registration list ("SVRL") is not a "record[]" or "paper[]" subject to the Attorney General's inspection demand under Title III of the Civil Rights Act of 1960, 52 U.S.C. §§ 20701, 20703 ("Title III"), because election officials supposedly "created" the SVRL itself rather than receiving it from an outside source. Doc. 89, at 6–7.[4]  That premise is factually false.  The district court's decision is a result reached first and reasoned to second. Courts "are the mere instruments of the law, and can will nothing." *Osborn v. Bank of the U.S.*, 22 U.S. (9 Wheat.) 738, 866 (1824). Enforcing that discipline is precisely why the courts of appeals exist.

WEC does not conjure its SVRL from nothing.  As detailed below, every substantive item in the list—a registrant's name, address, date of birth, driver's license number, and sworn attestation of United States citizenship—**comes directly from the registrant**, who supplies it on an application signed under penalty of perjury.  Wisconsin law then requires election officials to compile those registrant-supplied records into a single statewide list.  The SVRL is a compilation of records

---

[3] *Full Transcript and Video: Trump Picks Neil Gorsuch for Supreme Court*, N.Y. TIMES (Jan. 31, 2017), https://www.nytimes.com/2017/01/31/us/politics/full-transcript-video-trump-neil-gorsuch-supreme-court.html (accessed Jul. 9, 2026).

[4] "Doc. __, at __" refers to the number of the document on the district court docket in this case and the page number pincite, if applicable.

that indisputably "come into" election officials' possession from the registrants themselves or other outside sources related to each registrant. Calling that compilation "internally created" conflates creating records with arranging them. The information is the registrant's; election officials merely format it as HAVA commands.

That distinction resolves this appeal on the Attorney General's terms, and we will not repeat the textual analysis the United States has ably presented. RPW writes to develop two important points.

***First***, understanding how Wisconsin voter registration records are created by the registrant and provided to election officials dissolves the district court's "self-generated" rationale. Section I walks through the mechanics: the voter completes and swears to the voter registration application; the clerk enters the registrant's attestations; and the statewide list is the mandated compilation of the registrant's information and attestations.

***Second***, and of decisive importance here, WEC's own conduct makes the Attorney General's investigation not merely permissible but necessary. Section II documents the pattern. Wisconsin's Constitution now expressly provides that **only** United States citizens may vote—a measure adopted by more than seventy percent of Wisconsin voters.[5] Wis. Const. art. III, § 1. Yet WEC insists it has no duty to keep non-citizens off the rolls, no duty to investigate them, and no duty to remove them. WEC abandoned list-maintenance practices it had followed for years, and when

---

[5] Wis. Elections Comm'n, *2024 General Election Ref. Results*, WEC, Nov. 27, 2024, https://elections.wi.gov/sites/default/files/documents/County%20by%20County%20Report_Referendum.pdf (accessed Jul. 9, 2026).

3

Wisconsin citizens sued to compel it to verify citizenship, a Wisconsin court held that WEC bears a "plain and positive duty" to do exactly that—a ruling WEC is resisting on appeal at this very moment. *State ex rel. Cerny v. Wis. Elections Comm'n*, No. 2024CV001353 (Wis. Cir. Ct. Waukesha Cnty. Oct. 3, 2025), Doc. 67-6. The question answers itself: a state confident in the integrity of its SVRL does not obstruct a law enforcement investigation and litigate so hard to prevent it from ever occurring.

A state that insists it does not need to make any effort to identify ineligible voters—and fights every effort by the Nation's top law-enforcement agency to confidentially review its records—guarantees that ineligible voters remain. This active obstruction by the states, including WEC, is precisely why Congress created the Attorney General's Title III authority. The district court's contrary reading places the single most important federal election record—the one HAVA designates "the official voter registration list for the conduct of all elections for Federal office," 52 U.S.C. § 21083(a)(1)(A)(viii)—beyond federal inspection at the very moment WEC's demonstrated neglect makes inspection essential.

WEC's conduct speaks for itself. This Court should reverse.

## DISCUSSION

The power vested in the Attorney General, the Nation's chief law enforcement officer, to investigate potential violations of the voting rights of **<u>all Americans</u>** is unequivocal, and the reasons offered to strip him of this power are without merit.

WEC and the intervenors prefer that the Attorney General turn a blind eye to the alleged failures of certain states, including Wisconsin, to properly maintain voter rolls and ensure only eligible voters are registered. That decision, however, is within

4

the province of the current President and his Attorney General, and, because of WEC's willful neglect, an investigation into Wisconsin's voter roll maintenance is necessary.

## I.    Wisconsin's registration list is built entirely from records that <u>come into</u> election officials' possession.

Title III requires "[e]very officer of election" to "retain and preserve" for twenty-two months "all records and papers which come into his possession relating to any application, registration, . . . or other act requisite to voting in" a federal election, 52 U.S.C. § 20701, and it entitles the Attorney General to demand that those records be made "available for inspection, reproduction, and copying." *Id.* § 20703. The district court thought Wisconsin's SVRL falls outside those words because WEC "created" it. Doc. 89, at 6–7. That reasoning cannot survive review of Wisconsin's voter registration law and procedure.

The express statutory language governing Wisconsin's voter registration requirements and processes settles the question. Pursuant to Wis. Stat. § 6.33(1), WEC is responsible for prescribing all voter registration application forms that municipal clerks must provide to registrants, and the Legislature commanded that:

> "The commission shall design the form **to obtain from each elector** information as to name; date; residence location; location of previous residence immediately before moving to current residence location; citizenship; date of birth; age; the number of a current and valid operator's license issued to the elector under ch. 343 or the last 4 digits of the elector's social security account number; . . ."
> Wis. Stat. § 6.33(1) (emphasis added).

This Court need not take RPW's word for it: Wisconsin law expressly requires that the records sought—namely a registrant's date of birth and driver's license

5

number or last 4 digits of their social security number—are **obtained from** each registrant and therefore indisputably come into the possession of election officials, including WEC. The statute's own verb, "obtain from each elector," describes acquisition of voter-generated information, not something created by WEC.

### A. Wisconsin's voter registration law and procedure prove that the district court erred.

Registration is mandatory in Wisconsin: "[e]ach elector shall register under this chapter before voting in any election . . ." Wis. Stat. § 6.27. A qualified elector is a United States citizen, age 18 or older, who has resided in a Wisconsin election district or ward for 28 consecutive days before the election. Wis. Const. art. III, § 1; Wis. Stat. § 6.02. The November 2024 constitutional amendment, approved overwhelmingly by Wisconsin voters, sharpened Article III to provide that **only** a United States citizen may vote in any national, state, or local election or referendum.[6] Citizenship is therefore **the** threshold qualification of the entire system—and, as shown below, the only core qualification Wisconsin election officials **never** independently verify at registration and that WEC refuses to ensure is enforced.

Wisconsin law recognizes four general methods of registration: by mail, online, in person with the municipal clerk, and in person at the polling place. Wis. Stat. §§ 6.28 (by mail or at the clerk's office), 6.29 (late registration, in-person), 6.30 (electronic registration), and 6.55 (polling place registration). Three of the four

---

[6] *See supra* note 5.

pathways (in-person at the clerk's office, by mail, and at the polling place[7]) run on a single form: the Wisconsin Voter Registration Application, Form EL-131 (the "Voter Registration Application").[8] Wis. Stat. § 6.33(1). The Voter Registration Application requires each registrant to supply their name, residential address, mailing address, date of birth, Wisconsin driver license or DOT-issued ID number (or the last four digits of a Social Security number if no valid driver license), and prior registration information. *Id.* The Voter Registration Application includes only self-attestation to major qualifications, with simple boxes to check, one of which is the critical attestation that the registrant is a citizen of the United States.

The Voter Registration Application information is necessarily obtained and comes into the possession of election officials upon submission. The clerical process of reviewing for completeness, legibility, and then compiling the registration records begins once it comes into the election officials' possession. Wis. Stat. § 6.32. The review is clerical: the official confirms sufficiency or completeness; he or she does not add any substantive information or alter the record. *Id.* § 6.32(1). If the Voter Registration Application is insufficient or untimely, the registrant is notified and the registrant, not the election official, must rectify the issue(s). *Id.* §§ 6.32(2), (3). If it is sufficient, the information directly received from the registrant is then simply compiled or "**entered into the registration list**." *Id.* § 6.32(4) (emphasis added). At

---

[7] Registration at the polling place on Election Day requires the same Voter Registration Application, including the same information, and the same process explained herein. However, a registrant at the polling place may vote immediately upon sufficient completion of the application, before the new voter's records are compiled into the SVRL.

[8] Wis. Elections Comm'n, *Voter Registration Application*, WEC, https://elections.wi.gov/wec-form/voter-registration-application (accessed Jul. 8, 2026).

this point, the voter-supplied information is compiled into, and becomes a part of, the HAVA-required SVRL by election officials.

The system utilized for compiling and housing these voter registration records is known as "WisVote."[9]  Wisconsin's SVRL was mandated to comply with HAVA § 303's requirement of "a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level" and is now administered using WisVote. 52 U.S.C. § 21083(a)(1)(A); *State ex rel. Zignego v. Wis. Elections Comm'n*, 2021 WI 32, ¶¶ 35–36, 396 Wis. 2d 391, 957 N.W.2d 208.  The voter-supplied information obtained via the Voter Registration Application is merely moved into WisVote by election officials authorized by Wis. Stat. § 6.36(1)(b)1.b., (1)(c).  The newly registered voter's record in the SVRL on WisVote is thus the electronic mirror of the Voter Registration Application.

In fact, when registering online, registrants themselves enter the exact same information required by the Voter Registration Application by completing the online application. Wis. Stat. § 6.30(5).  While not providing a "wet" signature for an electronic application, the online registrant still "must" authorize WEC "**to obtain from** the department of transportation an electronic copy of the elector's signature . . ." *Id.* (emphasis added).  In this case, the registrant creates the record and submits it directly to WEC, and WEC notifies the local election officials of a new or updated registration within their jurisdiction. *Id.*  Even with an electronic application, WEC does not create these records; they are **obtained and compiled**.

---

[9] *See* Wis. Elections Comm'n, *History of WisVote,* WEC, https://elections.wi.gov/history-wisvote (accessed Jul. 8, 2026).

**B. Every substantive field in the SVRL originates with the registrant.**

The Wisconsin Statutes and the registration process prove that the voter registration information, including the records sought by the Attorney General here, are **obtained** by and therefore **come into the possession of** WEC—either directly (in the case of online registration) or through local election officials—and are then clerically compiled into Wisconsin's SVRL. The registrant supplies, *inter alia*, his or her name, residential address, date of birth, and a driver's license number or the last four digits of a Social Security number. Wis. Stat. § 6.33(1). Whatever the channel through which the registrant supplies that information, the substantive content is identical, obtained by WEC, and compiled in its SVRL.

The SVRL is the statutorily mandated compilation of this voter-supplied information and other records that come into WEC's possession relating to each registration. Every category of information the SVRL must contain under Wis. Stat. § 6.36(1)(a)1.–16. is either supplied by the voter (the Voter Registration Application data), generated by the voter's own act of voting (participation history), derived from processing the voter's submission (the WisVote number), or obtained from another outside source in connection with the registration (the Department of Corrections list, § 6.36(1)(a)9.). These records are not authored, created, or somehow generated anew by WEC.

The district court never engaged with any of this—by its own admission—and it could have. Doc. 89, at 8 n.3. That concession is fatal to the judgment and requires reversal. The district court dismissed the Attorney General's complaint on the

9

premise that the SVRL is a record WEC "creates" rather than receives—while claiming it did not know what the SVRL contains or where its contents come from. Doc. 89, at 6–8. A holding that rests on an unexamined factual premise cannot stand once the premise is examined. Wisconsin law supplies the answer the district court lacked, and the answer requires reversal: every field in the list comes into election officials' possession from an outside source and the compilation of those received records is precisely what HAVA commands.

HAVA requires each state to maintain a single, centralized, computerized list containing "the name and registration information of every legally registered voter in the State," 52 U.S.C. § 21083(a)(1)(A)(ii), and to enter each voter's information into that list "at the time the information is provided to the local official." *Id.* § 21083(a)(1)(A)(vi). The SVRL is not an independently created WEC work product. It is a container for records the voter created and handed to election officials. Strip out the voter-supplied fields and nothing of substance remains—then strip out the other information that WEC obtains from other sources related to the registrant and only the clerically assigned WisVote number remains.

Each registration record therefore "come[s] into" the possession of a Wisconsin election official the moment the voter submits it, whether electronically, via mail, at the clerk's office, or at the polling place. The SVRL is the aggregate of those individually received records. That an official later compiles them does not change where they came from and what they really are: "records" subject to Title III.

### C.　Compiling records does not place them beyond Title III.

The district court adopted reasoning that the phrase "come into his possession" covers only records "received from prospective voters or other outside sources, not records created by the state itself." Doc. 89, at 6–7. That reading fails on its own terms and, in any event, does not describe Wisconsin's SVRL detailed above.

To begin, the statutory phrase marks a temporal boundary, not a source restriction. An official "comes into" possession of a record when he acquires it and thereafter holds it; the phrase fixes when the retention duty attaches, distinguishing records acquired during an official's tenure from those never acquired at all. *See United States v. Benson*, No. 26-1225, 2026 WL 1815425, at \*11 (6th Cir. June 24, 2026) (Nalbandian, J., dissenting). The *Benson* majority held otherwise, but its reading fails for the reasons Judge Nalbandian explained and, in any event, would not control here. Congress said "come into his possession" rather than "are in his possession" to focus on how and when an official acquires a record—not to carve out records an official happens to compile.

Even if a source distinction existed, it would not help WEC, because the records here do come from outside sources. As shown above, every substantive field in the list originates with the individual registrant, and all are obtained by WEC. The compilation is a ministerial act HAVA requires; it is not authorship or some form of newly generated information as the district court assumed. Congress used the broad phrase "all records and papers which come into his possession relating to any application [or] registration," 52 U.S.C. § 20701, and a statewide list of registrations is the paradigmatic record "relating to" registrations.

11

Nor does HAVA's requirement that the list be continuously updated take it outside Title III. A list does not cease to be a "record" because it changes; an official "retains and preserves" a dynamic list precisely by keeping it current. Records are added, changed, or removed when new information comes into the possession of election officials. Title III's "sweeping" command, *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962), reaches the very record HAVA makes indispensable to every federal election. The district court's contrary construction would exempt perhaps the most consequential election record of all.

## II. The Attorney General's investigation of Wisconsin's SVRL is particularly necessary.

It is the Attorney General's duty to protect the voting rights of **all Americans** in all the States, but even a correct reading of Title III might seem abstract without the facts that make an investigation into Wisconsin's SVRL particularly necessary. Those facts are damning.

WEC and other election officials throughout Wisconsin have willfully neglected their responsibilities to properly administer elections according to the law. WEC is Wisconsin's chief election authority, charged by HAVA and Wisconsin law with the proper maintenance of the SVRL. 52 U.S.C. § 21083(a)(1)(A); Wis. Stat. § 5.05(15). It has repeatedly refused to do that job—disclaiming responsibility, abandoning practices it once followed, and litigating for years to avoid scrutiny. The predictable result is an SVRL that WEC itself will not vouch for. When a state both refuses to identify ineligible voters and fights every attempt to make it do so, the case for federal investigation is at its strongest.

12

### A.     WEC disclaims any duty to keep non-citizens off the SVRL.

Non-citizens cannot vote in federal elections, and in November 2024, Wisconsin voters amended the State Constitution to remove any doubt that the same prohibition applies to all elections within the state: clarifying that "only" U. S. citizens may vote in Wisconsin's elections. Wis. Const. art. III, § 1 (emphasis added). That amendment passed with more than seventy percent of the statewide vote.[10]

Against that unambiguous backdrop, WEC has taken the remarkable position that Wisconsin statutes "do not require the Commission to prevent non-U.S. citizens from appearing on the list or to remove non-U.S. citizens from the list." *Cerny*, Doc. 67-6, at 7–8. A Wisconsin court called that position "[s]hocking[]." *Id.* In response to the Attorney General's inquiry here, WEC further admitted that it does nothing to identify and remove non-citizens from the SVRL. Doc. 3-1, at 9. WEC claims that "[r]egistrants ineligible due to non-citizenship are identified through the statutory challenge process or through law enforcement reporting," a mechanism that WEC knows is objectively inadequate and ineffective.[11] *Id.* The mechanism WEC points to is the statutory challenge process, Wis. Stat. §§ 6.92–6.95, 7.52(5), which requires individual voters or local election officials to personally confront a suspected ineligible voter, in person, at the polls, and swear to personal knowledge of that person's ineligibility. In a state with mail-in and early voting and municipalities of hundreds of thousands of voters, that process cannot realistically detect non-citizen

---

[10] *See supra* note 5.

[11] *See, e.g.,* Steven Potter & Frederica Freyberg, *How often do non-US citizens vote in Wisconsin elections?,* PBS Wis*.,* Apr. 12, 2024, https://pbswisconsin.org/news-item/how-often-do-non-us-citizens-vote-in-wisconsin-elections/.

13

registrations, no matter how many exist. WEC knows it. Relying on a process one knows to be ineffective, while refusing the tools that would actually work, is willful neglect.

The clearest refutation of WEC's do-nothing posture comes from *Cerny*. Wisconsin electors sought a *writ of mandamus* to require WEC to verify the citizenship of registrants and to determine whether non-citizens appear on the rolls. *See* Doc. 67-6, at 3–4. The court granted the *writ*. *Id.* at 13. It held that "WEC has a plain and positive duty to determine whether any non-citizens are currently listed as eligible voters on Wisconsin's voter rolls." *Id.* at 13.

The court reached that result because Wisconsin law entrusts elections to WEC on the premise that only "legal votes" by "legally qualified electors" are counted and reasoned that this promise is empty if no one ensures that only eligible electors register. *Id.* at 8–10. As the court put it, if even one non-citizen is on the rolls and casts one unlawful ballot, a lawful voter's ballot is diluted. *Id.* at 12. That is the same dilution principle the Supreme Court recognized in *Brnovich*, 594 U.S. at 671-72.

True to form, WEC is resisting even that order on appeal. The point for this Court is not to resolve the state-law dispute but to see it clearly: a Wisconsin court held that WEC must verify citizenship and audit its rolls, and WEC is fighting to avoid doing either. In that setting, the DOT-matched, unredacted list the Attorney General seeks—containing the driver's license numbers and Social Security identifiers that make citizenship verification possible—is not a fishing expedition. It is the very tool a Wisconsin court has said the law requires WEC to use.

14

As long as WEC remains derelict in its plain and positive duty, there is nothing stopping a non-citizen from registering and voting in Wisconsin other than the non-citizen's own self-attestation.  Registration requires proof of residency, but that only verifies one's residential address. Wis. Stat. § 6.34(2)–(3).  A utility bill, lease, or paycheck says nothing about citizenship, and several qualifying documents are routinely issued to non-citizens, including, most notably, Wisconsin driver licenses and ID cards.    Between 2019 and 2024, the Wisconsin Department of Transportation's Division of Motor Vehicles (DMV) issued more than 258,000 driver's licenses and over 41,000 identification cards to non-citizens—roughly 300,000 credentials that can satisfy both proof of residency and identification requirements.[12]

WEC does not deny that non-citizens have registered and voted in Wisconsin; it simply asserts that the numbers are too small to warrant concern.    But simultaneously it is opposing every effort to find out what the numbers actually are. That posture is not neutrality. It is willful blindness.

Despite the voters' overwhelming constitutional mandate, citizenship "verification" in Wisconsin rests entirely on the registrant checking a box.  The only way to "resolve the debate" over non-citizen registration is to examine the list against reliable citizenship data, exactly what the Attorney General proposes.

**B.    WEC has abandoned list maintenance and shifted blame to clerks.**

WEC's refusal to police citizenship is part of a broader pattern.  For years WEC followed a practice of acting on reliable information that registrants had moved: it

---

[12] Potter & Freyberg, *supra* note 11.

notified affected registrants and, absent a response, deactivated stale registrations. In 2019, without any change in state or federal law, WEC abruptly abandoned that practice. *See Zignego*, 2021 WI 32, ¶¶ 45–50 (R.G. Bradley, J., dissenting) (documenting the change in WEC's maintenance practices).

When Wisconsin electors sued to compel WEC to resume list maintenance, WEC litigated the matter for years and ultimately escaped the *mandamus* by insisting that the relevant duty ran to municipal clerks instead. *See Zignego*, 2021 WI 32, ¶¶ 1–2. Whatever the merits of its position, the result is telling: Wisconsin's chief elections authority—the very entity charged with maintaining the statewide list—told its own supreme court that keeping the SVRL current was somebody else's problem. A state should not centralize its registration list as HAVA requires and then disclaim responsibility for maintaining it.

The consequences of not maintaining its SVRL are measurable, and the damage done to election integrity in Wisconsin is not speculative. Research by a Wisconsin-based law and policy firm identified the scale of WEC's mismanagement. Before the November 2020 election, there were 95,150 mismatches between Wisconsin's voter roll and Wisconsin DOT records.[13] This was concerning, but the more recent data is even more alarming, showing that voting record errors accelerated as WEC continues to fight any effort to properly investigate the accuracy

---

[13] Will Flanders, *et al.*, *A Review of the 2020 Election,* Wis. Inst. for L. & Liberty (Dec. 2021), https://will-law.org/wp-content/uploads/2022/05/2021ReviewStudy.pdf (accessed Jul. 9, 2026).

of its voter roll.[14]  Since 2021, the number of mismatches nearly tripled where there was no driver license number match and where there was no match for both name and date of birth.[15]  These are not abstractions; they are the accumulating residue of a maintenance system its own steward will not tend.

### C.    WEC's responses to the Attorney General's inquiries validate the need for investigation.

WEC claims that it has provided detailed information on its voter roll maintenance efforts to the Attorney General and that its "efforts" go even further "beyond anything federal law requires." Doc. 58, at 5.  The facts tell a very different story.  The cursory and dismissive responses WEC gave were insufficient. Doc. 3-1, at 5–9, 13–18.  For example, in response to a question from the Attorney General about **how** an ineligible registrant is identified, WEC explained the process that may occur **when** an ineligible individual is identified. Doc. 3-1, at 9.  WEC set forth no action it takes to identify registrants who have moved or who are non-citizens, admitting it has abdicated these responsibilities. *Id.*

This is why Title III exists.  The Attorney General's authority to inspect election records is a "purely investigative" power designed to let the United States assess compliance before deciding whether enforcement is warranted. *See Kennedy*, 306 F.2d at 225–26.  Requiring the United States to prove non-citizen voting before

---

[14] Letters from Lucas T. Vebber, Deputy Counsel, Wis. Inst. for L. & Liberty, Inc., to Maureen Riordan, Acting Chief, Voting Section, U.S. Dep't of Justice, Aug. 14, 2025, https://will-law.org/wp-content/uploads/2025/08/08-14-2025-WILL-letter-to-USDOJ-regarding-Wisconsin.pdf (accessed Jul. 9, 2026), and Oct. 27, 2025, https://will-law.org/wp-content/uploads/2025/10/FINAL-FINAL-Letter-to-USDOJ-1.pdf (accessed Jul. 9, 2026).

[15] *Id.*

it may inspect the records that would reveal non-citizen voting inverts the statute. Accurate rolls are an essential precondition for elections the public can trust. *See Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 196–97 (2008) (opinion of Stevens, J.); *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (*per curiam*). In a state whose election authority has made a practice of not looking, the records the Attorney General seeks are not just permissible to inspect. They are necessary.

**III.    Wisconsin privacy law does not prevent the Attorney General's investigation.**

One of the reasons that Congress enacted Title III was to preempt state and local laws being used to obstruct federal voting rights investigations.

Like Alabama in the 1950s, Wisconsin attempts to use state law to obstruct the Attorney General's investigation today. But the state law WEC relies on does not actually prohibit defendants from producing the complete voter roll to the Attorney General, so this Court need not even reach preemption. And if Wisconsin law did purport to bar production, Title III would preempt it. State law obstruction of federal voting rights investigations is precisely what Congress enacted Title III to override.

As discussed above, Wisconsin's SVRL is required by HAVA and WEC maintains it. Wis. Stat. § 6.36(1)(a). The SVRL contains data provided by registrants to election officials when registering to vote, including certain personally identifiable information ("PII") such as date of birth, and either a driver's license number or the last four digits of the individual's social security number. *Id.* The Wisconsin Legislature further mandated that, **<u>except for PII</u>**, the SVRL must be "open to public inspection" under public records law and "shall be electronically accessible by

18

any person." Wis. Stat. § 6.36(1)(b)1.

The fact that certain PII is not "open for public inspection" and not "accessible to any person" does not prevent the Attorney General from obtaining the information as part of his express investigatory powers. Moreover, the Wisconsin restriction on public disclosure of PII does not prevent WEC from providing all data, including PII, to a "law enforcement agency," which includes the Attorney General. Wis. Stat. § 6.36(1)(bm) (allowing WEC to transfer data, including PII restricted from public disclosure, to a "law enforcement agency," as defined in Wis. Stat. § 165.77(1)(b), which definition includes federal government units tasked with law enforcement and full-time employees authorized to make arrests).

The Attorney General's investigation does not legitimately risk violation of any privacy rights and is not prohibited by Wisconsin law, but obstructing the investigation does place the voting rights of all eligible voters in jeopardy. Those looking to block the investigation are not legitimately concerned about public dissemination of PII. They are concerned about what the Attorney General will find.

## CONCLUSION

For the reasons set forth above and in the United States' principal brief, this Court should reverse the judgment of the district court and remand with instructions to compel production of Wisconsin's unredacted SVRL to the Attorney General.

[signature page follows]

Dated: July 9, 2026

Respectfully submitted,

/s/ *Nicholas J. Boerke*
Nicholas J. Boerke
CHALMERS, ADAMS, BACKER & WALLEN, LLC
1045 W. Glen Oaks Ln, Ste. 103
Mequon, WI 53092
(262) 698-6124

Counsel for *Amicus Curiae*
Republican Party of Wisconsin

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) because, excluding the parts exempted by Rule 32(f), it contains 4,750 words, as counted by the word-processing system used to prepare it, and therefore does not exceed 6,500 words.

2. This brief complies with the typeface and type-style requirements of Rule 32(a)(5) and (a)(6), as modified by Circuit Rule 32(b), because it has been prepared in a proportionally spaced typeface using Microsoft Word in 12-point Century Schoolbook (11-point for footnotes).

/s/ *Nicholas J. Boerke*
Nicholas J. Boerke, Esq.
CHALMERS, ADAMS, BACKER & WALLEN, LLC
Counsel for *Amicus Curiae*
Republican Party of Wisconsin

21

## CERTIFICATE OF SERVICE

I certify that on July 9, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the CM/ECF system, which will serve a copy on all counsel of record.

/s/ *Nicholas J. Boerke*
Nicholas J. Boerke, Esq.
CHALMERS, ADAMS, BACKER & WALLEN, LLC
Counsel for *Amicus Curiae*
Republican Party of Wisconsin