No. 26-2217

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellant

v.

WISCONSIN ELECTIONS COMMISSION, *et al.*,

Defendants-Appellees

COMMON CAUSE, *et al.*,

Intervenors-Defendants-Appellees

On Appeal from the U.S. District Court for the Western District of Wisconsin
No. 3:25-cv-1036
The Honorable James Peterson Presiding

# BRIEF FOR THE DEMOCRATIC NATIONAL COMMITTEE AS AMICUS IN SUPPORT OF APPELLEES AND SUPPORTING AFFIRMANCE

Daniel J. Freeman
Democratic National Committee
430 South Capitol Street SE
Washington, DC 20001
(202) 860-8000
freemand@dnc.org

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 26-2217

Short Caption: United States v. Wisconsin Elections Commission

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Democratic National Committee

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Democratic National Committee, Perkins Coie LLP

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

None

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

None

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: /s/ Daniel J. Freeman Date: August 18 2026

Attorney's Printed Name: Daniel J. Freeman

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☑ **No** ☐

Address: Democratic National Committee, 430 South Capitol Street SE, Washington DC 20003

Phone Number: (202) 923-6429 Fax Number: N/A

E-Mail Address: freemand@dnc.org

## TABLE OF CONTENTS

INTEREST OF AMICUS CURIAE ........ 1

INTRODUCTION AND SUMMARY OF ARGUMENT ........ 2

STANDARD OF REVIEW ........ 3

ARGUMENT ........ 4

I. Federal Courts Must Ensure the Attorney General Provides the Actual Purpose of a Title III Demand. ........ 4

A. Judicial Enforcement of Title III Demand Requires Independent Judgment. ........ 4

B. DOJ Provides No Statutory Rationale to Insulate "the Purpose" of a Title III Demand from Scrutiny. ........ 7

II. The Title III Demand Does Not State "the Purpose Therefor." ........ 11

A. DOJ's Demand for Wisconsin's Unredacted Voter File Is Unrelated to Bona Fide HAVA Investigations. ........ 12

B. DOJ Failed to Disclose the Actual Purpose of Its Demand for Wisconsin's Unredacted Voter File. ........ 17

CONCLUSION ........ 20

## TABLE OF AUTHORITIES

### CASES

*Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960) ..................................... 9

*Am. Civ. Rts. Union v. Phila. City Comm'rs*, 872 F.3d 175 (3d Cir. 2017)................................. 15

*Am. Homeland Title Agency, Inc. v. Robertson*, 930 F.3d 806 (7th Cir. 2019) ............................. 4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................... 3, 12

*Becker v. United States*, 451 U.S. 1306 (1981) (Rehnquist, J., in chambers)................................ 9

*Bellitto v. Snipes*, 935 F.3d 1192 (11th Cir. 2019) ...................................................................... 15

*Bost v. Ill. State Bd. of Elections*, 607 U.S. 71 (2026) .................................................................. 1

*Cerny v. Wis. Elections Comm'n*,
No. 2024CV1353 (Wis. Cir. Ct. Waukesha Cnty. Nov. 5, 2025) ........................................... 16

*Cerny v. Wis. Elections Comm'n*, No. 2025AP2318 (Wis. Ct. App. Dist. IV Nov. 7, 2025)....... 16

*CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683 (D.C. Cir. 2017) ........ 6, 10

*CFTC v. Tokheim*, 153 F.3d 474 (7th Cir. 1998)............................................................................ 6

*Chaidez v. Ford Motor Co.*, 937 F.3d 998 (7th Cir. 2019)........................................................... 4

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) ...................................................................... 6

*Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799 (2024)..................... 10

*Dep't of Com. v. New York*, 588 U.S. 752 (2019)......................................................................... 12

*Dow Chem. Co. v. Allen*, 672 F.2d 1262 (7th Cir. 1982).............................................................. 8

*EEOC v. A.E. Staley Mfg. Co.*, 711 F.2d 780 (7th Cir. 1983) ...................................................... 5

*EEOC v. Aerotek, Inc.*, 815 F.3d 328 (7th Cir. 2016).................................................................... 3

*EEOC v. Bay Shipbuilding Corp.*, 668 F.2d 304 (7th Cir. 1981) ................................................. 9

*EEOC v. Ill. State Tollway Auth.*, 800 F.2d 656 (7th Cir. 1986) .................................................. 4

*EEOC v. Quad/Graphics, Inc.*, 63 F.3d 642 (7th Cir. 1995) ......................................................... 5

*EEOC v. Shell Oil Co.*, 466 U.S. 54 (1984).................................................................................. 6

*EEOC v. Sidley Austin Brown & Wood*, 315 F.3d 696 (7th Cir. 2002) ......................................... 8

*EEOC v. United Airlines, Inc.*, 287 F.3d 643 (7th Cir. 2002) ... 8, 11, 16

*Fosnight v. Jones*, 41 F.4th 916 (7th Cir. 2022) ... 3

*Foster v. Love*, 522 U.S. 67 (1997) ... 7, 17

*Green v. Warden*, 699 F.2d 364 (7th Cir. 1983) ... 12

*Greidinger v. Davis*, 988 F.2d 1344 (4th Cir. 1993) ... 1

*In re Gordon*, 218 F. Supp. 826 (S.D. Miss. 1963) ... 10

*Katzenbach v. McClung*, 379 U.S. 294 (1964) ... 9

*Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962) ... 9

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) ... 8, 9, 10

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) ... 13

*LULAC v. Exec. Off. of President*, 780 F. Supp. 3d 135 (D.D.C. 2025) ... 7

*Martin v. Great Lakes Indian Fish & Wildlife Comm'n*,
No. 92-C-409, 1992 WL 300841 (W.D. Wis. Oct. 7, 1992) ... 4

*McLane Co. v. EEOC*, 581 U.S. 72 (2017) ... 6

*Nat'l Republican Senatorial Comm. v. FEC*, 146 S. Ct. 2404 (2026) ... 2

*NFIB v. OSHA*, 595 U.S. 109 (2022) ... 7

*Niz-Chavez v. Garland*, 593 U.S. 155 (2021) ... 10

*Okla. Press Pub. Co. v. Walling*, 327 U.S. 186 (1946) ... 5

*Oneida Nation v. Vill. of Hobart*, 968 F.3d 664 (7th Cir. 2020) ... 4

*Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012) ... 1, 15

*Pub. Int. Legal Found. v. Benson*, 136 F.4th 613 (6th Cir. 2025) ... 12, 15

*Pub. Int. Legal Found. v. Wolfe*,
No. 24-3258, 2026 WL 2425386, at *1 (7th Cir. Aug. 19, 2026) ... 3

*Rapanos v. United States*, 547 U.S. 715 (2006) ... 10

*SEC v. Chenery Corp.*, 318 U.S. 80 (1943) ... 10

*SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735 (1984) ... 8

*Shelby Cnty. v. Holder*, 570 U.S. 529 (2013) .......... 9

*South Carolina v. Katzenbach*, 383 U.S. 301 (1966).......... 9

*Trump v. Mazars USA, LLP*, 591 U.S. 848 (2020) .......... 7

*U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995).......... 7

*United States v. Bellows*, No. 1:25-cv-468, 2026 WL 1430481 (D. Me. May 21, 2026).......... 8

*United States v. Benson*, 179 F.4th 470 (6th Cir. 2026) .......... 6, 12, 17

*United States v. Benson*, 819 F. Supp. 3d 753 (W.D. Mich. 2025) .......... 5

*United States v. Clarke*, 573 U.S. 248 (2014).......... 5, 20

*United States v. Evans*, No. 1:25-cv-4403, 2026 WL 2267774 (D.D.C. Aug. 6, 2026).......... 4

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950).......... 5

*United States v. Oregon*, 828 F. Supp. 3d 1092 (D. Or. 2026).......... 8

*United States v. Powell*, 379 U.S. 48 (1964) .......... passim

*United States v. Rivers*, 108 F.4th 973 (7th Cir. 2024).......... 9

*Universal Health Servs., Inc. v. United States ex. rel. Escobar*, 579 U.S. 176 (2016).......... 18

*Walsh v. Alight Solutions LLC*, 44 F.4th 716 (7th Cir. 2022).......... 3, 5, 6

*Watson v. Republican Nat'l Comm.*, 146 S. Ct. 2165 (2026) .......... 17

*Younger v. Harris*, 401 U.S. 37 (1971).......... 17

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952) .......... 7

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art. I, § 4, cl. 1.......... 7

**STATUTES**

42 U.S.C. § 1306c.......... 19

42 U.S.C. § 2000a-5.......... 9

52 U.S.C. § 20503.......... 3, 11

52 U.S.C. § 20507.......... 11

52 U.S.C. § 20508 .......... 15

52 U.S.C. § 20703 .......... passim

52 U.S.C. § 20705 .......... 4, 9

52 U.S.C. § 21083 .......... passim

52 U.S.C. § 21085 .......... 3, 13, 17

52 U.S.C. § 21111 .......... 7, 19

52 U.S.C. § 21132 .......... 15

52 U.S.C. § 21145 .......... 15

52 U.S.C. §§ 20501–11 .......... 3

52 U.S.C. §§ 20701–05 .......... 2

52 U.S.C. §§ 20901–21145 .......... 3

6 U.S.C. § 111 .......... 19

Wis. Stat. § 6.50 .......... 14, 15, 16

**LEGISLATIVE HISTORY**

106 Cong. Rec. 7767 .......... 6

H.R. Rep. No. 107-329 (2001) .......... 17

**ADMINISTRATIVE MATERIALS**

11 C.F.R. § 9428.7 .......... 15

28 C.F.R. § 0.50 .......... 18

39 C.F.R. § 122.2 .......... 19

*Authority to Obtain and Share Statewide Voter Roll Data*,
50 Op. O.L.C. ___, 2026 WL 1455209 (2026) .......... 1, 10, 17, 18

Exec. Order No. 14,248, 90 Fed. Reg. 14,005 (Mar. 25, 2025) .......... 19

U.S. Dep't of Just.,
*Cases Raising Claims Under the National Voter Registration Act* (Mar. 6, 2025) .......... 14

U.S. Election Assistance Comm'n, *Election Administration and Voting Survey: 2024 Comprehensive Report* (2025) ..... 15

U.S. Election Assistance Comm'n, *Voluntary Guidance on Implementation of Statewide Voter Registration Lists* (July 2005)..... 13

**LITIGATION DOCUMENTS**

Compl., *United States v. Ziriax*, No. 5:26-cv-361 (W.D. Okla. Feb. 26, 2026) ..... 18

Consent Decree, *United States v. New Jersey*, No. 06-4889 (D.N.J. Oct. 12, 2006)..... 12, 13, 14

Okla. Settlement Agreement (Mar. 24, 2026)..... 18

Supp. Consent Decree, *United States v. Maine*, No. 1:06-cv-86 (D. Me. Apr. 4, 2007)..... 14

Tr., *United States v. Amore*, No. 1:25-cv-639 (D.R.I. Mar. 26, 2026) ..... 18

**RULES**

Fed. R. Civ. P. 81 ..... 9

Fed. R. Evid. 201 ..... 12

**SECONDARY SOURCES**

Jack Bass, *Unlikely Heroes* (1981) ..... 9

Press Release, Okla. Att'y Gen., *Drummond Enters Settlement with DOJ to Safeguard Voter Registration Data* (Mar. 24, 2026) ..... 17

Ryan Goodman et al., *The "Presumption of Regularity" in Trump Administration Litigation* (Mar. 19, 2026) ..... 11

The Federalist No. 59 (Hamilton)..... 7

The Federalist No. 71 (Hamilton)..... 7

U.S. Citizenship & Immigr. Servs., *SAVE Agency Search Tool*..... 18

## INTEREST OF AMICUS CURIAE

The Democratic National Committee (DNC) is the oldest continuing party committee in the United States.[1] Its purposes and functions are to communicate the Democratic Party's position on issues; protect voters' rights; and aid the election of Democratic candidates nationwide, including by organizing citizens to register as Democrats and vote in favor of Democratic candidates. The DNC represents more than 1.5 million registered Democrats in Wisconsin and millions more in this Circuit.

The U.S. Department of Justice (DOJ) has demanded a copy of Wisconsin's complete, unredacted voter registration list and has labeled all voters on that list "[s]ubjects of investigations . . . within the scope of [an] investigation into voter fraud." *Authority to Obtain and Share Statewide Voter Roll Data*, 50 Op. O.L.C. ___, 2026 WL 1455209, at *16 (2026). This forces Democrats to choose between participating in elections and the privacy and security of their personal information. Conditioning the right to vote on the release of private information "creates an intolerable burden on that right." *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012) (quoting *Greidinger v. Davis*, 988 F.2d 1344, 1355 (4th Cir. 1993)). The concerns of ordinary Democrats are amplified by uncertainty as to the intended use of their data. In turn, the DNC has a compelling interest in the success of Democratic candidates, and pressure on Democrats to avoid registration or even remove themselves from the voter rolls would impose an intolerable burden on that interest. *Cf. Bost v. Ill. State Bd. of Elections*, 607 U.S. 71, 76–80 (2026) (candidate interests); *cf. also Nat'l Republican Senatorial Comm. v. FEC*, 146 S. Ct. 2404, 2425

---

[1] No counsel for any party authored this brief in whole or in part, and no entity or person, aside from amicus curiae, its members, or its counsel, contributed money to fund the preparation or submission of this brief. All parties have consented to the filing of this brief.

(2026) (describing political parties' "unique position" and their "special relationship and unity of interest" with candidates (internal citation and quotation marks omitted)).

## INTRODUCTION AND SUMMARY OF ARGUMENT

Federal law authorizes the Attorney General to demand voter registration records, but he cannot do so based on pretext. Rather than disclosing "the purpose" for a demand for the complete, unredacted Wisconsin voter file—as Title III of the Civil Rights Act of 1960 (Title III), 52 U.S.C. §§ 20701–05, requires—DOJ based the demand on "ensuring compliance with minimum standards and routine voter registration list maintenance." Doc. 5-3.[2] But in fact, DOJ intends to transfer the personally identifying information of every registered voter in Wisconsin to the Department of Homeland Security (DHS) and is using this unprecedented power grab to "put the [November] election in question." *E.g.*, DOJ Mot. to Expedite 14, *United States v. Benson*, No. 26-1225 (6th Cir. Feb. 27, 2026); *see also* DOJ Mot. to Expedite 3 (speculating that "[w]eeks before November 3" Wisconsin ballots will "potentially go[] to ineligible voters, fraudulent registrants, or other individuals who should not have been registered"). This deception invalidates the Title III demand. A Justice Department that cannot be forthright with election officials cannot be trusted with the personal data of every registered voter in Wisconsin.

The Supreme Court's decision in *United States v. Powell*, 379 U.S. 48, 57–58 (1964), requires scrutiny of any administrative records request, scrutiny DOJ's demand cannot bear. DOJ's request for the Wisconsin voter file to ensure "compliance with minimum standards," Doc.

---

[2] "Doc. __, at __" refers to the docket and page numbers of documents filed in the district court, No. 3:25-cv-1036 (W.D. Wis.). "SA__" refers to the page number of DOJ's Required Short Appendix. "Mot. to Expedite __" refers to the page number of DOJ's motion to expedite briefing. "DOJ Br. __" refers to the page number of DOJ's opening brief on appeal. "WEC Br. ___" refers to the page number of the Wisconsin Election Commission's brief on appeal. "Wis. GOP Br. ___" refers to the page number of the Republican Party of Wisconsin's brief on appeal.

5-3, can at most be understood as investigating compliance with the Help America Vote Act of 2002 (HAVA), 52 U.S.C. §§ 20901–21145, as the National Voter Registration Act of 1993 (NVRA), 52 U.S.C. §§ 20501–11, does not apply to Wisconsin. *See* 52 U.S.C. § 20503(b)(2); *see also Pub. Int. Legal Found. v. Wolfe*, No. 24-3258, 2026 WL 2425386, at *1 (7th Cir. Aug. 19, 2026). Yet DOJ's request for Wisconsin's unredacted voter file does not align with HAVA's limited and flexible list maintenance requirements. *See id.* §§ 21083(a)(2)(A), 21083(a)(4), 21085. Because the district court correctly rejected DOJ's request for Wisconsin's voter registration database as outside the scope of Title III, it did not reach whether DOJ's written demand included "a statement of . . . the purpose therefor." SA6–9. Should this Court reach the purpose question, *see* DOJ Br. 27–33, appropriate review requires a finding that DOJ's written demand failed to include the requisite "statement of . . . the purpose therefor," 52 U.S.C. § 20703, offering mere pretext in its place. This Court may affirm on that alternative basis.

**STANDARD OF REVIEW**

This Court reviews de novo dismissal for failure to state a claim. *See, e.g.*, *Fosnight v. Jones*, 41 F.4th 916, 921 (7th Cir. 2022). To survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This Court reviews a decision not to enforce an administrative subpoena for abuse of discretion. *Walsh v. Alight Solutions LLC*, 44 F.4th 716, 721–22 (7th Cir. 2022) (quoting *EEOC v. Aerotek, Inc.*, 815 F.3d 328, 333 (7th Cir. 2016)). This Court "may affirm . . . 'on any ground supported in the record, so long as that ground was adequately addressed in the district court and the nonmoving party had an

opportunity to contest the issue." *Oneida Nation v. Vill. of Hobart*, 968 F.3d 664, 686 (7th Cir. 2020) (quoting *Am. Homeland Title Agency, Inc. v. Robertson*, 930 F.3d 806, 810 (7th Cir. 2019)).[3]

## ARGUMENT

### I. Federal Courts Must Ensure the Attorney General Provides the Actual Purpose of a Title III Demand.

A valid Title III demand must "contain a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. Title III also affords federal courts "jurisdiction by appropriate process to compel the production" of records or papers so demanded. *Id.* § 20705. For more than 60 years, Courts have imposed summons and subpoena requirements to basic scrutiny, *see, e.g.*, *Powell*, 379 U.S. at 57–58, and this Court should impose comparable review before enforcing DOJ's demand for the personally identifying information and voter history of Wisconsin's nearly 5 million registered voters. *See generally* WEC Br. 39–42. The Title III demand cannot withstand even this simple inquiry.

#### A. Judicial Enforcement of Title III Demand Requires Independent Judgment.

"Title III records requests are a species of administrative subpoena." *United States v. Evans*, No. 1:25-cv-4403, 2026 WL 2267774, at *4 (D.D.C. Aug. 6, 2026); *see also* DOJ Br. 31

---

[3] DOJ framed its demand as a cause of action in a complaint, rather than filing an enforcement application. *See* Doc. 1; *cf. EEOC v. Ill. State Tollway Auth.*, 800 F.2d 656, 659–60 (7th Cir. 1986) (distinguishing subpoena enforcement and civil action for a substantive violation of Title VII); *cf. also, e.g.*, *Martin v. Great Lakes Indian Fish & Wildlife Comm'n*, No. 92-C-409, 1992 WL 300841, at *1 (W.D. Wis. Oct. 7, 1992) (addressing "petition to enforce an administrative subpoena"). In turn, the district court granted a motion to dismiss for failure to state a claim, rather than declining to enforce the demand. SA2; *see also* SA4–5 (declining to resolve whether Rule 12(b)(6) applies). On appeal, DOJ argues that the district court applied "an erroneous framework," DOJ Br. 48, while still claiming that this Court must accept its allegations as true, befitting a Rule 12(b)(6) motion, DOJ Br. 11 (quoting *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019)). Ultimately, distinctions between review of dismissal—including plausibility requirements and the availability of judicial notice—and review of a decision declining to enforce an administrative subpoena make no difference here. This Court may affirm under either framework.

(citing *United States v. Benson*, 819 F. Supp. 3d 753, 765 (W.D. Mich. 2025), *aff'd*, 179 F.4th 470 (6th Cir. 2026)), and federal courts must proceed through a well-established process of judicial scrutiny before enforcing an administrative subpoena of any kind, *see, e.g.*, *United States v. Morton Salt Co.*, 338 U.S. 632, 640 (1950) (recognizing Congress provides for judicial review "[t]o protect against mistaken or arbitrary orders"). Thus, this Court must ensure compliance with express limitations in the statute granting subpoena power, as well as judicially imposed constraints on subpoena enforcement. *See, e.g.*, *Walsh*, 44 F.4th at 722; *EEOC v. Quad/Graphics, Inc.*, 63 F.3d 642, 645–46 (7th Cir. 1995); *EEOC v. A.E. Staley Mfg. Co.*, 711 F.2d 780, 784–87 (7th Cir. 1983); *see also* DOJ Br. 2 (acknowledging need for a "proper demand"). A court's function is "neither minor nor ministerial" when enforcing an administrative records request. *Okla. Press Pub. Co. v. Walling*, 327 U.S. 186, 217 n.57 (1946); *see also United States v. Clarke*, 573 U.S. 248, 253 (2014) (emphasizing "that the requisite judicial proceeding is not *ex parte* but adversarial").

The plain text of Title III establishes statutory prerequisites to judicial enforcement. Title III's demand provision states,

> Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative. This demand shall contain a statement of the basis and the purpose therefor.

52 U.S.C. § 20703. Broken into elements, the Attorney General or his designee must (1) make a demand in writing, (2) for a record or paper required by Title III to be retained and preserved, (3) to the person having custody, possession, or control, (4) including a statement of the basis and the purpose therefor. *Id.* This framework does not require DOJ to establish a prima facie case of a statutory violation before it may obtain records, but it does mandate that the Attorney General

disclose "the reasons for his demand." *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (quoting 106 Cong. Rec. 7767 (statement of Sen. Keating)); *cf. CFPB v. Accrediting Council for Indep. Colls. & Schs.* (*ACICS*), 854 F.3d 683, 690 (D.C. Cir. 2017) (emphasizing that the validity of a civil investigative demand "is measured by the purposes stated," making notification of actual purpose "an important statutory requirement"). Failure to comply with this "mandatory statutory obligation" is fatal to the demand. *United States v. Benson*, 179 F.4th 470, 482–83 (6th Cir. 2026).

Judicial safeguards extend beyond these statutory prerequisites. Administrative subpoena enforcement also requires showing "that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the [issuing agency's] possession, and that the administrative steps required by [statute] have been followed." *Powell*, 379 U.S. at 57–58; *see also McLane Co. v. EEOC*, 581 U.S. 72, 76–77 (2017) ("If the [EEOC] charge is proper and the material requested is relevant, the district court should enforce the subpoena unless the employer establishes that the subpoena is 'too indefinite,' has been issued for an 'illegitimate purpose,' or is unduly burdensome." (quoting *EEOC v. Shell Oil Co.*, 466 U.S. 54, 72 n.26 (1984))). This Court has distilled the inquiry into five critical questions applicable across agencies and subject matters: (1) whether "the inquiry is within the authority of the agency," (2) whether "the demand is not too indefinite," (3) whether "the information sought is reasonably relevant," (4) whether the demand "would impose an unreasonable or undue burden on the party from whom production is sought," and (5) whether the demand has been "issued for an illegitimate purpose." *Walsh*, 44 F.4th at 722 (citations and quotation marks omitted); *see also, e.g.*, *CFTC v. Tokheim*, 153 F.3d 474, 477 (7th Cir. 1998) (aligning *Powell* and this Court's articulation of similar requirements). These provide both substantive and procedural grounds to oppose administrative records requests.

Title III demands to state election officials require a particularly "careful analysis that takes adequate account of the separation of powers principles at stake." *Trump v. Mazars USA, LLP*, 591 U.S. 848, 869 (2020) (addressing horizontal separation of powers). The Elections Clause provides that the "Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof," U.S. Const. art. I, § 4, cl. 1, although the Clause "grants Congress 'the power to override state regulations' by establishing uniform rules for federal elections, binding on the States," *Foster v. Love*, 522 U.S. 67, 69 (1997) (quoting *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 833 (1995)). "The President does not feature at all" in the constitutional scheme. *LULAC v. Exec. Off. of President*, 780 F. Supp. 3d 135, 159 (D.D.C. 2025) (quoting The Federalist No. 59 (Hamilton)), *appeal docketed*, No. 25-5476 (D.C. Cir. Dec. 31, 2025). Congress may empower the Attorney General to enforce legislation or constitutional protections, *see, e.g.*, 52 U.S.C. § 21111, but DOJ's power goes no further. *See, e.g.*, *NFIB v. OSHA*, 595 U.S. 109, 117 (2022) (recognizing that federal "agencies are creatures of statute [that] possess only the authority that Congress has provided"); *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952) (explaining that executive authority "must stem either from an act of Congress or from the Constitution itself"). Without limits on Title III authority, DOJ could "exert an imperious control" over the states and "aggrandize itself" at the states' expense. *Cf. Mazars*, 591 U.S. at 867, 871 (addressing "special concerns" for congressional subpoenas implicating the President (quoting The Federalist No. 71 (Hamilton))). As a result, a Title III demand "that raises sensitive constitutional issues" must be subject to rigorous judicial scrutiny. *Id.* at 870–71.

### B. DOJ Provides No Statutory Rationale to Insulate "the Purpose" of a Title III Demand from Scrutiny.

DOJ claims that the validity of its statement of the purpose for a Title III demand is not

"open for determination," DOJ Br. 28–33, 39–40 (quoting *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962)), but this attempt to shield executive actions from judicial scrutiny has no foundation in the text of Title III or applicable case law. DOJ principally relies on the Fifth Circuit's 1962 decision in *Kennedy v. Lynd*, which provides no underlying statutory rationale to exclude the "statement of the basis and the purpose" of a Title III demand from "judicial review or ascertainment." DOJ Br. 28–31 (quoting *Lynd*, 306 F.2d at 226, 230–31). Courts that have reached this issue more recently have looked directly to the statutory text, which has led them to conclude that their "role in evaluating [DOJ's] statement of basis and purpose is not so limited." *United States v. Oregon*, 828 F. Supp. 3d 1092, 1102 (D. Or. 2026), *appeal docketed*, No. 26-1231 (9th Cir. Mar. 3, 2026); *see also, e.g.*, *United States v. Bellows*, No. 1:25-cv-468, 2026 WL 1430481, at *5 & *5 n.8 (D. Me. May 21, 2026) (collecting cases), *appeal docketed*, No. 26-1676 (1st Cir. June 15, 2026).

The Supreme Court decided *Powell* just two years after *Lynd*, holding that courts must assess investigatory purpose, *see* 379 U.S. at 57–58, and *Powell* now establishes "the general standards governing judicial enforcement of administrative subpoenas," *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 741–42 (1984). Remarkably, DOJ does not even acknowledge *Powell* or the many decisions within this Circuit concerning administrative subpoenas and civil investigative demands. This Court's precedents allow scrutiny of the subpoena's purpose, along with other statutory requirements. *See, e.g.*, *EEOC v. United Airlines, Inc.*, 287 F.3d 643, 649–51 (7th Cir. 2002) (addressing relevance to a "legitimate agency purpose" (quoting *Dow Chem. Co. v. Allen*, 672 F.2d 1262, 1267 (7th Cir. 1982))); *cf. EEOC v. Sidley Austin Brown & Wood*, 315 F.3d 696, 699–700 (7th Cir. 2002) (barring only inquiry into the merits of the underlying investigation). *Powell* and its progeny control. *See, e.g.*, *United States v. Rivers*, 108 F.4th 973, 979 (7th Cir.

2024) (addressing in-circuit stare decisis).[4]

Beyond simply inviting this Court to adopt *Lynd* as its own, DOJ argues that Title III triggers a "special statutory proceeding" immune from meaningful challenge and review. DOJ Br. 28–29 (quoting *Lynd*, 306 F.2d at 225). Not so. Where Congress authorizes "a special statutory proceeding," it does so explicitly and in detail. *Katzenbach v. McClung*, 379 U.S. 294, 295–96 (1964) (describing Title II of the Civil Rights Act of 1964); *see also* 42 U.S.C. § 2000a-5 (detailing procedures). Federal Rule of Civil Procedure 81(a)(5) makes clear that the Federal Rules "apply to proceedings to compel testimony or the production of documents through a subpoena issued by a United States officer or agency under a federal statute, except as otherwise provided by statute, by local rule, or by court order." *See also Becker v. United States*, 451 U.S. 1306, 1307–09 (1981) (Rehnquist, J., in chambers) (applying Rule). DOJ offers no basis in the text of Title III for its claim to the contrary. DOJ Br. 28–29. Rather, Title III enforcement requires "appropriate process," 52 U.S.C. § 20705, which must incorporate process for officers of election to object. *Cf. EEOC v. Bay Shipbuilding Corp.*, 668 F.2d 304, 308–09 (7th Cir. 1981) (applying Rule 81 exclusion from Federal Rules based on text of National Labor Relations Act). Fundamentally, DOJ contends that under Title III, courts must serve as a rubber stamp and may not "ascertain . . . the sufficiency of[] the Attorney General's 'statement of the basis and the purpose therefor' as set

---

[4] *Lynd* was decided in the early 1960s, an era of racist disenfranchisement and massive resistance to civil rights, warranting aggressive judicial action against the "frustration of national purposes." *Kennedy v. Bruce*, 298 F.2d 860, 863 (5th Cir. 1962) (quoting *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 852 (M.D. Ala. 1960)). *See generally* Jack Bass, *Unlikely Heroes* (1981). But as the Supreme Court has recognized, "history did not end in 1965." *Shelby Cnty. v. Holder*, 570 U.S. 529, 552 (2013). In 1965, the Voting Rights Act removed exigency that once justified paltry process by suspending disenfranchising tests and devices and imposing preclearance on states that had used them. *See South Carolina v. Katzenbach*, 383 U.S. 301, 313, 319, 333–34 (1966). In the six decades between DOJ's last contested Title III action and the rash of litigation beginning late last year, the Supreme Court has imposed effective judicial oversight on all administrative record requests.

forth in the written demand." DOJ Br. 29 (quoting *Lynd*, 306 F.2d at 226); *see also id.* (arguing the requisite statement is not "open to judicial review or ascertainment" (quoting *Lynd*, 306 F.2d at 226)). Here again, DOJ merely invokes *Lynd*, and *Lynd* does not rely on the text of the statute. *Lynd* alone is not enough. *Cf. Rapanos v. United States*, 547 U.S. 715, 754 (2006) (plurality opinion) (cautioning against applying caselaw "in utter isolation from the text of [an] Act").

Finally, Title III provides a "meaningful standard[]" against which courts may measure the "sufficiency" of the Attorney General's stated purpose, contrary to DOJ's contention. DOJ Br. 30. Title III requires a statement of "*the* purpose" for the demand. 52 U.S.C. § 20703 (emphasis added). It is not enough for DOJ to offer "*a* proper 'basis and purpose,'" a standard DOJ derives by omitting the word "the" from the text of Title III. DOJ Br. 27 (misquoting 52 U.S.C. § 20703) (emphasis added); *see also* DOJ Br. 39 (repeating misquotation); *cf. Authority to Obtain and Share Statewide Voter Roll Data*, 2026 WL 1455209, at *12 (claiming without support that DOJ may withhold a "secondary purpose"). By using the definite article, Title III requires the Attorney General to offer "a discrete thing": DOJ's complete and accurate purpose and not merely a possible purpose or one purpose among many. *Niz-Chavez v. Garland*, 593 U.S. 155, 166 (2021); *see also, e.g.*, *Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799, 817 (2024). Without a complete statement of the purpose of the demand, state officials and reviewing courts "cannot accurately determine whether the inquiry is within the authority of the [Justice Department] and whether the information sought is reasonably relevant." *ACICS*, 854 F.3d at 691; *see also In re Gordon*, 218 F. Supp. 826, 827 (S.D. Miss. 1963) (indicating that Title III demands cannot be "used without restraint"). In other words, the "meaningful standard" is truth. *See, e.g.*, *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943) ("[T]he orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and

adequately sustained."); *see also* Ryan Goodman et al., *The "Presumption of Regularity" in Trump Administration Litigation* (Mar. 19, 2026), https://perma.cc/3ZQ3-NX6U (compiling recent findings of "serious defects in the government's explanations and representations . . . prompting judges to discount government submissions, compel expedited discovery, and withhold the presumption" of regularity).

## II. The Title III Demand Does Not State "the Purpose Therefor."

Applying appropriate scrutiny, DOJ's demand for the complete, unredacted Wisconsin voter file cannot be enforced because it fails to meet a basic statutory prerequisite, to state "the purpose therefor." 52 U.S.C. § 20703; *see also, e.g.*, *United Airlines*, 287 F.3d at 654–55 (quashing subpoena in part that did not meet enforcement requirements). DOJ's demand claimed it was made "for the purpose of ensuring compliance with minimum standards and routine voter registration list maintenance." Doc. 5-3. This invocation of "minimum standards" may be generously construed as a reference to requirements for computerized statewide voter registration lists in Section 303 of HAVA, 52 U.S.C. § 21083, as the comprehensive voter registration list maintenance requirements in Section 8 of the NVRA, 52 U.S.C. § 20507, do not apply to Wisconsin. *See* 52 U.S.C. § 20503(b)(2); DOJ Br. 5.[5] Ultimately, DOJ asserts only that HAVA requires NVRA-exempt states to "perform list maintenance . . . on a regular basis" in compliance with state law and generally mandates that each "State election system shall include provisions to ensure that voter registration records in the State are accurate and are updated regularly." DOJ Br.

[5] *But see* DOJ Mot. to Expedite 2 ("This appeal is about the United States' ability under the Civil Rights Act of 1960 to investigate Wisconsin's compliance with federal law regarding voter registration under the National Voter Registration Act (NVRA) and the Help America Vote Act (HAVA)."); DOJ Mot. to Expedite 6–7, 10, 12–13 (invoking NVRA); DOJ Br. 26 (invoking purported NVRA investigation procedures). These repeated references to the NVRA reinforce the pretextual natural of DOJ's invocation of statutory enforcement interests.

38–39 (quoting 52 U.S.C. § 21083(a)(2)(A), (a)(4)).

These flexible requirements focus on reasonable processes subject to state discretion, *see* 52 U.S.C. § 21085, not line-by-line analysis of voter files. *See, e.g.*, Consent Decree ¶¶ 4, 9, *United States v. New Jersey*, No. 06-4889 (D.N.J. Oct. 12, 2006) (N.J. Decree), https://perma.cc/TF6V-NUY4 (requiring only "reasonable steps" to conduct list maintenance); *cf., e.g.*, *Pub. Int. Legal Found. v. Benson* (*PILF v. Benson*), 136 F.4th 613, 625 (6th Cir. 2025) (applying "reasonable effort" standards). DOJ submissions to this Court and others establish that its invocations of HAVA were pretextual. *Cf. Dep't of Com. v. New York*, 588 U.S. 752, 781–85 (2019) (remanding agency action due to pretextual invocation of the Voting Rights Act). This forecloses any "reasonable inference" that DOJ has plausibly pled the statutory prerequisites to Title III enforcement, *Iqbal*, 556 U.S. at 678, let alone that DOJ has met its burden to enforce a Title III demand, *see Powell*, 379 U.S. at 57–58. *See generally* WEC Br. 33–35.[6]

### A. DOJ's Demand for Wisconsin's Unredacted Voter File Is Unrelated to Bona Fide HAVA Investigations.

HAVA enforcement does not require or even use complete, unredacted voter files. The Act's core list-maintenance standard for statewide voter lists is that the "appropriate State or local election official shall perform list maintenance with respect to the computerized list on a regular basis" but "[i]f an individual is to be removed from the computerized list, such individual shall be removed in accordance with the provisions of the National Voter Registration Act of 1993." 52 U.S.C. § 21083(a)(2)(A)(i); *see also United States v. Benson*, 179 F.4th at 477 (articulating HAVA

[6] Courts "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. This standard applies to appellate courts, which "may take judicial notice of matters . . . which are capable of certain verification through recourse to reliable authority," including matters of public record and records in related litigation. *Green v. Warden*, 699 F.2d 364, 369 (7th Cir. 1983).

list maintenance requirements). However, if a State is exempt from NVRA requirements, "that State shall remove the names of ineligible voters from the computerized list in accordance with State law." 52 U.S.C. § 21083(a)(2)(A)(iii). HAVA also requires that the "State election system shall include provisions to ensure that voter registration records in the State are accurate and are updated regularly," including both "[a] system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters . . . consistent with the National Voter Registration Act" and "[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters." *Id.* § 21083(a)(4). These HAVA requirements are implemented pursuant to state discretion. *Id.* § 21085; *see also* U.S. Election Assistance Comm'n (EAC), *Voluntary Guidance on Implementation of Statewide Voter Registration Lists* 11–14 (July 2005), https://perma.cc/KJX9-ZZ3W ("recogniz[ing] the fallibility of databases" and prioritizing "[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters" (quoting 52 U.S.C. § 21083(a)(4)(B))).

DOJ previously recognized state flexibility across decades of HAVA enforcement, and this heretofore "consistent" interpretation—dating back to HAVA's enactment—warrants this Court's "due respect." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385–86 (2024). For instance, a 2006 consent decree required New Jersey to undertake "reasonable steps" to identify possible duplicate registrations and movers and "review" of registrants previously identified "as potentially deceased"—not to perform perfect removal of ineligible registrants and consolidation of duplicate records. N.J. Decree ¶¶ 4, 8–9. Once a HAVA-compliant system was in place, the decree required reporting of list-maintenance statistics but did not demand copies of complete, unredacted voter files. *See id.* ¶ 11. Although DOJ obtained unredacted voter files in 2006 and 2008 during NVRA investigations, DOJ Br. 26, it has never done so as part of a bona fide HAVA investigation. *See*

N.J. Decree ¶ 5 (omitting production requirements); Supp. Consent Decree ¶ 9(e), *United States v. Maine*, No. 1:06-cv-86 (D. Me. Apr. 4, 2007), ECF No. 70 (requiring only production of a "unique identifier" used for database architecture); *see also* 52 U.S.C. § 21083(a)(1)(A)(iii) (mandating assignment of unique identifier).[7] The first two decades of HAVA enforcement illustrate that Wisconsin's complete, unredacted voter file is not "pertinent" to the Attorney General's "enforcement authority under HAVA." *Cf.* DOJ Br. 36.

Assessing HAVA's list maintenance requirements illustrates the basic disconnect between obtaining complete, unredacted voter files and ensuring any bona fide investigation into Wisconsin's "compliance with minimum standards and routine voter registration list maintenance." Doc. 5-3. Appropriate officials must "perform list maintenance with respect to the computerized list on a regular basis." 52 U.S.C. § 21083(a)(2)(A); DOJ Br. 38. A single snapshot of a voter file does not illustrate the frequency of voter registration list maintenance. *Cf.* Wis. Stat. § 6.50(2r) (mandating regular public reporting of list maintenance activity). Moreover, the sensitive information demanded, including each voter's driver's license number or Social Security number, Doc. 5-3, is no more "pertinent to" a bona fide investigation of this requirement than party affiliation and primary ballot selection. *Cf.* U.S. Br. 42.

An unredacted copy of Wisconsin's voter file is similarly irrelevant to whether Wisconsin's "election system" includes "provisions to ensure that voter registration records in the State are accurate and are updated regularly." 52 U.S.C. § 21083(a)(4); DOJ Br. 39. Once again a single snapshot does not illustrate whether a voter file is "updated regularly." And for a voter list to be

[7] DOJ did not pursue enforcement actions based on the Georgia or Texas voter file, *see* U.S. Dep't of Just., *Cases Raising Claims Under the National Voter Registration Act* (Mar. 6, 2025), https://perma.cc/A3JG-CNZA, and soon abandoned attempts to use voter files to assess NVRA compliance.

"accurate," it must include correct information concerning all properly registered voters, free from errors such as flawed data entry. *See Project Vote*, 682 F.3d at 335. DOJ does not intend to assist Wisconsin with erroneously transcribed addresses. *See* DOJ Mot. to Expedite 3 (focusing on election security and ineligible registrants). Although the regular update requirement specifically requires "file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters," 52 U.S.C. § 21083(a)(4)(A); *see also* DOJ Br. 5, that mandate does not "broaden[] the scope of the NVRA's list-maintenance obligations," which concern only "death or change of address." *Bellitto v. Snipes*, 935 F.3d 1192, 1200, 1202 (11th Cir. 2019); *see also Am. Civ. Rts. Union v. Phila. City Comm'rs*, 872 F.3d 175, 184–85 (3d Cir. 2017) (rejecting contention that HAVA "augment[s]" NVRA list maintenance requirements); 52 U.S.C. § 21145(a)(4) (directing that nothing in HAVA supersedes the NVRA). Moreover, a "reasonable effort" requirement is not a "quantifiable, objective standard" that can be assessed by counting potential errors on a complete voter file. *PILF v. Benson*, 136 F.4th at 626–27 (rejecting identification of "27,000 'potentially deceased' voters on Michigan's registration rolls" as evidence of failure to comply with "reasonable effort" requirement).[8]

Even assuming for the sake of argument that HAVA allows DOJ to enforce Wisconsin's own list maintenance requirements against state officials, DOJ Br. 37, 39 (citing Wis. Stat. § 6.50),

[8] DOJ points out that Wisconsin did not provide certain details concerning list maintenance practices to the EAC as part of the 2024 Election Administration and Voting Survey, DOJ Br. 27 n.6, but the EAC conducts its list maintenance survey pursuant to the NVRA, from which Wisconsin is exempt. *See* 52 U.S.C. § 20508(a)(3); *see also* 11 C.F.R. § 9428.7(a) (imposing reporting obligation on the "chief state election official" designated pursuant to Section 10 of the NVRA). *See generally* 52 U.S.C. § 21132 (transferring pre-HAVA survey responsibility from FEC to EAC). The mere fact that Wisconsin did not voluntarily provide comprehensive statistics to the EAC does not tie the Title III demand to HAVA compliance. *See* U.S. Election Assistance Comm'n, *Election Administration and Voting Survey: 2024 Comprehensive Report* 180 (2025), https://perma.cc/TZJ5-S5FW (illustrating missing information from other NVRA-exempt states).

DOJ does not articulate how it might use the voter file to ensure compliance with state law. Even if DOJ were able to identify voters on the voter file who are deceased or do not reside at their registration address, that would not evince that Wisconsin officials failed to follow statutory procedures. *See id.* § 6.50(2), (3)-(6); *see also id.* § 6.50(2r) (requiring reporting of list maintenance statistics). Moreover, identification of alleged noncitizens on the rolls would not relate to Wisconsin list maintenance requirements, which address only failure to apply for continuation of registration, change of address, death, condemnation of the registration address, and removal by request. *See id.* § 6.50(2), (3)-(6).[9]

Finally, DOJ invokes HAVA's limitation on acceptance of voter registration applications without a driver's license or Social Security number, 52 U.S.C. § 21083(a)(5), *see* DOJ Br. 5–6, but this requirement also is not a "voter registration list maintenance" requirement," Doc. 5-3, so it is irrelevant to the adequacy of DOJ's statement of "the purpose" of its demand. Even if it were a list maintenance provision, the Attorney General does not need Wisconsin's unredacted voter registration database "so as to assure himself that the applications are being properly processed." DOJ Br. 26. To determine whether a state has accepted voter registration applications without a driver's license or Social Security number, DOJ needs only information concerning registrants lacking those numbers, not the numbers associated with properly registered voters. That sensitive information is simply not relevant. *Cf., e.g.*, *United Airlines*, 287 F.3d at 654–55 (quashing subpoena that failed to meet basic relevance requirement).

---

[9] The Republican Party of Wisconsin contends that noncitizens are on the Wisconsin voter rolls, but it does not identify relevant Wisconsin list maintenance requirements. *See* Wis. GOP Br. 13–15; *see also id.* at 4, 13–15 (addressing *Cerny v. Wisconsin Elections Commission* without notifying this Court that the decision has been vacated and appeal dismissed as moot); Order, *Cerny v. Wis. Elections Comm'n*, No. 2024CV1353 (Wis. Cir. Ct. Waukesha Cnty. Nov. 5, 2025), Doc. 198 (vacating cited decision); Order, *Cerny v. Wis. Elections Comm'n*, No. 2025AP2318 (Wis. Ct. App. Dist. IV Nov. 7, 2025) (dismissing appeal).

DOJ's ultimate claim that an inability to obtain complete unredacted voter files would "paralyze" HAVA enforcement, DOJ Br. 25, cannot bear scrutiny. While it is true that HAVA requires a statewide voter file to conduct federal elections, DOJ Br. 25–26; 52 U.S.C. § 21083(a)(1)(A), that does not mean that DOJ must possess the database for elections to occur. It is not "implausible" that Congress could have required creation of statewide voter files without giving DOJ authority to obtain them in full, DOJ Br. 35, particularly given HAVA's deferential terms, *see* 52 U.S.C. § 21085; H.R. Rep. No. 107-329, at 31–32, 35–37 (2001), and the structural demands of "Our Federalism," *Younger v. Harris*, 401 U.S. 37, 44 (1971). "By 'default . . . , responsibility for the mechanics of congressional elections' belongs to States." *Watson v. Republican Nat'l Comm.*, 146 S. Ct. 2165, 2170 (2026) (quoting *Foster*, 522 U.S. at 69); *see also, e.g.*, *United States v. Benson*, 179 F.4th at 474 ("States do most of the heavy lifting in overseeing federal elections."). Because HAVA list maintenance requirements do not turn on individual voter records, DOJ's statement of "the purpose" for its voter file demand is implausible and invalid.

**B. DOJ Failed to Disclose the Actual Purpose of Its Demand for Wisconsin's Unredacted Voter File.**

While DOJ's statement of the purpose for its Title III demand fails to bear scrutiny on its own, the Department's actions elsewhere confirm that the Attorney General failed to provide the requisite statement of "the purpose" for the demand here. 52 U.S.C. § 20703. DOJ now admits that it initially decided to seek voter files "to identify those who may be voting illegally," not to assess statewide compliance with list maintenance requirements. *Authority to Obtain and Share Statewide Voter Roll Data*, 2026 WL 1455209, at *1. Or take the settlement in a similar Title III voter file suit in Oklahoma. *See* Press Release, Okla. Att'y Gen., *Drummond Enters Settlement with DOJ to Safeguard Voter Registration Data* (Mar. 24, 2026), https://perma.cc/8XHQ-MSJG. Although DOJ had alleged that "the purpose of the demand" was to "ascertain Oklahoma's

compliance with the list maintenance requirements of the NVRA and HAVA," Compl. ¶ 21, *United States v. Ziriax*, No. 5:26-cv-361 (W.D. Okla. Feb. 26, 2026), ECF No. 1, the settlement allowed DOJ to use voter data both to "assess the State's compliance with [the] NVRA [and] HAVA" and for "other purposes outlined in 28 C.F.R. §§ 0.50–0.51." Okla. Settlement Agreement ¶ 2 (Mar. 24, 2026), https://perma.cc/CX66-S7G2. These expanded purposes incorporate the full functions of DOJ's Civil Rights Division, including coordination with other DOJ components and assistance to other federal departments and agencies. *See* 28 C.F.R. § 0.50(d)–(e). Even if these expanded purposes were additions to bona fide HAVA enforcement—and they are not—this renders DOJ's written statement at most a half-truth concealing an ulterior motive of untested legality. Title III requires DOJ to provide local officials with "the purpose" of the request, not merely a purpose. 52 U.S.C. § 20703. Ultimately, "half-truths—representations that state the truth only so far as it goes, while omitting critical qualifying information—can be . . . misrepresentations." *Universal Health Servs., Inc. v. United States ex. rel. Escobar*, 579 U.S. 176, 188 (2016).

DOJ has admitted elsewhere that it intends to provide complete, unredacted voter files it obtains using Title III to DHS, including for criminal investigatory purposes. *See Authority to Obtain and Share Statewide Voter Roll Data*, 2026 WL 1455209, at *1, *3–4, *17, *21–25; Tr. at 65:1–6, *United States v. Amore*, No. 1:25-cv-639 (D.R.I. Mar. 26, 2026), ECF No. 47 ("THE COURT: What I'm saying is can you take this list and send it to Homeland Security . . . . MR. NEFF: In compliance with all federal laws, yes, and we intend to do so."); U.S. Citizenship & Immigr. Servs., *SAVE Agency Search Tool*, https://perma.cc/6D4S-6SLF (indicating that DOJ's Civil Rights Division has entered into a memorandum of understanding with DHS to use DHS databases for "voter registration" and "voter list maintenance" purposes). DHS has broad authority

over counterterrorism, emergency management, immigration, and border protection, but its powers do not extend to HAVA enforcement. *See* 6 U.S.C. § 111(b); *cf.* 52 U.S.C. § 21111 (DOJ authority). Even if DOJ were only interested in comparing the Wisconsin voter file with DHS data to identify voters who may not meet state eligibility requirements, this would not advance HAVA enforcement. Federal data concerning movers is held by the U.S. Postal Service, *see* 39 C.F.R. § 122.2(b) (providing for prompt transmission of change-of-address information to election officials), and data concerning deaths is held by the Social Security Administration (SSA). *See* 42 U.S.C. § 1306c(d) (defining SSA Death Master File); Exec. Order No. 14,248, § 3(a), 90 Fed. Reg. 14,005, 14,007 (Mar. 25, 2025) (ensuring that SSA allows election officials to access the Death Master File).

Ultimately, HAVA places responsibility for voter registration list maintenance with the states and does not authorize DOJ to search for individual registrants who federal officials suspect may not meet eligibility requirements. *See* DOJ Mot. to Expedite 3. Any attempt to do so is unrelated to federal enforcement of "minimum standards and routine voter registration list maintenance," Doc. 5-3, as HAVA's list maintenance mandates speak only in broad terms of the "computerized list" and the "election system," 52 U.S.C. § 21083(a)(2)(A), (a)(4); *cf. id.* § 21083(a)(2)(B)(i)-(ii) (protective provisions attaching to individual voters). Remarkably, the Republican Party of Wisconsin, filing as amicus in support of DOJ, offers more candor than federal officials by explaining that the Department aims to "inspect the records that would reveal non-citizen voting" (if such voting has occurred). Wis. GOP Br. 17–18. DOJ addresses these pretext concerns only by raising the "heavy burden" to establish an administrative subpoena has been issued in bad faith and casts aside these issues as mere "aspersions." DOJ Br. 40–41. But in the Title III context, a written statement of "the purpose" of the demand is a basic statutory

prerequisite, distinct from the judicially imposed constraint on bad faith demands. *See* 52 U.S.C. § 20703; *cf. Clarke*, 573 U.S. at 254. The burden rests on DOJ.

The statement of "the purpose" of DOJ's Title III demand is inaccurate; it is at best incomplete. In either case, it is invalid. Without a valid statement of "the purpose" of the demand, 52 U.S.C. § 20703, DOJ's enforcement request must be dismissed or denied.

**CONCLUSION**

For the foregoing reasons, the Court should affirm.

Dated: August 21, 2026

Respectfully submitted,

*/s/ Daniel J. Freeman*
Daniel J. Freeman
Democratic National Committee
430 South Capitol Street SE
Washington, DC 20001
(202) 860-8000
freemand@dnc.org

*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Fed. R. App. P. 29(a)(5) and 7th Cir. R. 29 because this document contains 6,707 words, excluding the parts exempted by Fed. R. App. P. 32(f). This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6) and 7th Cir. R. 32(b) because this it has been prepared in Times New Roman 12-point font using Microsoft Word for Mac.

Dated: August 21, 2026

*/s/ Daniel J. Freeman*
Daniel J. Freeman
Counsel for Amicus Curiae

## CERTIFICATE OF SERVICE

I certify that on August 21, 2026, this document was served on all parties or their counsel of record through the CM/ECF system.

Dated: August 21, 2026

*/s/ Daniel J. Freeman*
Daniel J. Freeman
Counsel for Amicus Curiae