**No. 26-2217**

**In the United States Court of Appeals**
**For the Seventh Circuit**

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

v.

WISCONSIN ELECTIONS COMMISSION, et al.,

*Defendants-Appellees*,

COMMON CAUSE, et al.,

*Intervening Defendants-Appellees*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
Dist. Ct. No. 3:25-cv-1036-JDP
The Honorable Judge James D. Peterson

# BRIEF OF *AMICI CURIAE* WISCONSIN LOCAL ELECTION OFFICIALS AND LOCAL GOVERNMENTS IN SUPPORT OF APPELLEES AND AFFIRMANCE


Jonathan B. Miller
Alex M. Goldstein
Public Rights Project
490 43rd Street, #115
Oakland, CA 94609

*Counsel for Amici Curiae*

Save As Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 26-2217

Short Caption: United States v. Wisconsin Elections Commission, et al

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
*Amici Curiae* Wisconsin Local Election Officials and Local Governments (A complete list is attached as Appendix A)

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Public Rights Project

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: */s/ Jonathan B. Miller* Date: August 24, 2026

Attorney's Printed Name: Jonathan B. Miller

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☑ **No** ☐

Address: Public Rights Project 490 43rd Street, #115, Oakland, California 94609

Phone Number: (510) 214-6960 Fax Number: N/A

E-Mail Address: jonathan.miller@publicrightsproject.org

rev. 12/19 AK

Save As Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 26-2217

Short Caption: United States v. Wisconsin Elections Commission, et al

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
*Amici Curiae* Wisconsin Local Election Officials and Local Governments (A complete list is attached as Appendix A)

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
N/A

(3) If the party, amicus or intervenor is a corporation:

i) Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

---

Attorney's Signature: */s/ Alex M. Goldstein* Date: August 24, 2026

Attorney's Printed Name: Alex M. Goldstein

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). **Yes** ☐ **No** ☑

Address: Public Rights Project 490 43rd Street, #115, Oakland, California 94609

Phone Number: (510) 214-6960 Fax Number: N/A

E-Mail Address: alex.goldstein@publicrightsproject.org

rev. 12/19 AK

**TABLE OF CONTENTS**


STATEMENT OF INTEREST ........ 1

SUMMARY OF ARGUMENT ........ 3

ARGUMENT ........ 4

I. COURTS PLAY A VITAL ROLE IN ASSESSING ELECTION-RELATED RECORDS REQUESTS, INCLUDING DEMANDS UNDER THE CIVIL RIGHTS ACT ........ 4

A. The DOJ's unprecedented election-related demands attempt to undercut Wisconsin's framework balancing public transparency with privacy in elections. ........ 5

B. Without judicial review, local elections offices and their attorneys could be overwhelmed by records demands. ........ 7

II. WISCONSIN HAS ESTABLISHED A COMPREHENSIVE LEGAL REGIME TO FULFILL ITS LIST MAINTENANCE REQUIREMENTS UNDER HAVA ........ 10

A. HAVA's Requirements. ........ 11

B. Wisconsin state law requires, and local election officials implement, comprehensive list maintenance procedures. ........ 13

III. ELECTION OFFICIALS HAVE A STRONG INTEREST IN SAFEGUARDING VOTERS' PERSONAL INFORMATION ........ 17

CONCLUSION ........ 20

APPENDIX A – LIST OF *AMICI CURIAE* ........ 21

## TABLE OF AUTHORITIES

**CASES**

*Am. Civ. Rts. Union v. Philadelphia City Comm'rs*,
872 F.3d 175 (3d Cir. 2017) .......... 13

*Bellitto v. Snipes*,
935 F.3d 1192 (11th Cir. 2019) .......... 12, 13

*Hathaway v. Joint Sch. Dist. No. 1, City of Green Bay*,
342 N.W.2d 682 (Wis. 1984) .......... 6

*Hempel v. City of Baraboo*,
699 N.W.2d 551 (Wis. 2005) .......... 6

*League of Women Voters v. U.S. Dep't of Homeland Sec.*,
No. CV 25-3501, 2026 WL 1784297 (D.D.C. June 22, 2026) .......... 19

*Pub. Int. Legal Found. v. Benson*,
136 F.4th 613 (6th Cir. 2025), *cert. denied*, 146 S. Ct. 1772 (2026) .......... 12

*United States v. Amore*,
831 F. Supp. 3d 149 (D.R.I. 2026) .......... 5, 6

*United States v. Simon*,
No. 25-cv-03761, slip op. at 2 (D. Minn. Aug. 17, 2026) .......... 3

*Wis. Voter All. v. Secord*,
37 N.W.3d 849 (Wis. 2026) .......... 6

*Zignego v. Wis. Elections Comm'n*,
957 N.W.2d 208 (Wis. 2021) .......... 13

**STATUTES**

52 U.S.C. § 20501(a)(2) .......... 1

52 U.S.C. § 20503(b)(2) .......... 10

52 U.S.C. § 20507(a)(4) .......... 12

52 U.S.C. § 20701 .......... 17

52 U.S.C. § 21083(a)(1) ... 1

52 U.S.C. § 21083(a)(2)(A) ... 11

52 U.S.C. § 21083(a)(2)(A)(iii) ... 1, 10, 11

52 U.S.C. § 21083(a)(4) ... 1, 12

52 U.S.C. § 21083(a)(4)(A) ... 12

52 U.S.C. § 21083(a)(4)(A)–(B) ... 12

Wis Stat. § 6.02(1) ... 14

Wis. Stat. § 6.28 ... 15

Wis. Stat. § 6.29(2)(am) ... 15

Wis. Stat. § 6.30 ... 15

Wis. Stat. § 6.325 ... 16

Wis. Stat. § 6.36(1)(a)1–16 ... 17

Wis. Stat. § 6.36(1)(ae) ... 15

Wis. Stat. § 6.36(1)(b)1 ... 17

Wis. Stat. § 6.36(1)(b)1.a ... 18

Wis. Stat. § 6.36(1)(c) ... 17

Wis. Stat. §  6.36(6) ... 17

Wis. Stat. § 6.48 ... 16

Wis. Stat. § 6.50(3) ... 15

Wis. Stat. § 6.50(4) ... 15

Wis. Stat. § 6.50(6) ... 16

Wis. Stat. § 6.55(2) ... 10

Wis. Stat. § 6.55(2)(cs) ... 15

Wis. Stat. § 6.56(3m) ... 15

Wis. Stat. § 6.79(2)(dm) .......... 15
Wis. Stat. § 7.10(1)–(2) .......... 1, 14
Wis. Stat. § 7.15(1) .......... 1, 13
Wis. Stat. § 7.23 .......... 17
Wis. Stat. § 12.13(1)(a)–(b) .......... 15
Wis. Stat. § 12.13(3)(g) .......... 15
Wis. Stat. § 19.21(1) .......... 5
Wis. Stat. §§ 19.31–19.39 .......... 5
Wis. Stat. § 19.33 .......... 5
Wis. Stat. § 19.37(1) .......... 6
Wis. Stat. § 19.62(3) .......... 19
Wis. Stat. § 19.69(1) .......... 19
Wis. Stat. § 54.25(2)(c)1.g .......... 16
Wis. Stat. § 165.68 .......... 18
Wis. Stat. § 995.50(1) .......... 18

**REGULATIONS**

Exec. Order No. 14399, 91 Fed. Reg. 17125 § 2(b) (Mar. 31, 2026) .......... 2
Wis. Admin. Code § EL 3.50 .......... 18

**Constitutional Provisions**

Wis. Const. art. III, § 1(2) .......... 14
Wis. Const. art. III, § 3 .......... 18

**OTHER AUTHORITIES**

Ali Swenson & Gary Fields, *The Justice Department Seeks Voter and Election Information From at Least 19 States, AP Finds*, AP News (Aug. 3, 2025) .......... 3

Andrew Garber, *Mass Voter Challenges*, Brennan Ctr. for Just. (July 21, 2026) ........ 8

Assoc. Press, *Justice Department Requests Access to Dominion Voting Equipment Used in Missouri in 2020*, CNN (Sept. 4, 2025) ........ 10

Brett Sholtis, *'PA Fair Elections,' tied to powerful conservative groups, pushes to remove people from voter rolls*, WESA (Sept. 28, 2024) ........ 9

Carter Walker, *Efforts to challenge Pennsylvania voters' mail ballot applications fizzle,* Spotlight PA (Nov. 8, 2024) ........ 9

Gilare Zada, *SF Officials Push Back as DOJ Seeks Data on Voters Removed Over Citizenship Rules*, KQED (July 31, 2025) ........ 10

Julie Carr Smyth, *Conservative groups want to clean voter rolls, raising concerns about election integrity*, PBS News (July 15, 2024) ........ 7

Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Aug. 17, 2026) ........ 3

Kyle Yoder & April Tan, *Election Officials & the Misuse of Public Records Requests*, Ctr. for Election Innov. and Rsch. (June 2024) ........ 7

Letter from Michael E. Gates, Deputy Assistant Att'y Gen., Civ. Rts. Div., to Jocelyn Benson, Mich. Sec'y of State (July 21, 2025) ........ 9

Letter from Michael E. Gates, Deputy Assistant Att'y Gen., Civ. Rts. Div., to Shenna Bellows, Me. Sec'y of State (July 24, 2025) ........ 9

Paul Gronke & Paul Manson, Today's Election Administration Landscape: Findings from the Reed College Elections & Voting Information Center 2023 Survey of Local Election Officials (2023) ........ 7

Paul Gronke et al., Today's Election Administration Landscape: Findings from the 2024 Elections & Voting Information Center Local Election Official Survey (2025) ........ 7

Reply to Opp'n to Mot. to Expedite at 8, *United States v. DeMarinis*, No. 26-1878 (4th Cir. filed July 29, 2026), Dkt. No. 24 (citations omitted) .................................................. 2

Transcript of Oral Argument, *United States v. Amore*, 831 F. Supp. 3d 149 (D.R.I. 2026) (No. 25-CV-639) .................................. 19

U.S. Citizenship & Immigr. Servs., *SAVE Agency Search Tool* .......... 19

U.S. Election Assistance Comm'n, Best Practices: Public Records Requests (2023) .......................................................................... 7

## STATEMENT OF INTEREST

*Amici* are 45 Wisconsin local election officials and eight local governments responsible for administering elections.[1] They sign this brief to support affirmance of the district court's order of dismissal. Local election officials are responsible for administering local, state, and federal elections in their respective jurisdictions. Under state law, municipal clerks have "charge and supervision of elections and registration" and are given broad duties including "any [duties] which may be necessary to properly conduct elections." Wis. Stat. § 7.15(1). County clerks also play a crucial role in conducting elections, including preparing and providing ballots and election supplies for all "national, state and county elections." Wis. Stat. § 7.10(1)–(2). In Wisconsin and other states, local government officials are duty-bound to promote the exercise of the right to vote. 52 U.S.C. § 20501(a)(2). *Amici* are committed to holding free and fair elections for their residents by fulfilling the purposes of the Help America Vote Act ("HAVA"), which includes implementing a centralized Statewide Voter Registration List ("SVRL") and engaging in reasonable efforts at maintaining that list by removing ineligible voters in accordance with state law. *Id.* § 21083(a)(1), (a)(2)(A)(iii), (a)(4).

While state election officials are the custodians of the statewide voter registration list at issue in this case, local election officials perform significant list

[1] No party or party's counsel authored this brief in whole or in part. No party or party's counsel contributed money intended to fund preparation or submission of this brief. A list of all *amici* is attached as Appendix A; local election officials signing this brief do so in their individual capacities. Pursuant to Fed. R. App. P.29(a)(2), all parties have consented to the filing of this brief.

maintenance activities that support its accuracy. Because the Department of Justice ("DOJ") is investigating activities associated with local election officials' core functions, *amici* write to provide context and accurate information using their combined decades of election administration experience.

*Amici* are also interested in the outcome of this case because they may face similar demands from the federal government soon. The DOJ has sought contact information for local election officials for all of the states it has sued to obtain voter rolls. Further, it has indicated in a recent court filing that it is considering using data it seeks in these lawsuits to file criminal charges against election officials in connection with their list maintenance duties.[2] It is vital, then given the potential downstream and significant consequences, that the Court understand the facts of election administration, what constitutes proper list maintenance, and the purported basis of this lawsuit.

---

[2] In a motion to expedite an appeal in a parallel case in the Fourth Circuit, the DOJ put forth that while its lawsuit did not seek to require certain list maintenance activities as a form of relief, if the DOJ was successful in any of its attempts to obtain the SVRL through a Civil Rights Act demand, states might then "elect voluntary compliance to avoid the criminal sanctions that may be incurred by state officials that knowingly conspire with noncitizens to permit them to vote… or knowingly tabulate fictitious ballots." Reply to Opp'n to Mot. to Expedite at 8, *United States v. DeMarinis*, No. 26-1878 (4th Cir. filed July 29, 2026), Dkt. No. 24 (citations omitted). Further, the White House issued an executive order in March 2026 issuing a number of directives concerning elections, including that, "[t]he Attorney General shall prioritize the investigation and, as appropriate, the prosecution of State and local officials or any others involved in the administration of Federal elections who issue Federal ballots to individuals not eligible to vote in a Federal election…" Exec. Order No. 14399, 91 Fed. Reg. 17125 § 2(b) (Mar. 31, 2026), https://perma.cc/ZNV6-ZQ3R.

## SUMMARY OF ARGUMENT

In 2025, the DOJ began to send letters to local and state governments demanding copies of voter rolls with sensitive voter data.[3] The letters to the states generally asked questions about state compliance with federal voter list maintenance laws and demanded copies of the SVRLs, including unique identifiers for voters.[4] Eventually, the government began to cite the Civil Rights Act of 1960 ("CRA") to support the DOJ's authority to demand the records. Most states refused, and the DOJ has since sued thirty states as a result. Every district court that has evaluated motions to compel or dismiss has ruled against the federal government.[5]

Local election officials support Appellees' briefing. They write separately to emphasize the importance of affirming the ability of federal courts to evaluate records demands under the CRA and to provide local election officials' perspective on Wisconsin's comprehensive voter list maintenance processes and their interest in protecting voter privacy. *Amici* work every day to protect and administer the right to

---

[3] Ali Swenson & Gary Fields, *The Justice Department Seeks Voter and Election Information From at Least 19 States, AP Finds*, AP News (Aug. 3, 2025), https://perma.cc/4UEC-B3VZ (documenting initial wave of letters to states demanding voter rolls, and noting that several counties received similar requests from the DOJ).

[4] *See* Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. for Just. (Aug. 17, 2026), https://perma.cc/3T7M-6SNS (storing copies of the correspondence between states and the DOJ).

[5] *United States v. Simon*, No. 25-cv-03761, slip op. at 2 (D. Minn. Aug. 17, 2026) ("[F]ederal courts in Michigan, Oregon, California, Maryland, Colorado, Wisconsin, Maine, Arizona, Rhode Island, Massachusetts, New Mexico, Illinois, New Jersey, Kentucky, Virginia, New York, New Hampshire, Connecticut, Pennsylvania, West Virginia, the District of Columbia, and Nevada have dismissed Plaintiff's claims demanding production of unredacted statewide voter registration lists.")

vote, ensuring that elections are conducted fairly, securely, and lawfully. The DOJ's efforts to compel disclosure of sensitive voter information undermine this essential work.

## ARGUMENT

### I. COURTS PLAY A VITAL ROLE IN ASSESSING ELECTION-RELATED RECORDS REQUESTS, INCLUDING DEMANDS UNDER THE CIVIL RIGHTS ACT

Courts serve as essential gatekeepers in the electoral process, ensuring that election officials can administer elections in accordance with the law while preventing illegal interference that threatens the integrity of free and fair elections. From pre-elections disputes to public records requests to voter eligibility questions, state and federal courts ensure that laws are applied consistently. Yet, Appellants argue here that federal courts should serve as a rubber stamp in reviewing the Government's demand for Wisconsin's state voter roll under Title III of the Civil Rights Act, playing a very limited, if any, role. *See* Br. for the United States as Appellant ("Appellant's Br.") at 28-32, Dkt. No. 22.

Local election officials in Wisconsin regularly receive records requests and while the vast majority of requests are routine and lawful, *amici* and other local election officials rely on courts to evaluate less-routine requests and identify the limits of production obligations. If there were no limits to those obligations and if courts did not serve as arbiters of the validity of novel elections-related records requests, local elections officials would be hard-pressed to find time to fulfill their day-to-day election administration responsibilities while also responding to every

single request. *Amici* appreciate the importance of local government transparency and its power to build trust in elections, but limitless requests can do the opposite while also burdening election administration. If, as the DOJ contends, its CRA demands were all unreviewable, local election officials like *amici* appear to be next in line for its sweeping demands, and could be left without recourse if those demands were overbroad.

### A. The DOJ's unprecedented election-related demands attempt to undercut Wisconsin's framework balancing public transparency with privacy in elections.

Wisconsin's local election officials routinely respond to lawful requests for election-related information. Like most states, Wisconsin has established a comprehensive statutory regime for public records requests. *See* Wis. Stat. §§ 19.31–19.39. *Amici*, like other public officials in Wisconsin, are the legal custodians of many election-related records, *see id.* §§ 19.21(1), 19.33, and have historically provided election-related information to the public through record requests. These officials understand the important balance of transparency and voter privacy that creates public confidence in the electoral process.

The DOJ's novel election-related requests attempt to undermine Wisconsin's established public records regime. Whereas the Wisconsin Open Records Law typically requires requests to be targeted for specific governmental information, the DOJ appears to have sent the demand letters after minimal due diligence in the course of their self-professed "trust but verify" approach to state list maintenance. *United States v. Amore*, 831 F. Supp. 3d 149, 154 (D.R.I. 2026). Though the DOJ is

not limited to Wisconsin Open Records laws as a tool for seeking information, the framework offers useful guideposts here.

Furthermore, public officials and Wisconsin courts play a vital role in determining whether to release public records. Public officials must determine whether the requested records should not be released because they are subject to a statutory or common law exception. *Hempel v. City of Baraboo*, 699 N.W.2d 551, 560 (Wis. 2005). If the custodian does not release the records, a party can seek the records through a mandamus action, *see* Wis. Stat. § 19.37(1), and state courts must then determine whether an exemption exists, whether other limits on disclosure exist, and whether the public interest favors disclosure. *See Hathaway v. Joint Sch. Dist. No. 1, City of Green Bay*, 342 N.W.2d 682, 690 (Wis. 1984). Wisconsin courts play a vital role, ensuring that sensitive election-related information is disclosed only when the law requires it. *See, e.g.*, *Wis. Voter All. v. Secord*, 37 N.W.3d 849, 862 (Wis. 2026) (holding that sensitive information concerning individuals judged mentally incapable of voting in Wisconsin is not accessible through state public record laws).

Here, the DOJ has argued that courts may not review the sufficiency of a demand for information under Title III of the Civil Rights Act. The DOJ's attempts to bypass judicial oversight undermine *amici's* fundamental interest in having election and records disputes resolved by a neutral arbiter. Without the courts as a backstop, the DOJ could continue to pursue its "fishing expedition" approach to gain access to a seemingly limitless range of sensitive election-related information. *Amore*, 831 F. Supp. 3d at 158.

### B. Without judicial review, local elections offices and their attorneys could be overwhelmed by records demands.

*Amici* and other local election officials around the country have seen the number of records requests expand exponentially in recent years.[6] National surveys of local election officials demonstrate both that the volume of records requests has increased and that the requests themselves have become more burdensome.[7]

This new flood of requests has taken considerable time and resources. Depending on the type of record requested, production can be a simple process or it can be a large process requiring multiple teams and diversion from other election administration work. Local election offices nationwide have had to devote days or weeks of staff time to accommodate requests,[8] sometimes needing to hire additional staff. For example, a request for records that do not already have a clear public

[6] *See, e.g.,* Julie Carr Smyth, *Conservative groups want to clean voter rolls, raising concerns about election integrity*, PBS News (July 15, 2024), https://perma.cc/8QXT-QXUX (noting that conservative groups have submitted hundreds of requests seeking access to voter files in a number of states, including Wisconsin). The Election Assistance Commission ("EAC") reports the same issue nationwide. *See* U.S. Election Assistance Comm'n, Best Practices: Public Records Requests, at 1 (2023), https://perma.cc/V5EH-G95E ("Since the 2020 election cycle, election officials have reported an increase in public records requests, requiring time and resources added to their official duties of administering elections. Flooding elections offices with public records requests may impact key service delivery during critical periods of an election cycle when staff time and resources are already stretched thin.").

[7] *See* Paul Gronke & Paul Manson, Today's Election Administration Landscape: Findings from the Reed College Elections & Voting Information Center 2023 Survey of Local Election Officials, at 2, 13 (2023), https://perma.cc/6XLB-SC4G (reporting increase in requests); Paul Gronke et al., Today's Election Administration Landscape: Findings from the 2024 Elections & Voting Information Center Local Election Official Survey, at 20 (2025), https://perma.cc/EH7G-LPLD (reporting burdensome requests that impede the ability of local election officials to perform their duties).

[8] Kyle Yoder & April Tan, *Election Officials & the Misuse of Public Records Requests*, Ctr. for Election Innov. and Rsch. (June 2024), https://perma.cc/569H-7745.

inspection or production procedure in place could involve running the request by legal counsel to determine whether a response is required or would violate privacy laws; converting files from formats used in voting software to shareable or printable documents; staff monitoring of public inspection; physical reproduction like printing and copying; application of redactions to protect voter privacy; and responding to questions about what the documents mean or responding to incidents arising from misinformation.

The last point is worth emphasizing: Election records can be complicated to interpret and may contain sensitive personal information, and when records are misunderstood by people who have obtained them, they can create cascading problems for local elections officials and voters. In an example relevant to list maintenance, since 2020, organizations supposedly concerned with the accuracy of voter rolls have harnessed state voter eligibility statutes to issue mass challenges against registered voters.[9] They request public versions of voter rolls, compare them against various datasets, and use those comparisons to accuse certain voters of being ineligible to vote. Such erroneous accusations under state challenge statutes can

[9] Andrew Garber, *Mass Voter Challenges*, Brennan Ctr. for Just. (July 21, 2026), https://perma.cc/9LCA-QC7F.

result in hearings that take considerable resources from elections offices while creating burdens for voters who had done nothing wrong.[10]

It is reasonable to believe that local election officials will be the next to receive time-consuming requests from the DOJ. In some states, the DOJ's demand letters asked for the names of all local election officials responsible for list maintenance in the state.[11] In addition to demanding copies of state voter rolls with sensitive voter data, the demand letters issued by the DOJ beginning in 2025 sought voluminous information from state election officials, including in Wisconsin, under a tight deadline.[12]

The DOJ has also demonstrated willingness to make unprecedented requests of local election officials in other circumstances recently, including by asking for

---

[10] For example, groups in Pennsylvania became convinced that voter rolls were not properly maintained, and began sending datasets to local election officials. Local officials devoted time reviewing records, responding to emails and holding meetings with organizations to try to explain that their list maintenance practices were proper and lawful. Brett Sholtis, *'PA Fair Elections,' tied to powerful conservative groups, pushes to remove people from voter rolls*, WESA (Sept. 28, 2024), https://perma.cc/2D9E-NMYM. Misunderstanding the law and voter roll information, those groups returned with formal challenges to voters' eligibility just before the 2024 general election, triggering hearing requirements that diverted local election officials from the busiest weeks of election administration to hold hearings and also forcing eligible voters to appear at those hearings to defend their eligibility. Carter Walker, *Efforts to challenge Pennsylvania voters' mail ballot applications fizzle,* Spotlight PA (Nov. 8, 2024), https://perma.cc/F4SE-ZWMQ.

[11] *See, e.g.*, Letter from Michael E. Gates, Deputy Assistant Att'y Gen., Civ. Rts. Div., to Shenna Bellows, Me. Sec'y of State (July 24, 2025), https://perma.cc/8EQE-BYK4; Letter from Michael E. Gates, Deputy Assistant Att'y Gen., Civ. Rts. Div., to Jocelyn Benson, Mich. Sec'y of State (July 21, 2025), https://perma.cc/AAS3-VP4D.

[12] *See* Correspondence Between Dep't of Just. & Wis. Elections Comm'n at 11, Dist. Ct. Dkt. No. 3-1 ["DOJ Wisconsin Correspondence"] (giving Wisconsin seven days to provide "[a]n electronic copy of the full Wisconsin statewide voter registration list").

access to voting machines[13] and demanding years of voter roll data.[14] An opinion from this or any court considering this issue that opens the door to unreviewable CRA demands could result in an unsustainable burden on local election officials forced to drop day-to-day election administration duties in order to respond to unrestricted records requests from the DOJ.

## II. WISCONSIN HAS ESTABLISHED A COMPREHENSIVE LEGAL REGIME TO FULFILL ITS LIST MAINTENANCE REQUIREMENTS UNDER HAVA

The DOJ's demand did not cite any specific basis, but merely stated, without additional context, that it had received "several complaints" about Wisconsin's compliance with HAVA, including allegations that Wisconsin is "failing to comply with" HAVA's list maintenance requirements.[15] For starters, as the DOJ acknowledges, Wisconsin is exempt from the NVRA under 52 U.S.C. § 20503(b)(2); *see also* Wis. Stat. § 6.55(2) (permitting same-day voting by certification). *See* Appellant's Br. at 5, 37. As a result, it is also exempt from HAVA's list maintenance requirements and need only "remove the names of ineligible voters from the computerized list *in accordance with State law*." 52 U.S.C. § 21083(a)(2)(A)(iii) (emphasis added).

---

[13] Assoc. Press, *Justice Department Requests Access to Dominion Voting Equipment Used in Missouri in 2020*, CNN (Sept. 4, 2025), https://perma.cc/XYT3-ZDH2.

[14] Gilare Zada, *SF Officials Push Back as DOJ Seeks Data on Voters Removed Over Citizenship Rules*, KQED (July 31, 2025), https://perma.cc/4JNW-E9CK.

[15] DOJ Wisconsin Correspondence, *supra* note 12, at 2.

*Amici* have extensive experience with list maintenance practices under state law. They take their responsibilities to maintain accurate, up-to-date voter registration records seriously. *Amici* write to provide context about Wisconsin's list maintenance practices and to explain why these practices do not present a proper basis for an investigative demand. Even if this Court were to accept the DOJ's atextual reading of Wisconsin's list maintenance responsibilities under HAVA, requiring it to "perform list maintenance . . . on a regular basis," Appellant's Br. at 38 (citing 52 U.S.C § 21083(a)(2)(A)), Wisconsin's system is more than sufficient. Wisconsin maintains a comprehensive voter list maintenance process, delegating responsibilities among municipalities, counties, and statewide entities that clearly comply with HAVA's requirements.

**A. HAVA's Requirements.**

Wisconsin is exempt from HAVA's list maintenance requirements and need only remove ineligible voters "in accordance with State law." 52 U.S.C. § 21083(a)(2)(A)(iii). As described below, Wisconsin law has established numerous provisions to "remove the names of ineligible voters from the computerized list," *id.*, and local election officials, working with statewide agencies, comply with these state law requirements.

Yet, even if HAVA's list maintenance requirements applied here, Wisconsin meets its demands. HAVA requires a state's election system "to perform list maintenance with respect to the computerized list on a regular basis," *id.* § 21083(a)(2)(A), and to "include provisions to ensure that voter registration records in

the State are accurate and are updated regularly," *id.* § 21083(a)(4). These provisions would include "[a] system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters" and "[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters." *Id.* § 21083(a)(4)(A)–(B). Wisconsin law certainly contains such provisions.

Circuit courts evaluating list maintenance requirements have found them to require state list maintenance programs to do only what the statute plainly says: make a "reasonable effort." 52 U.S.C. §§ 21083(a)(4)(A), 20507(a)(4). The Sixth Circuit recently offered a construction in the analogous NVRA context. The NVRA requires "a serious attempt that is rational and sensible; the attempt need not be perfect, or even optimal, so long as it remains within the bounds of rationality." *Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 625 (6th Cir. 2025), *cert. denied*, 146 S. Ct. 1772 (2026). The Eleventh Circuit has clarified that "[t]he failure to use duplicative tools or to exhaust every conceivable mechanism does not make [a county list maintenance] effort unreasonable." *Bellitto v. Snipes*, 935 F.3d 1192, 1207 (11th Cir. 2019) (discussing a county's process for identifying and removing deceased voters from rolls).

To the extent that the DOJ has argued that the NVRA is relevant to Wisconsin's duties under HAVA, *see* Appellant's Br. at 5 (claiming the NVRA "is important in this context because the HAVA builds upon the requirements of the NVRA"), circuit courts have also read list maintenance requirements to distinguish

between mandatory and permissive removal programs, with death and change-of-address being the only mandatory components. One circuit explained that "the statutory language is plain and unambiguous and requires the states to employ a general program of list maintenance that makes a reasonable effort to remove voters based *only* on account of death or change of address" and not on other ineligibility factors. *Snipes*, 935 F.3d at 1201 (emphasis added). Considering litigation over list maintenance associated with criminal convictions, another circuit echoed the distinction between mandatory and permissive programs: "[T]he mandatory language in Section 8(a)(4) only applies to registrants who have died or moved away. Removal due to criminal conviction is not included on this list of mandatory purging, and we will not amend the statute by reading that requirement into its text when Congress obviously chose not to do so." *Am. Civ. Rts. Union v. Philadelphia City Comm'rs*, 872 F.3d 175, 182–83 (3d Cir. 2017).

### B. Wisconsin state law requires, and local election officials implement, comprehensive list maintenance procedures.

"Unlike many places around the country, Wisconsin has a highly decentralized system for election administration." *Zignego v. Wis. Elections Comm'n*, 957 N.W.2d 208, 212 (Wis. 2021). Wisconsin's elections are administered in a multi-tiered system, with the primary responsibilities falling on Wisconsin's approximately 1,850 municipal clerks. Municipal clerks have "charge and supervision of elections and registration" and are given broad responsibilities including "any [duties] which may be necessary to properly conduct elections." Wis. Stat. § 7.15(1). This includes many of the duties associated with voter registration list maintenance. Wisconsin's seventy-

two county clerks also play an important role in various election-related functions. Wis. Stat. § 7.10(1)–(2). Statewide agencies, including WEC, the Wisconsin Department of Transportation ("DOT"), Wisconsin Department of Corrections ("DOC"), and Wisconsin Department of Health Services ("DHS") regularly coordinate to maintain Wisconsin's statewide voter registration database ("WisVote").

*Amicus*, Republican Party of Wisconsin, argues that WEC has "abandoned" its list maintenance responsibilities and "shifted blame to clerks." Br. of *Amicus Curiae* Republican Party of Wisconsin at 15, Dkt No. 27. This is wrong. Wisconsin maintains, and WEC oversees, a comprehensive voter list maintenance system in which election officials at each level work in tandem to maintain an accurate voter roll. As WEC explained in its December 11 email correspondence, "[t]he joint effort between state and local election officials enhances the integrity of the system by ensuring responsibilities are distributed across thousands of officials in every city, village, and town, rather than concentrated among a small handful of state employees in the Capitol."[16] Municipal clerk *amici* write from their unique perspective as the individuals most responsible for regularly updating Wisconsin's SVRL.

Under Wisconsin law, only United States citizens are eligible to vote. *See* Wis. Const. art. III, § 1(2); Wis Stat. § 6.02(1). Wisconsin law permits eligible voters to register to vote in person at the municipal or county clerk's office, by US mail, or (if they hold a current Wisconsin driver's license or state ID) online via the MyVote

---

[16] DOJ Wisconsin Correspondence, *supra* note 12, at 15.

system (myvote.wi.gov). Wis. Stat. § 6.30. Regardless of the timing and method by which voters register, they must first affirmatively indicate that they are an American citizen. There are serious consequences for falsely claiming U.S. citizenship, including criminal prosecution and removal. Voting in an election in which one is not qualified, or providing false information (i.e. falsely indicating on the EL-131 that one is a U.S. citizen) to procure registration, is voter fraud under Wis. Stat. § 12.13(1)(a)–(b) and § 12.13(3)(g). Clerks refer individuals suspected of voter fraud to the appropriate district attorney for investigation and possible prosecution. Violation of these statutes is a Class I felony, and can result in collateral consequences for noncitizens, including removal from the United States.

Mail and online registration must be completed by the third Wednesday preceding an election, meaning all later registrations occur in a municipal or county clerks' office. *Id.* § 6.28. In order to ensure that voter registration records are accurate, municipal clerks also bear responsibility for deactivating voter registrations in various circumstances. For example, clerks receive information through the Registration List Alert when a voter has died, and rely on this information to deactivate those registrations. *Id.* § 6.50(4). Similarly, if a voter is convicted of certain crimes, municipal clerks rely on statewide databases to determine which voters are ineligible or have become ineligible due to a criminal conviction. *Id.* §§ 6.29(2)(am), 6.55(2)(cs), 6.79(2)(dm), 6.56(3m). Municipal clerks follow similar procedures with respect to voters who move, *id.* §§ 6.50(3), 6.36(1)(ae), who are adjudicated to be

incompetent, *id.* § 54.25(2)(c)1.g, who request to have their registration deactivated, *id.* § 6.50(6), and for other reasons.

Clerks also oversee procedures by which any voter's qualifications may be challenged. For example, Wis. Stat. § 6.48 allows any registered voter of a municipality to challenge the registration of any other registered voter of the municipality by affidavit, including if they are not a citizen. The challenger and challenged voter then appear before the clerk, and the clerk may require both parties to answer questions under oath about the challenged voter's qualifications; only if the challenger "demonstrates beyond a reasonable doubt that the person does not qualify as an elector or is not properly registered" may the challenged voter's registration be deactivated. *Id.* § 6.325. *Amici* are familiar with state list maintenance programs that the DOJ seeks to enforce, and can state with confidence that the state programs that they implement consist of reasonable effort to remove certain categories of ineligible voters.

Finally, *amici* recognize that the WisVote system is an ever-evolving database that is not limited to voter registration applications. The DOJ mischaracterizes the WisVote system as a consolidation of "individual records" (voter registration applications) which "WEC merely aggregates . . . together into a simple record, the SVRL." Appellant's Br. at 16. In *amici*'s experience, this is not how WisVote functions in practice. WisVote is a database created and maintained by WEC, which includes information about individuals' voting history, information received from other state agencies, requests for accommodation, dates of absentee ballot requests and returns,

and more. *See generally* Wis. Stat. § 6.36(1)(a)1–16. Municipal clerks, working with other state officials, are empowered to regularly update the list with new information to account for evolving circumstances such as new registrations, moves, deaths, naturalizations, criminal convictions, and more. *See id.* § 6.36(1)(c).

The WisVote system at any given moment, therefore, represents only a snapshot in time. And while local election officials take their record retention responsibilities under 52 U.S.C. § 20701 and Wis. Stat. § 7.23 seriously, they also recognize, as the District Court explained, that the ever-evolving WisVote system is not subject to retention because "a voter registration list . . . is updated on a near-constant basis" and because federal retention requirements do "not encompass records created by state election officials, including voter registration lists." Short Appendix to Appellant's Br. at 7, 9. Requiring retention of these lists would impose confusing and impracticable new obligations of *amici*.

## III. ELECTION OFFICIALS HAVE A STRONG INTEREST IN SAFEGUARDING VOTERS' PERSONAL INFORMATION

The DOJ's request for unredacted voter information would infringe upon voters' privacy rights and *amicis*' duties, under Wisconsin law, to protect those rights. Wisconsin has been forthcoming with its SVRL to the extent allowed by law. The list is "open to public inspection." Wis. Stat. § 6.36(1)(b)1. Much of the information associated with the SVRL is accessible to the public for a small fee and parties, including political parties, regularly access this information. *See id.* § 6.36(6); Wis.

Admin. Code § EL 3.50. In its July 2 correspondence, WEC provided the link to its voter data portal, available online for the same small fee that all parties must pay.[17]

"The right of privacy is recognized" in Wisconsin and anyone whose privacy is "unreasonably invaded" is entitled to relief. Wis. Stat. § 995.50(1); *see also* Wis. Const. art. III, § 3 (guaranteeing voters' right to a "secret ballot"). Under Wisconsin law, however, certain personally identifiable information, including a voter's "date of birth, operator's license number, or social security account number, . . . the address of [a confidential elector], or any indication of an accommodation required . . . to permit voting by an elector," must remain confidential. Wis. Stat. § 6.36(1)(b)1.a; *see also* Wis. Stat. § 165.68 (governing Wisconsin's address confidentiality program). Local election officials, including county clerks, municipal clerks, their deputies, and a small number of other individuals are duty bound to protect this personally identifiable information ("PII") from disclosure. *Amici* recognize that protecting voter privacy is of the utmost importance. The DOJ's unlawful demands would force them to betray their duty to protect voters' PII.

Furthermore, under Wisconsin law, the state may not "use or allow the use of personally identifiable information maintained by the state authority in a match under a matching program, or provide personally identifiable information for use in a match under a matching program unless the authority has specified . . . [t]he purpose and legal authority for the matching program, [t]he justification for the

[17] DOJ Wisconsin Correspondence, *supra* note 12, at 9.

program and the anticipated results, including an estimate of any savings," and "[a] description of the information that will be matched." Wis. Stat. § 19.69(1). Wisconsin defines a matching program as "the computerized comparison of information in one records series to information in another records series for use by an authority *or a federal agency* to establish or verify an individual's eligibility for any right, privilege or benefit." *Id.* § 19.62(3) (emphasis added).

Here, the DOJ has expressed that it intends to do just that. In a parallel hearing seeking Rhode Island's unredacted voter roll, the DOJ stated that it intends to run voter roll data "against DHS's SAVE [Systematic Alien Verification for Entitlements] database."[18] And the Civil Rights Division has entered into a Memorandum of Understanding with DHS to use SAVE for voter registration and voter list maintenance.[19] One Court has already held the modified SAVE system, which has been used to identify ineligible voters and remove them from the state voter rolls, unlawful. *League of Women Voters v. U.S. Dep't of Homeland Sec.*, No. CV 25-3501, 2026 WL 1784297, at *2 (D.D.C. June 22, 2026). The DOJ's attempts to force disclosure of voters' PII would be unlawful under state and federal law and violate *amici*'s duty to protect voter privacy.

---

[18] Transcript of Oral Argument at 50, *United States v. Amore*, 831 F. Supp. 3d 149 (D.R.I. 2026) (No. 25-CV-639), https://perma.cc/NC9L-FEUP.

[19] *See* U.S. Citizenship & Immigr. Servs., *SAVE Agency Search Tool*, https://perma.cc/53KZ-ANEX.

## CONCLUSION

The District Court came to the correct conclusion that the records the DOJ seeks are not subject to production under Title III. *Amici* local election officials underscore the importance of judicial review of these types of requests, especially in the context of election records, given the burden of election record production in recent years and the indications that the DOJ could pursue records from local election officials next. *Amici* play an important role in ensuring voter records are accurate. State law obligates them to protect voter privacy. For all the foregoing reasons, the judgment of the district court should be affirmed.

Dated: August 24, 2026

Respectfully submitted,

*/s/Jonathan B. Miller*

Jonathan B. Miller
Alex M. Goldstein
PUBLIC RIGHTS PROJECT
490 43rd Street, Unit #115
Oakland, CA 94609
Phone: (510) 738-6788
*Counsel for Amici Curiae*

## Appendix A – List of *Amici Curiae*

### Local Governments

City of Ashland, Wisconsin

Village of Hammond, Wisconsin

Village of Hawkins, Wisconsin

Town of Mount Horeb, Wisconsin

City of Rice Lake, Wisconsin

Village of Ridgeway, Wisconsin

Town of Rock Falls, Wisconsin

Village of Rochester, Wisconsin

### Local Election Officials

Anne Arndt
*Clerk, Village of Park Ridge, Wisconsin*

Sandra Balz
*Administrative Clerk, Rib Mountain Metro District, Wisconsin*

Michelle Bartoletti
*Clerk, Village of Suamico, Wisconsin*

Lisa Breuer
*Assistant Deputy Clerk-Treasurer, City of Prairie du Chien, Wisconsin*

Nicki Breunig
*Clerk-Treasurer, Village of North Freedom, Wisconsin*

Jennifer Broberg
*Clerk, Town of Cross Plains, Wisconsin*

Jilline Dobratz
*Clerk, City of West Bend, Wisconsin*

Pamela Donart-Welcome
*Clerk-Treasurer, Town of Liberty Grove, Wisconsin*

Maria Donat
*Clerk, Town of Wittenberg, Wisconsin*

Patrick Earley
*Clerk, Town of Richmond, Wisconsin*

Jennifer Ehlenfeldt
*Clerk-Treasurer, City of Buffalo, Wisconsin*

Kelsey Faust-Kubale
*Clerk, Town of Clayton, Wisconsin*

Marcy Granger
*Clerk, City of Glendale, Wisconsin*

Paulina Gutierrez
*Election Commission Executive Director, City of Milwaukee, Wisconsin*

Anjela Hamm
*Clerk, Town of Farmington, Wisconsin*

Susan Harris
*Clerk, Town of Three Lakes, Wisconsin*

Linda Hawkins
*Clerk-Treasurer, Town of Hammond, Wisconsin*

Sherri Heise
*Clerk, Town of El Paso Township, Wisconsin*

Melissa Hongisto
*Deputy Clerk, Town of Lawrence, Wisconsin*

Kristina Irwin
*Clerk, Village of Endeavor, Wisconsin*

Susan Kilen
*Deputy Clerk-Deputy Treasurer, Village of Poynette Village, Wisconsin*

Janet Krueger
*Clerk, Town of St. Croix Falls, Wisconsin*

Jennifer Lydon
*Clerk, City of Sparta, Wisconsin*

Kate Martin
*Clerk, City of Menomonie, Wisconsin*

Lanette Mayberry
*Deputy Clerk, City of Lodi, Wisconsin*

Lydia McComas
*Clerk, City of Madison, Wisconsin*

Tim McCumber
*Administrator-Clerk, Village of Lake Delton, Wisconsin*

Sara McDonald
*Clerk, City of Hillsboro, Wisconsin*

Jennifer Meyer
*Clerk-Treasurer, Town of Pleasant Valley, Wisconsin*

Cheryl Miller
*Clerk, Town of Red Cedar, Wisconsin*

Angela Neeck
*Clerk, Town of Lake, Wisconsin*

Ellen Niemi
*Clerk-Treasurer, Village of Withee, Wisconsin*

Cynthia Pfeifer
*Administrative Director/Clerk-Treasurer, Village of Nashotah, Wisconsin*

Tracy Rau
*Clerk, City of Owen, Wisconsin*

Katherine Reinbold
*Clerk, Town of Algoma, Winnebago County, Wisconsin*

Kathy Reissmann
*Clerk-Treasurer, Village of Mishicot, Wisconsin*

Catherine Roeske
*Clerk, City of Oak Creek, Wisconsin*

Kerri Roy
*Clerk-Treasurer, Town of Kaukauna, Wisconsin*

Lisa Sikora
*Clerk, Town of Blanchard Township, Wisconsin*

Melanie Stake
*Clerk, Town of Dakota, Wisconsin*

Lorena Stottler
*Clerk-Treasurer-Election Administrator, Janesville, Wisconsin*

Heather Suffron
*Clerk-Treasurer, Town of Manitowish Waters, Wisconsin*

Wendy Tanguay
*Clerk-Treasurer, Town of Oakland, Wisconsin*

Sheryl Ward
*Clerk-Treasurer, Town of Phelps, Wisconsin*

Arissa Watkins
*Clerk, City of Lodi, Wisconsin*

**CERTIFICATE OF COMPLIANCE**

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5) because, excluding the parts exempted by Rule 32(f), it contains 5,159 words, as counted by the word-processing system used to prepare it, and therefore does not exceed 6,500 words.

2. This brief complies with the typeface and type-style requirements of Rule 32(a)(5) and (a)(6), as modified by Circuit Rule 32(b), because it has been prepared in a proportionally spaced typeface using Microsoft Word in 12-point or greater Century Schoolbook font (11-point for footnotes).

By: *<u>/s/ Jonathan B. Miller</u>*
Jonathan B. Miller
PUBLIC RIGHTS PROJECT
490 43rd Street, Unit #115
Oakland, CA 94609
Phone: (510) 738-6788
*Counsel for Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2026, I electronically filed the foregoing Brief with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I further certify that the other participants in this appeal are CM/ECF users, and thus will be served via the CM/ECF system.

By: *<u>/s/ Jonathan B. Miller</u>*
Jonathan B. Miller
PUBLIC RIGHTS PROJECT
490 43rd Street, Unit #115
Oakland, CA 94609
Phone: (510) 738-6788
*Counsel for Amici Curiae*