No. 26-2217

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellant

v.

WISCONSIN ELECTIONS COMMISSION, et al.,

Defendants-Appellees

COMMON CAUSE, et al.,

Intervening Defendants-Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
Dist. Ct. No. 3:25-cv-1036-JDP
The Honorable Judge James D. Peterson

# REPLY BRIEF FOR THE UNITED STATES AS APPELLANT

HARMEET K. DHILLON
Assistant Attorney General

ERIC A. SELL
Deputy Assistant Attorney General

ANDREW G. BRANIFF
DAVID N. GOLDMAN
KELSEY E. MCGEE
Attorneys
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
(202) 251-0053

# TABLE OF CONTENTS

PAGE

INTRODUCTION ........ 1

ARGUMENT ........ 2

I. The United States is entitled to Wisconsin's unredacted SVRL as it is a "record" under Title III ........ 2

A. The SVRL is subject to Title III ........ 2

1. WEC came into the possession of Wisconsin's SVRL, and the SVRL is a document requisite to voting. ........ 2

2. The United States' interpretation creates no conflict between Title III and HAVA ........ 8

B. The Attorney General's demand had a valid basis and purpose ........ 11

1. Courts play a limited role in assessing the Attorney General's demand under Title III. ........ 12

2. Multiple letters equal one demand. ........ 16

3. Defendants have not carried their heavy burden to show pretext ........ 18

C. Intervenors confuse the NVRA's public-inspection Provision with the Attorney General's authority ........ 20

II. Privacy laws provide no basis to affirm ........ 21

**TABLE OF CONTENTS (continued): PAGE**

A. The United States has complied with the Privacy Act .......... 21

B. Federal law preempts Wisconsin privacy law .......... 24

CONCLUSION .......... 27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**CASES:** **PAGE**

*Atlantic States Legal Found., Inc. v. Stroh Die Casting Co.*, 116 F.3d 814 (7th Cir. 1997) .......... 14

*Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647 (2021) .......... 23

*Bryan v. United States*, 524 U.S. 184 (1998) .......... 8-9

*Donovan v. Shaw*, 668 F.2d 985 (8th Cir. 1982) .......... 14

*Donaldson v. United States*, 400 U.S. 517 (1971), *superseded by statute on other grounds*, Tax Reform Act of 1976, Pub. L. No. 94-455, 90 Stat. 1520 .......... 15

*Fischer v. United States*, 603 U.S. 480 (2024) .......... 8-9

*Heckler v. Chaney*, 470 U.S. 821 (1985) .......... 13

*Holsum de P.R., Inc. v. ITW Food Equip. Grp. LLC*, 116 F.4th 59 (1st Cir. 2024) .......... 18

*Judicial Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425 (D. Md. 2019) .......... 20

*Kennedy v. Lewis*, 325 F.2d 210 (5th Cir. 1963) .......... 6

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) .......... *passim*

*Kennedy v. Owen*, 321 F.2d 116 (5th Cir. 1963) .......... 6

*League of Women Voters, et al. v. Department of Homeland Sec., et al.*, No. 1:25-cv-3501, 2026 WL 1784297 (D.D.C. June 22, 2026) .......... 19

*McHenry Cnty. v. Raoul*, 44 F.4th 581 (7th Cir. 2022) .......... 25-26

**CASES (continued):** **PAGE**

*Murphy v. National Collegiate Athletic Ass'n*, *et al.*,
584 U.S. 453 (2018) ....................25-26

*New York v. United States*, 505 U.S. 144 (1992) ....................25

*Niz-Chavez v. Garland*, 593 U.S. 155 (2021) ....................17

*Public Int. Legal Found. v. Bellows*,
92 F.4th 36 (1st Cir. 2024) ....................20-21

*Public Int. Legal Found. v. Benson*,
136 F.4th 613 (6th Cir. 2025) ....................21

*Public Int. Legal Found. Inc. v. Wolfe*,
No. 24-3258, 2026 WL 2425386
(7th Cir. Aug. 19, 2026) ....................12, 20-21

*United States v. Benson*, 179 F.4th 470,
*reh'g en banc denied*, No. 26-1225,
2026 WL 2364306 (6th Cir. Aug. 14, 2026) ....................8, 16

*United States v. Benson*, No. 26-1225,
2026 WL 2364306 (6th Cir. Aug. 14, 2026) .................... *passim*

*United States v. Insurance Consultants of Knox, Inc.*,
187 F.3d 755 (7th Cir. 1999) ....................18

*United States v. Lynd*, 301 F.2d 818 (5th Cir. 1962) ....................13

*United States v. Powell*, 379 U.S. 48 (1964) ....................14-15

*United States Dep't of Just. v. Tax Analysts*,
492 U.S. 136 (1989) ....................4-6

*United States ex. rel. Streck v. Eli Lilly and Co.*,
152 F.4th 816 (7th Cir. 2025) ....................18

**CASES (continued):** **PAGE**

*WaterKeepers N. Cal. v. AG Indus. Mfg., Inc.*,
375 F.3d 913 (9th Cir. 2004) .......... 14

*Webster v. Doe*, 486 U.S. 592 (1988) .......... 13

**CONSTITUTION:**

U.S. Const. Art. VI, Cl. 1 .......... 24

**STATUTES:**

Civil Rights Act of 1960 (CRA)
52 U.S.C. 20701-20706 .......... 15
52 U.S.C. 20701 .......... *passim*
52 U.S.C. 20702 .......... 8
52 U.S.C. 20703 .......... *passim*
52 U.S.C. 20704 .......... 21, 24

Civil Rights Cold Case Records Collection Act of 2018,
Pub. L. No. 115-426, § 2(3)(B), 132 Stat. 5489 (2019)
(44 U.S.C. 2107 note) .......... 5

Help America Vote Act of 2002 (HAVA)
52 U.S.C. 21083 .......... 8, 11
52 U.S.C. 21083(a)(1)(A)(viii) .......... 9
52 U.S.C. 21083(a)(2)(A)(iii) .......... 11
52 U.S.C. 21083(a)(2)(B)(ii) .......... 10
52 U.S.C. 21083(a)(2)(B)(iii) .......... 10
52 U.S.C. 21111 .......... 21

National Voter Registration Act of 1993 (NVRA)
52 U.S.C. 20510 .......... 21

**STATUTES (continued):** **PAGE**

President John F. Kennedy Assassination Records
Collection Act of 1992,
Pub. L. No. 102-526, § 3(2),
106 Stat. 3444 (44 U.S.C. 2107 note) ........................................... 5

18 U.S.C. 1512 ........................................................................ 8-9

5 U.S.C. 552a(e)(4) ..................................................................... 22

26 U.S.C. 7605(b) ........................................................................ 15

**REGULATIONS:**

28 C.F.R. 0.50(a) ........................................................................ 22

68 Fed. Reg. 47,610 (Aug. 11, 2003) ........................................... 21, 22

68 Fed. Reg. 47,611 (Aug. 11, 2003) ........................................... 21-22

70 Fed. Reg. 43,904 (July 29, 2005) ............................................... 21

82 Fed. Reg. 24,147 (May 25, 2017) ........................................... 21-22

**EXECUTIVE ORDER:**

Exec. Order No. 14,399,
91 Fed. Reg. 17,125 (Mar. 31, 2026) ........................................... 19

**LEGISLATIVE HISTORY:**

H.R. Rep. No. 956, 86th Cong., 1st Sess. (1959) ................................... 6

**MISCELLANEOUS:** **PAGE**

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. Times Mag. (Nov. 16, 2025), https://perma.cc/L39A-S5VZ ....................................................19-20

U.S. Citizenship & Immigr. Servs., SAVE Agency Search Tool, https://tinyurl.com/n7fpu4zz (last visited Sept. 4, 2026)...............19

U.S. Dep't of Just., Justice Manual § 9-11.151 (2020), https://www.justice.gov/jm/jm-9-11000-grand-jury# .................... 23

*Webster's Third New Int'l Dictionary* (1966 ed. unabridg.).......................5

*Webster's New World Dictionary of the American Language* (8th coll. ed. 1960) ..........................................4

## INTRODUCTION

The individual weight of every vote in the United States is critical to confidence in federal elections. The American people deserve elections they can trust. Accurate voter rolls are essential to that trust in the process and confidence in the outcome. In exercising its duty to protect the civil rights of all Americans, the Department of Justice (DOJ) seeks to obtain Wisconsin's statewide voter registration list (SVRL) to ensure that our federal elections are deserving of such trust. In so doing, the Department (DOJ) is not doing anything extraordinary warranting judicial second-guessing. DOJ's request for the State's SVRL is a lawful exercise of its authority under Title III of the Civil Rights Act of 1960, and it is made for the lawful purpose of ensuring the State's compliance with the list-maintenance requirements of HAVA.

The district court erred in accepting defendants' and intervenors' arguments to dismiss the DOJ's claim and in ultimately dismissing the case and denying DOJ's motion to compel production of the SVRL. The district court erred primarily because Wisconsin's SVRL *does* come into the possession of the Wisconsin Elections Commission and is required to be disclosed under the Civil Rights Act of 1960 (CRA). Further, the

district court erred in adding atextual limits onto the relevant statutory provisions, 52 U.S.C. 20701 and 20703, creating an imaginary conflict between the CRA and other statutes. This Court should reverse and remand with instructions to compel the Wisconsin Elections Commission (WEC) to expeditiously produce unredacted versions of Wisconsin's SVRL to the DOJ.

## ARGUMENT

### I. The United States is entitled to Wisconsin's unredacted SVRL as it is a "record" under Title III.

#### A. The SVRL is subject to Title III.

##### 1. WEC came into the possession of Wisconsin's SVRL, and the SVRL is a document requisite to voting.

As the United States argued in its Opening Brief, the SVRL is a "record" within the meaning of Title III because it "relat[es] to any . . . registration." 52 U.S.C. 20701; U.S. Br. 13.[1] Defendants and intervenors

---

[1] U.S. Br. __" refers to the page numbers of the United States' Opening Brief filed with this Court. "WEC Br. __" refers to the page numbers of Wisconsin Elections Commission's Response Brief filed with this Court. "Common Cause Br. __" refers to the page numbers of the Response Brief filed with this Court by Common Cause, Melissa Adams, Amanda Makulec, and Jamie Riefer (Common Cause defendants). "WARA-FL Br. __" refers to the page numbers of the Response Brief filed with this Court by Wisconsin Alliance for Retired Americans and

argue that the SVRL is not a "record" within the meaning of Title III because it does not "come into [the] possession" of the WEC because it is a self-generated document. WEC Br. 28-29; Common Cause Br. 14-19; WARA-FL Br. 18-22. They are incorrect.

After the United States filed its Opening Brief, the Sixth Circuit denied rehearing en banc in *United States v. Benson*, No. 26-1225, 2026 WL 2364306 (6th Cir. Aug. 14, 2026) (*Benson III*), which presents materially identical questions regarding the adequacy of the United States' demand for a SVRL. In doing so, however, a majority of the Sixth Circuit's judges agreed that an SVRL is a record that "come[s] into [the] possession" of a State's chief election official. *Benson III*, 2026 WL 2364306, at *2 (Murphy, J., concurring); *see also id.* at *9 (Griffin, J., dissenting); *id.* at *14 (Thapar, J., dissenting) (similar). In addition to the plain meaning of the term (U.S. Br. 13-20), the phrase "come into . . . possession" "was a familiar legal expression" at the time Congress enacted Title III, and "[c]ourts and legislatures regularly used it to

---

Forward Latino (WARA-FL defendants). "Doc. __, at __" refers to the docket number and internal page numbers on the district court docket sheet, No. 3:25-cv-1036-jdp (W.D. Wis.). "SA__" refers to page numbers in the Short Appendix to the United States' Opening Brief.

describe when a person lawfully assumed possession of property through an office, employment, or other legal authority." *Benson III*, 2026 WL 2364306, at *7 (Griffin, J., dissenting).

Contemporaneous dictionary definitions confirm that an officer "come[s] into . . . possession" of any record or document the moment that he "get[s]" or "acquire[s]" it and retains it within his control. *Webster's New World Dictionary of the American Language* 291 (8th coll. ed. 1960); *see id.* at 1140 (defining "possess" and "possession"). When officers within the WEC aggregate individual voter records into an SVRL, they get or acquire a new document and retain it within their control—thus coming into possession of the SVRL. *See United States Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 145 (1989) ("By control we mean that the materials have come into the agency's possession in the legitimate conduct of its official duties."). Thus, contrary to the defendants' arguments, the word "come" cannot create a carve-out for self-generated documents. *See* WEC Br. 28-29; Common Cause Br. 19-20. If anything, Congress used the phrase "*come* into his possession" rather than "*are* in his possession," not to impose an unwritten carve-out for records or documents that are self-generated, but to focus on *how* and *when* the

officer gains possession of the records or documents in the first instance.[2] 52 U.S.C. 20701; *see Webster's Third New Int'l Dictionary* 453 (1966 ed. unabridg.) (defining "come into" as "to enter upon or into possession of: acquire esp. as an inheritance"); *Benson III*, 2026 WL 2364306, at *7 (Griffin, J., dissenting) ("By 1960, 'come into' possession or custody was a familiar legal expression. . . . [I]t did not distinguish property according to its source.").

The Supreme Court has demonstrated a similar understanding of the term. In cases under the Freedom of Information Act, the Supreme Court has imposed two requirements for a document to be an agency record: "First, an agency must either *create or obtain* the requested materials," and second, "the materials [must] have *come into the agency's possession* in the legitimate conduct of its official duties" and remain in

[2] This would not be the only time Congress has used the phrase in a manner meant to encompass both self-generation and receipt from an outside source. *See* Civil Rights Cold Case Records Collection Act of 2018, Pub. L. No. 115-426, § 2(3)(B), 132 Stat. 5489 (2019) (44 U.S.C. 2107 note) (referring to a record that "was created or made available for use by, obtained by, or otherwise came into the possession of" an agency or governmental body); President John F. Kennedy Assassination Records Collection Act of 1992, Pub. L. No. 102-526, § 3(2), 106 Stat. 3444 (44 U.S.C. 2107 note) (same).

the agency's possession at the time of a records request. *Tax Analysts*, 492 U.S. at 144-45 (emphasis added; citation and internal quotation marks omitted). Thus, the Supreme Court has made clear that a record created by the agency can be said to have "come into the agency's possession"—coming into possession of material refers to when and how the possession began. *See id.* at 145-146.

Moreover, the legislative history reflects that the phrase "records and papers which come into his possession" simply means "records and papers in his possession," and not some subset of the materials in his possession. *See* H.R. Rep. No. 956, 86th Cong., 1st Sess., at 6, 37, 39 (1959) (emphasis added) (explaining that Section 301 "would include *all records and papers* in the possession of election officers"). Contemporaneous decisions confirm the point. *See Kennedy v. Owen*, 321 F.2d 116, 117 (5th Cir. 1963) (per curiam) (requiring the district court "to order each appellee to make available . . . all records and papers in the possession, custody or control of said appellee relating to any application, registration, payment of poll tax or other act requisite to voting"); *Kennedy v. Lewis*, 325 F.2d 210, 212 (5th Cir. 1963) (per curiam) (requiring the district court to grant the same inspection rights).

Intervenors Common Cause and WEC argue that the SVRL does not come into the possession of election officers because Title III's phrase "records and papers which come into . . . possession" of an election officer can only be applied to records obtained from external sources, using the analogy of a baker using cake ingredients to create a finished cake. WEC Br. 28-29; Common Cause Br. 19-20. Even accepting for the sake of argument that one does not come into possession of an item he or she creates (*contra* U.S. Br. 13-22), defendants "make[] an unexplained logical leap" in "treat[ing] *all* [election] officials as a *single* 'officer of election.'" *Benson III*, 2026 WL 2364306, at *2 (Murphy, J., concurring); *see id.* at *8-9 (Griffin, J., dissenting); *id.* at *14 (Thapar, J., dissenting).

To use defendants' cake analogy, WEC is not just a baker but rather oversees other bakers. So "the rule becomes that a baker comes into possession of a cake delivered from another bakery but not of a cake handed to her by another baker working in the same bakery." *Benson III*, 2026 WL 2364306, at *8 (Griffin, J., dissenting). "[N]othing in [52 U.S.C. 20701] draws that distinction." *Id.* at *9. Title III imposes an *officer-specific* duty to preserve and produce certain voting-related records coming into his or her possession. The fines and penalties follow the

individual state official having possession of those records. *See* 52 U.S.C. 20701. Even "if WEC's "employees generated the voter file—and therefore didn't 'come into . . . possession' of the list themselves—[WEC] nonetheless 'c[a]me into . . . possession' of the file when [their] employees sent it to [the Commission]." *United States v. Benson*, 179 F.4th 470, 487 (6th Cir. 2026) (*Benson II*) (Nalbandian, J., dissenting).

#### 2. The United States' interpretation creates no conflict between Title III and HAVA.

Defendants and intervenors contend that treating an SVRL as covered by Title III will create a conflict with HAVA because the former statute prohibits "willfully . . . alter[ing] any record or paper" covered by Section 301, 52 U.S.C. 20702, and the latter requires repeated updates, 52 U.S.C. 21083. Common Cause Br. 22-23; WARA-FL Br. 22. This is incorrect. The plain text of Section 302 criminalizes "actions that, by their nature, impair the integrity or availability of records." *Fischer v. United States*, 603 U.S. 480, 490 (2024) (interpreting a similar set of verbs using noscitur a sociis).[3] And the statute's willfulness mens rea means that the

---

[3] WEC responds that *Fischer* is inapposite because it involved a statute that required "intent to impair the object's integrity or availability for use in an official proceeding." WEC Br. 25 (quoting 18

individual must know that the "conduct was unlawful." *See Bryan v. United States*, 524 U.S. 184, 191-192 (1998) (citation omitted).

Moreover, construing Title III to exclude the SVRL would paralyze the United States' ability to enforce various federal voting laws. The SVRL is not just *any* record "requisite to voting." 52 U.S.C. 20701. It "serve[s] as the official voter registration list for the conduct of all elections for Federal office in the State." 52 U.S.C. 21083(a)(1)(A)(viii).

Consequently, to investigate whether a jurisdiction engages in practices that violate the CRA, the Uniformed and Overseas Citizens Absentee Voting Act, the NVRA, HAVA, or the Voting Rights Act of 1965, for example, the Attorney General needs to examine both applications to register to vote and the final voting rolls, including the electronic SVRL, so as to assure himself that the applications are being properly processed and that reasonable list maintenance efforts have been practiced. *See*

---

U.S.C. 1512). But the Supreme Court reasoned that the actus reus in that statute contained "actions that, *by their nature*, impair the integrity or availability of records." *Fischer*, 603 U.S. at 490 (emphasis added). The mens rea requirement in that statute makes clear that this must also be the "intent" of the defendant.

*Benson III*, 2026 WL 2364306, at *15-16 (Thapar, J., dissenting); *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962) (*Lynd II*).

Updating the list is supplementing it, not "willfully" "alter[ing]" it in the sense proscribed by Section 302. If, for example, we consider how records were retained and preserved before digital storage technology was available, we can easily recognize that inserting a new hardcopy voter-registration card or document in a binder-file that contains all the hardcopy voter-registration cards or documents of a particular jurisdiction is updating the file. Far from altering voter records, updating the binder-file in this way is the very means of preserving the voter records, and the entire binder-file is itself a "record[] . . . *relating to* any . . . registration," 52 U.S.C. 20701 (emphasis added), just as a state's SVRL is such a record.

Despite the clear delineation between lawful and unlawful conduct, intervenors argue that determining "good" or "bad" changes to an SVRL is unknowable. Common Cause Br. 23-24. One example of unlawful alteration of an SVRL would be to allow duplicate registrations to remain on the list in violation of HAVA, 52 U.S.C. 21083(a)(2)(B)(iii), or removing eligible voters from the SVRL, 52 U.S.C. 21083(a)(2)(B)(ii), or for

Wisconsin, removing the names of ineligible voters due to death or movement out of state in violation of State law. *See* 52 U.S.C. 21083(a)(2)(A)(iii). Unlawfully updating, or failure to update, a SVRL would cause registrants to be improperly registered or removed and thus denied the right to vote. But updating the SVRL to include a new properly registered voter, or removing duplicates or dead citizens, or those who have moved out of state, or nonvoters like noncitizens, would be a proper update to the SVRL. *See* 52 U.S.C. 21083.

### B. The Attorney General's demand had a valid basis and purpose.

In this matter, the demands sent to the WEC contained both a valid purpose and basis for the demand. Other courts agree. In denying rehearing en banc in *Benson III*, 2026 WL 2364306, a majority of the judges on the Sixth Circuit concluded that DOJ satisfied the "basis" and "purpose" component of Title III in a written demand that "was based on 'Title III[,]'" described "factual concerns with [the State's] voter-registration list" and "identified its purpose to 'assess' the State's 'compliance' with the NVRA's and HAVA's list maintenance requirements." *Id.* at *3 (Murphy, J., concurring); *see also id.* at *10 (Griffin, J., dissenting); *id.* at *14 (Thapar, J., dissenting). The same

occurred here where the DOJ explained that it had "received several complaints regarding [WEC's] compliance with" HAVA, including both problems with its list maintenance procedure and its refusal to provide any process to evaluate complaints against the WEC. Doc. 5-1; Doc. 5-5.[4]

### 1. Courts play a limited role in assessing the Attorney General's demand under Title III.

The United States's demand for records triggers a "special statutory proceeding" not subject to the ordinary pleading standards of the Federal Rules of Civil Procedure. *Lynd II*, 306 F.2d at 225. This proceeding "does not require pleadings which satisfy usual notions under the Federal Rules of Civil Procedure," but merely "a simple statement by the Attorney General that" the defendant "has failed or refused to make such papers 'available for inspection, production, and copying.'" *Id.* at 225-226 (quoting 52 U.S.C. 20703). Accordingly, "[t]here is no place" for the State election official to challenge, or the court to review or require discovery regarding, "the factual support for, or the sufficiency of, the Attorney

[4] The United States has explained why Wisconsin's exemption from the NVRA does not provide an exemption from list-maintenance obligations under HAVA. U.S. Br. 38-39. This Court's confirmation that Wisconsin is exempt from the NVRA, *see Public Int. Legal Found., Inc. v. Wolfe*, No. 24-3258, 2026 WL 2425386, at *1 (7th Cir. Aug. 19, 2026), does not undermine that point. *Cf.* C.A. Doc. 46, at 2 (WARA-FL 28(j) Ltr.).

General's 'statement of the basis and the purpose therefor' as set forth in the written demand." *Ibid.* (quoting 52 U.S.C. 20703). "In sum," as the United States explained in its Opening Brief, "so long as the Attorney General has stated in writing the basis and purpose of the demand, Title III is satisfied and the records must be produced." U.S. Br. 20.

Nothing in Title III purports to authorize courts to second-guess or probe the sufficiency or sincerity of the Attorney General's statement of basis and purpose. Indeed, the statute provides no meaningful standards that would permit such judicial review. *Benson III*, 2026 WL 2364306, at *15 (Thapar, J., dissenting); *cf. Webster v. Doe*, 486 U.S. 592, 599-600 (1988); *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). The statute identifies only the scope of the "records and papers" that the Attorney General may demand, 52 U.S.C. 20701, and a requirement that he communicate "the basis and the purpose" for his request, 52 U.S.C. 20703—not any standard against which to measure his statement of basis and purpose.

Thus, there is "no justification" for requiring the United States to "allege specific details" underlying its demand. *United States v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962) (*Lynd I*). Indeed, even in the administrative-subpoena context—a higher standard for the government than Title III

contemplates—facts alleged need only be "sufficiently specific to inform the alleged violat[ion] about what it is doing wrong." *Atlantic States Legal Found., Inc. v. Stroh Die Casting Co.*, 116 F.3d 814, 819 (7th Cir. 1997); *see also Donovan v. Shaw*, 668 F.2d 985, 989 (8th Cir. 1982) ("a regulatory agency need not advance facts in support of its application for enforcement of a subpoena"); *WaterKeepers N. Cal. v. AG Indus. Mfg., Inc.*, 375 F.3d 913, 917 (9th Cir. 2004) (citation omitted) (holding that, even if construing notice requirements strictly, "plaintiffs are not required to list every aspect or detail of every alleged violation").

Defendants and intervenors insist that greater inquiry is allowed based on *United States v. Powell*, 379 U.S. 48 (1964) (WEC Br. 40-41; Common Cause Br. 27-8; WARA-FL Br. 33-34), but that case, which involved an IRS administrative summons under the Internal Revenue Code, is inapposite. In *Powell*, the Supreme Court explained that judicial inquiry was appropriate to determine "if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *Powell*, 379 U.S. at 58. That inquiry was specifically authorized by Section 7605(b) of

the Internal Revenue Code, which prohibited the Government from subjecting a taxpayer "to unnecessary examination or investigations." *Id.* at 52-53 (quoting 26 U.S.C. 7605(b)). No similar language limits the Attorney General's authority to compel records under Title III. *See* 52 U.S.C. 20701-20706.

As the Supreme Court subsequently made clear in *Donaldson v. United States*, "*Powell* was not intended to impair a summary enforcement proceeding so long as the rights of the party summoned are protected and an adversary hearing, if requested, is made available." 400 U.S. 517, 529 (1971), *superseded by statute on other grounds*, Tax Reform Act of 1976, Pub. L. No. 94-455, 90 Stat. 1520. Such is the case here, where the "matter should be set down without delay for suitable hearing on the matters open for determination"—in particular, "whether the written demand has been made" and "whether the custodians against whom orders are sought have been given reasonable notice of the pendency of the proceeding." *Lynd II*, 306 F.2d at 226. The CRA's summary procedure, combined with its lack of any meaningful standard against which to judge the Attorney General's demand (U.S. Br. 21),

dictates that a district court steps beyond its authority in attempting to evaluate the sufficiency of the Attorney General's written demand.

**2. Multiple letters equal one demand.**

Intervenors Common Cause attempt to invent a procedural requirement that the United States identify both the basis and the purpose in the same letter. They assert that a "written demand" under Title III must be a single document containing both the basis and the purpose for the demand. WEC Br. 38 (citing *Benson II*, 179 F.4th at 483); WARA-FL Br. 44-45; Common Cause Br. 33-34. This argument is "meritless." *Benson III*, 2026 WL 2364306, at *6 (Griffin, J., dissenting); *Benson II*, 179 F.4th at 488 (Nalbandian, J., dissenting). Title III "imposes no . . . requirement that both" the basis and the purpose "appear within a single document." *Benson III*, 2026 WL 2364306, at *6 (Griffin, J., dissenting); *Benson II*, 179 F.4th at 488 (Nalbandian, J., dissenting).

Common Cause and WARA-FL argue that, because DOJ did not provide a single demand in its letters that included both basis and purpose, that the demand did not meet the requirements of Title III to provide a "single written demand." Common Cause Br. 33-34; WARA-FL Br. 44-45.

Contrary to Common Cause's argument (Common Cause Br. 45-46), the use of the "indefinite article 'a'" in the phrase "a statement of the basis and purpose therefore" does not modify the word "demand" but governs the content of the demand, whether asserted in one document or two. 52 U.S.C. 20703. *Niz-Chavez v. Garland*, 593 U.S. 155 (2021), says nothing to the contrary. There, the Supreme Court held that the phrase "a written notice" in an immigration statute referred to "a single document containing the required information." *Id.* at 161. Title III's demand requirement, in contrast, does not contain the indefinite article "a." The statute's "operative clause begins with the indefinite phrase 'upon demand in writing,' not 'upon the demand' or 'upon a single demand.'" *Benson III*, 2026 WL 2364306, at *10 (Griffin, J., dissenting) (quoting 52 U.S.C. 20703).

Lastly, the United States has not waived or presented an "underdeveloped" argument that its letters contain the factual basis for its demand. *Contra* Common Cause Br. 32-33. The United States argued below that a legal basis was sufficient. *See* Doc. 71 at 5. The district court disagreed and held that the United States must state a factual basis and failed to do so in either letter. SA9. The United States' argument that the

June 4 letter provides a sufficient factual basis is a direct response to the district court's reasoning. *See United States ex. rel. Streck v. Eli Lilly and Co,*, 152 F.4th 816, 850 (7th Cir. 2025) (it is within the court's discretion to address an argument not squarely presented below); *see also Holsum de P.R., Inc. v. ITW Food Equip. Grp. LLC*, 116 F.4th 59, 66 (1st Cir. 2024) ("When a district court addresses an argument, even one that a party has not presented squarely, that action undermines the justifications for enforcing what might otherwise be a party's waiver.").

**3. Defendants have not carried their heavy burden to show pretext.**

Common Cause argues that the demand to WEC was pretextual. Common Cause Br. 40-44. Even assuming this Court's limited review of the DOJ's demand would allow such a challenge, defendants cannot carry their "heavy burden." *United States v. Insurance Consultants of Knox, Inc.*, 187 F.3d 755, 759 (7th Cir. 1999) (citation omitted); U.S. Br. 39-41.

Statements that the DOJ will coordinate with the Department of Homeland Security (DHS) are consistent with the DOJ's stated demand regarding investigating list maintenance. DHS maintains the Systematic Alien Verification for Entitlement Database (SAVE), and the DOJ originally planned to use SAVE in the same manner and form that states

and localities have in this administration to determine eligibility of voters, *see* U.S. Citizenship & Immigr. Servs., SAVE Agency Search Tool, https://tinyurl.com/n7fpu4zz (last visited Sept. 4, 2026) (listing states and localities that have signed agreements with DHS), pursuant to a user agreement under which the Civil Rights Division maintains control over the files it uploads into the service.[5] Likewise, widespread investigation into list-maintenance compliance by a variety of states (Common Cause Br. 42) is consistent with the stated intention of ensuring that states, including Wisconsin, are complying with their obligations under federal election law.[6]

---

[5] DOJ is cognizant that in *League of Women Voters, et al. v. Department of Homeland Sec.*, *et al.*, No. 1:25-cv-3501, 2026 WL 1784297 (D.D.C. June 22, 2026), the district court has barred DHS from offering the use of the 2025 SAVE system. DOJ will not use the SAVE system pending the resolution of that aspect of that litigation.

[6] Common Cause's other allegations are no more on point. For example, any concern about "security protocols" (based on conduct by a *different* agency) can be guarded against by a protective order. *See* Common Cause Br. 42. The cited Executive Order does not task the Attorney General with any role in creating any "State Citizenship List." *See* Exec. Order No. 14,399, 91 Fed. Reg. 17,125 (Mar. 31, 2026); Common Cause Br. 43. And the cited news article (Common Cause Br. 43 n.10) refers to an unnamed former DOJ employee who, in turn, cites unnamed members of "Leadership" who "said" that data could be "compare[d]" to data from DHS and the Department of Social Security. Emily Bazelon &

### C. Intervenors confuse the NVRA's public-inspection provision with the Attorney General's authority.

Intervenors cite *Public Interest Legal Foundation* (*PILF*) *v. Bellows* to justify the redaction of information requested by the United States. 92 F.4th 36 (1st Cir. 2024). WARA-FL Br. 23-24; *see also* C.A. Doc. 46, at 2 (WARA-FL 28(j) Ltr.) (citing *Public Int. Legal Found., Inc. v. Wolfe*, No. 24-3258, 2026 WL 2425386 (7th Cir. Aug. 19, 2026)). However, intervenors fail to acknowledge the distinction between the Attorney General requesting records under the CRA and members of the public requesting a state's SVRL under the NVRA. *See, e.g.*, *Public Int. Legal Found. v. Benson*, 136 F.4th 613 (6th Cir. 2025); *Judicial Watch, Inc. v. Lamone*, 399 F. Supp. 3d 425 (D. Md. 2019). First neither the privacy related provisions of the CRA (52 U.S.C. 20704) nor the Privacy Act apply to members of the public proceeding under the NVRA. Thus, courts have recognized privacy concerns that may allow for redaction of certain private information before release under the NVRA's public-inspection

---

Rachel Poser, The Unraveling of the Justice Department, N.Y. Times Mag. (Nov. 16, 2025), https://perma.cc/L39A-S5VZ. Even crediting this statement for all it is worth (*but see* U.S. Br. 40-41), that is again consistent with DOJ's stated purpose of assessing the accuracy of the information on states' voter rolls.

provision. *PILF*, 92 F.4th at 56; *see Wolfe*, 2026 WL 2425386, at *8 (Brennan, C.J., concurring). But the general public has neither the federal mandate to enforce federal election law, *cf.* 52 U.S.C. 20510, 21111, nor the statutory safeguards, *cf.* 52 U.S.C. 20704, that the Attorney General has.

## II. Privacy laws provide no basis to affirm.

### A. The United States has complied with the Privacy Act.

Intervenors WARA-FL allege that DOJ has not complied with the Privacy Act, namely the System of Records Notice (SORN) requirement. WARA-FL Br. 47-48. They contend that the DOJ has not specified the "purposes for which the information is intended to be used," unnecessarily victimizes Wisconsin voters by making voters "subject[s]" of investigation, and that the SORN discussed by the DOJ in its Opening Brief (U.S. Br. 42-44), does not cover the records sought in the demand for Wisconsin's SVRL. WARA-FL Br. 47-49. This is incorrect. An electronic, unredacted copy of Wisconsin's SVRL is covered by the existing SORN titled, JUSTICE/CRT – 001, "Central Civil Rights Division Index File and Associated Records," 68 Fed. Reg. 47,610-47,611 (Aug. 11, 2003); 70 Fed. Reg. 43,904 (July 29, 2005); and 82 Fed.

Reg. 24,147 (May 25, 2017). As explained (U.S. Br. 43), the SORN applies to records "kept . . . in the ordinary course of fulfilling the responsibility assigned to [the Civil Rights Division] under the provisions of 28 CFR 0.50, 0.51," 68 Fed. Reg. at 47,611, which grant the Civil Rights Division responsibility for "[e]nforcement of all Federal statutes affecting civil rights, including those pertaining to elections and voting," 28 C.F.R. 0.50(a).

WARA-FL's accusation that the DOJ does not disclose the "purposes for which the information is intended to be used" (WARA-FL Br. 47-78) incorrectly faults the DOJ for not meeting a heightened level of notice not required by the Privacy Act. The Act requires the United States to disclose "each routine use of the records . . . and the purpose for each use." 5 U.S.C. 552a(e)(4). Again, the United States has repeatedly stated that the records will be used to enforce civil-rights statutes.

The SORN's explanation that the Department of Justice may collect information about the "[s]ubjects of investigations, victims, [and] potential witnesses" applies to the SVRL. 68 Fed. Reg. at 47,610-47,611; U.S. Br. 43-44. Lawfully registered voters certainly are not the target of a federal criminal investigation, as WARA-FL

misleadingly asserts. WARA-FL Br. 47. WARA-FL claims that "Wisconsin's voters would be aghast to learn that DOJ views each and every one of them as a 'subject'—a term that, as DOJ recognizes, means that the individual's 'conduct' is 'under investigation.'" WARA-FL Br. 48 (purportedly quoting U.S. Br. 43-44). A "subject" is someone whose "conduct is *within the scope* of the . . . investigation" (U.S. Br. 44 (quoting U.S. Dep't of Just., Justice Manual § 9-11.151 (2020), https://www.justice.gov/jm/jm-9-11000-grand-jury#)) (emphasis added), which is expressly distinct from a "target"—a person "who, in the judgment of the prosecutor, is a putative defendant." Justice Manual § 9-11.151. Lawfully registered voters are also potential victims of HAVA non-compliance, which threatens to dilute their votes. *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 672 (2021).

Lastly, WARA-FL asserts that the SORN covers only "case files, matters, memoranda, correspondence, studies, and reports relating to enforcement of civil rights laws" and therefore does not encompass the SVRL. WARA-FL Br. 49 (quoting 68 Fed. Reg. at 47,611). This language is not limited to "run-of-the-mill files," *ibid.*, but extends to all "matters" relating to the enforcement of civil-rights laws.

### B. Federal law preempts Wisconsin privacy law.

WEC also invokes various provisions of state law that it contends prevent it from complying with the Attorney General's demand. WEC Br. 43-45. As explained previously (U.S. Br. 44-47), federal law preempts Wisconsin law to the extent the latter prevents WEC from complying with the Attorney General's demand under the CRA.

Congress enacted broad regulations over the conduct of federal elections in the two statutes at issue in this litigation pursuant to its authority under the Elections Clause. Title III imposes a "sweeping" obligation on election officials to preserve and, on demand of the Attorney General, to produce registration records pertaining to federal elections, *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962), and imposes its own privacy protections for such under Section 20703, *see* 52 U.S.C. 20704. Assuming for the sake of argument that Wisconsin's election law poses a barrier to the Attorney General's demand under Title III for the unredacted SVRL, as argued by defendants and intervenors, Title III preempts state law. *See* U.S. Const. Art. VI, Cl. 1. Title III requires Wisconsin to produce unredacted information to DOJ, under federal and

state law, as DOJ is a law enforcement agency exercising its authority. Further, Title III preempts any contrary Wisconsin law.

WEC relies on the NVRA's public-inspection provision as showing that Congress did not intend to compel production of unredacted documents. WEC Br. 46. But for the reasons explained above (pp. 20-21), the NVRA does not provide an apt comparison. WEC further argues that Title III cannot preempt state law because it does not regulate private actors, but rather "public actors." WEC Br. 46-47 (citing *McHenry Cnty. v. Raoul*, 44 F.4th 581, 587 (7th Cir. 2022)). But the distinction drawn in *McHenry County* and *Murphy v. National Collegiate Athletic Ass'n*, *et al.*, 584 U.S. 453 (2018), does not map onto the one WEC would have this Court draw. In *Murphy*, the Supreme Court held that a federal law prohibiting what states *qua* states could authorize was not a valid preemption provision "since the Constitution 'confers upon Congress the power to regulate individuals, not States.'" 584 U.S. at 577 (quoting *New York v. United States*, 505 U.S. 144, 166 (1992)). That statement must be understood in the context of a suit also involving an anticommandeering challenge. *See id.* at 470; *see also id.* at 478-480 (explaining that statutes in prior suits did not "operate directly on the States"). The law was not a

regulation of private actors because it was "a direct command to the States, [which] is exactly what the anticommandeering rule does not allow." *Id.* at 480. And in *McHenry County*, this Court assessed whether a federal statute authorizing the Attorney General to take certain action in cooperation with local governments preempted an Illinois law prohibiting local governments from assisting with the enforcement of federal immigration law. 44 F.4th at 585-586. This Court observed that *Murphy*'s statement about regulating private individuals—taken to its full extent—seemed in tension without prior Supreme Court precedent but found no "need [to] map the precise limits of *Murphy*'s preemption holding" because this Court found no preemption on other grounds. *Id.* at 588. In any event, a statute imposing officer-specific duties (that can carry criminal punishment) is a far cry from statutes regulating states as states or granting authority to the Attorney General.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's Order dismissing the DOJ's Title III claim and remand with instructions to order the Wisconsin Elections Commission to immediately produce the requested unredacted SVRL.

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General

ERIC A. SELL
Deputy Assistant Attorney General

s/ Kelsey E. McGee
ANDREW G. BRANIFF
DAVID N. GOLDMAN
KELSEY E. MCGEE
Attorneys
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
(202) 251-0053

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limits of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) and 7 Cir. R. 32 because the brief contains 5544 words, excluding the parts exempted by Federal Rules of Appellate Procedure 32(f) and 7 Cir. R. 32. This brief also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5)-(6) because it was prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft 365.

s/ Kelsey E. McGee
KELSEY E. MCGEE
Attorney

Date: September 4, 2026

## CERTIFICATE OF SERVICE

I certify that on September 4, 2026, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Kelsey E. McGee
KELSEY E. MCGEE
Attorney